**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

Lawrence Sinclair,

                    Plaintiff,

vs.

TubeSockTedD, mzmolly and
OWNINGLIARS,

                    Defendants.

_____/

Case No.: 1:08-cv-00434-HHK

**REPLY TO RESPONSE TO MOTION TO COMPEL [D.E. #4]**

Plaintiff, Lawrence Sinclair, by and through his undersigned counsel replies to the response of Democraticunderground.com and Defendant Mzmolly ("Levy Clients") to Plaintiff's motion to compel [D.E. #4] and states:

**I.    SUMMARY OF ARGUMENT**

To paraphrase Galileo Galilei: "In questions of [legal] science, the authority of a thousand is not worth the humble reasoning of a single individual." Here, Plaintiff's "humble" reasoning argues that (i) this Court should sanction the Levy Clients and their counsel for invoking base *ad hominem* arguments upon grossly improper exhibits, (ii) the Seventh Amendment compels a jury – not the Court – to resolve factual disputes, (iii) the First Amendment never was meant to license libel, and (iv) the jurisdiction of this Court and the competency of the Complaint have been established.

Moreover, Plaintiff's motion to compel directed to Public Citizen Litigation Group, while procedurally awkward, should be addressed in the interest of judicial economy. Last, the Levy Clients' requests for sanctions lack merit and must be denied.

1

## II.   MOTION TO COMPEL

### A.   LEVY'S *AD HOMINEM* ARGUMENTS

It is necessary – though unfortunate – that the first issue to address from the Levy Clients' response must be the extensive and unfounded *ad hominem*[1] argument against Plaintiff upon which Mr. Levy largely relies in asking this Court to deny the motion to compel.

In particular, the Levy Clients filed an improper[2] exhibit to their response which contains realms of web pages which are purported to be accurate representations of Plaintiff's history and statements.  Patently, Plaintiff's prior history is <u>not</u> relevant to the simple issue before this Court – should Democraticunderground.com be ordered to respond to a subpoena approved by this Court? Morever, <u>any</u> exhibit which purports to be accurate must be immediately discounted when the source is the world wide web.  As Exhibit "A" hereto makes clear, anyone can claim to be someone and then make any sort of statement from that person.  Hence, the web pages are incorporated by the Levy Clients are as evidence of nothing.

Accordingly, Plaintiff respectfully requests that this Court ignore the tsunami of exhibits that the Levy Clients have filed which are (i) irrelevant and (ii) suspect in resolving the pending issue of the subpoena served on Democraticunderground.com and seriously consider imposing sanctions on the Levy Clients for such an improper argument.[3]

---

[1]    From Greek, "To the man" – "An argument directed at one's prejudices rather than one's intellect."  – Webster's New Collegiate Dictionary.

[2]    See D.E. #15,  Plaintiff's Motion for Sanctions against Paul Alan Levy.

[3]    "We conclude that an attorney who submits documents to the district court that contain *ad hominem* attacks directed at opposing counsel is subject to sanction under the court's

### B.    THE SEVENTH AMENDMENT DICTATES THE MANNER OF RESOLUTION

Plaintiff properly demanded a jury trial in the Complaint in this matter.  The Seventh Amendment plainly states: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

"Since Justice Story's day . . . we have understood that '[t]he right of trial by jury thus preserved is the right which existed under the English common law when the Amendment was adopted." *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657(1935).    Moreover, "[m]aintenance of the jury as a factfinding body is of such importance and occupies so firm a place in our history and jurisprudence . . . any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

Significantly, "The essence of that right [to a jury trial] lies in its insistence that a body of laymen not permanently attached to the sovereign participate along with the judge in the factfinding necessitated by a lawsuit.  And that essence is as much a part of the Seventh Amendment's guarantee in civil cases as it is of the Sixth Amendment's guarantee in criminal prosecutions." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 349 (1979).[4]

_____

inherent power to oversee attorneys practicing before it." *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1307 (11th Cir. 2002).

[4]    Moreover, Plaintiff would raise the argument that the jury is entitled to decide all questions of law as well as fact as it does in the criminal field.  *Accord*: *United States v. Fenwick*, 25 F. Cas. 1062; 4 Cranch C.C. 675 (1836);  22 F. Cas. 1322; 5 Cranch C.C. 573 (1839)(Right to make legal argument to jury);*U.S. v. Moylan*, 417 F 2d 1002, 1006 (1969) affirmed the right of jury

3

The test of the scope of the jury's province under the Seventh Amendment was described in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, (1999). First, the question is whether the claim is a "cause of action that either was tried at law at the time of the founding or is at least analogous to one that was." *Id*. at 708. Here, Plaintiff's claims of Defamation and Reckless Misrepresentation clearly fall within this category. *Cf*: New York publisher John Peter Zenger was imprisoned for 8 months in 1734 for printing attacks on the governor of the colony. Zenger won his case and was acquitted by jury in 1735 under the counsel of Andrew Hamilton. The case established some precedent that the truth should be an absolute defense against libel charges.

Second, "If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Id*. at 708. In this case, the affirmative defense First Amendment objections raised by the Levy Clients raise issues of fact which it is the province of the Jury – and <u>not</u> the Court – to decide.[5]

Accordingly, to the extent that this Court determines to undertake a factual finding as

---

nullification, stating, "We recognize, as appellants urge, the undisputed power of the jury to acquit, even if its verdict is contrary to the law as given by the judge, and contrary to the evidence. This is a power that must exist as long as we adhere to the general verdict in criminal cases, for the courts cannot search the minds of the jurors to find the basis upon which they judge. **If the jury feels that the law under which the defendant is accused, is unjust, or that exigent circumstances justified the actions of the accused, or for any reason which appeals to their logic or passion, <u>the jury has the power to acquit</u>, and the courts must abide by that decision**." (Emphasis added).

[5]     For this reason, the Levy Clients' claim that the Communications Decency Act, 47 U.S.C. § 230 must fails as it requires a finding of fact admitted by the Levy Clients, to wit, "There is no allegation that Mzmolly or OwningLiars unfairly summarized the gist of what they were reposting from YouTube. Accordingly, the complaint against them fails under Section 230." (Levy Clients' Response, p. 30). Such a result cannot be obtained from the four corners of the complaint which pleads no such thing.

requested by the Levy Clients as to the scope factual basis for a First Amendment affirmative defense, this Court must empanel a jury to make such factual determinations. *Accord*: *Fahy v. Nationwide Mut. Fire Ins. Co.*  885 F.Supp. 678, 679 (M.D.Pa. 1995)("Because the punitive damages authorized by § 8371 is a form of relief typically within the province of a jury, the Seventh Amendment to the United States Constitution entitles the Fahys to a jury determination of whether Nationwide acted in bad faith and whether punitive damages should be imposed against Nationwide.")

### C.    THE FIRST AMENDMENT IS INAPPOSITE

Plaintiff maintains that the First Amendment is inapposite to the issue of compelling compliance.  Plainly, the First Amendment states in relevant part: "Congress shall make no law . . .abridging the freedom of speech . . . ".  Clearly, no federal law is implicated by this suit.  In support of their argument that issuance of subpoenas rises to the level a Congressional "law", the Levy Clients cite *New York Times Co. v. Sullivan,* 376 U.S. 254, 265 (1964) and *Shelley v. Kraemer*, 334 U.S. 1 (1948), neither of which addressed the single issue raised here – whether the Court's process violates the First Amendment.  Additionally cited were *NAACP v. Alabama*, 357 U.S. 449, 461 (1958) and *Bates v. City of Little Rock*, 361 U.S. 516, 524 (1960).  *NAACP* and *Bates* dealt with state actions to mandatorily disclose membership roles: not the after-the-fact assertion of defamation.

Finally, to justify equating this Court's subpoena with Congressional action, the Levy Clients cite *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 347 (1995) which held: "When a law burdens core political speech, we apply 'exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest."  Here of course, there is no "law", only the normal mechanism of the Court to adjudicate controversies.  Moreover, this process of adjudication

is narrowly tailored. A complaint in compliance with Federal Rules of Civil Procedure, Rule 8 must be filed and a showing to the Court made to survive a *sua sponte* dismissal. Plainly, Plaintiff has survived both these challenges.

Moreover, the First Amendment's guarantee of anominity is not as broad as the Levy Clients would lead this Court to believe. To support its supposition that "The First Amendment protects the right to speak anonymously", the Levy Clients cite: (i) *Watchtower Bible & Tract Soc. of New York v. Village of Stratton*, 536 U.S. 150, 166-167 (2002), (ii) *Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 199-200 (1999), (iii) *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334 (1995) and (iv) *Talley v. California*, 362 U.S. 60 (1960).

These four cases all have one common denominator which makes them <u>inapposite</u> here. They all address <u>prior</u> restraint issues on anonymous speech.[6]  Indeed, the issue of defamation and/or libel is expressly <u>not</u> addressed in *Watchtower* and *Buckely* and only distinguished in *McIntyre* and *Talley*.[7]  Hence, the Levy Clients' house of cards falls when this cornerstone is removed as it is not

---

[6]      *Watchtower* ("Respondent Village of Stratton (Village) promulgated an ordinance that*, inter alia*, prohibits "canvassers" from "going in and upon" private residential property to promote any "cause" without first obtaining a permit from the mayor's office by completing and signing a registration form"); *Buckley* ("The Court is satisfied that, as in *Meyer,* the restrictions in question significantly inhibit communication with voters about proposed political change, and are not warranted by the state interests (administrative efficiency, fraud detection, informing voters) alleged to justify those restrictions."); *McIntyre* (" Section 3599.09(A)'s prohibition of the distribution of anonymous campaign literature abridges the freedom of speech in violation of the First Amendment.") and *Talley* ("the reason for those holdings was that identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance. This broad Los Angeles ordinance is subject to the same infirmity. We hold that it, like the *Griffin*, *Georgia*, ordinance, is void on its face.")

[7]      *McIntyre* at 335, ("Section 3599.09(A)'s anonymous speech ban is not justified by Ohio's asserted interests in preventing fraudulent and libelous statements and in providing the electorate with relevant information."); *Talley* at 64, ("Counsel has urged that this ordinance is aimed at providing a way to identify those responsible for fraud, false advertising and libel. Yet the

supported by existing case law.

Additionally, what the Levy Clients propose is a wholesale repeal of the defamation and reckless dissemination causes of action through the technical innovation of the internet which allows such anonymous attacks to be carried out and then repeated for all time as gospel without hope to the harmed party of putting the genie back in the bottle.

Continuing the practice of citing cases without quotations for propositions those cases do <u>not</u> support, the Levy Clients state: "The courts have recognized the serious chilling effect that subpoenas to reveal the names of anonymous speakers can have on dissenters and the First Amendment interests that are implicated by such subpoenas. *E.g., FEC v. Florida for Kennedy Committee*, 681 F.2d 1281, 1284-1285 (11ᵗʰ Cir. 1982); *Ealy v. Littlejohn*, 560 F.2d 219, 226-230 (5th Cir. 1978)." (Levy Clients' Response, p. 16). Such an assertion is nonsense.

*FEC* was concerned with the F.E.C.'s compulsion of production of association lists through administrative subpoenas, not anonymous defamation. ("The Supreme Court has also made it clear that a higher degree of scrutiny must attach before courts can compel disclosure of information that may impinge upon these first amendment associational rights." *FEC* at 1284). Likewise, in *Ealy*, the question of a grand jury's inquiry into the internal, structural, financial, and associational aspects of the an association, not free speech, was at issue. ("Our in camera review of the grand jury proceedings persuades us that, for the most part, their time estimate testimony is borne out by the record and demonstrates positively that the grand jury invaded areas protected by the First

_____

ordinance is in no manner so limited, nor have we been referred to any legislative history indicating such a purpose. **Therefore, we do not pass on the validity of an ordinance limited to prevent these or any other supposed evils**.")(Emphasis added).

7

Amendment." *Ealy.* 529 F.2d 219, 229[8]).

Hence, there was good reason the Levy Clients <u>failed</u> to quote the actual holdings of these cases to the Court.

Putting the Levy Clients' exhaustive review of the various "tests" to be applied aside, this Court is asked to return to *McIntyre v. Ohio Elections Comm.* at 357 where the Court stated:

> Ohio has not shown that its interest in preventing the misuse of anonymous election-related speech justifies a prohibition of all uses of that speech. **The State may, and does, punish fraud directly**. But it cannot seek to punish fraud indirectly by indiscriminately outlawing a category of speech, based on its content, with no necessary relationship to the danger sought to be prevented.

Here, Plaintiff has made out a *prima facie* case for defamation and reckless dissemination – or would seek leave to amend if necessary to accomplish that end – and as such the mechanisms of this Court to identify the Defendants are properly invoked to allow adjudication of Plaintiff's allegations.

### D.    PLAINTIFF HAS INITIALLY ESTABLISHED JURISDICTION OF THIS COURT

The Levy Clients' objections to the jurisdiction of this Court are almost comical.  In the first instance, Defendant mzmolly states that Plaintiff may not learn her identity or location but then claims that the Court should dismiss for lack of jurisdiction for failing to plead these diversity elements which Plaintiff presently does not know and Defendant mzmolly won't reveal.

Here, Plaintiff has properly invoked Rule 11(b)(3)[9] permitted pleading by alleging facts prefaced with the phrase: " after a reasonable opportunity for further investigation or discovery,

---

[8]     Mis-cited by the Levy Clients at *Ealy v. Littlejohn*, 560 F.2d 219

[9]     "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Plaintiff will establish that Defendants are residents of states other than Minnesota." (Complaint, ¶2.)

In the Levy Clients' world view, a plaintiff could never find a federal court of competent diversity jurisdiction when anonymous defamation occurs. In all events, once discovery has identified the defendants and their location, Plaintiff will, if necessary, move pursuant to 28 U.S.C. §1404(a) "Change of Venue" to transfer this matter to the appropriate court.

### E.    WEIGHING THE EQUITIES

In conclusion, the Levy Clients ask this Court to "weighs the interests of defamation plaintiffs to vindicate their reputations in meritorious cases against the right of Internet speakers to maintain their anonymity when their speech is not actionable." (Levy Clients' Response, p. 40).

Of course, the Levy Client would like this Court to undertake that "weighing" upon the improper and suspect record they have foisted upon the Court. Moreover, the Levy Clients ask this Court to invade the province of the jury to do so in violation of the Seventh Amendment as detail *supra.* Finally, the *ad hominem* attack on Plaintiff and his motives does not deserve consideration by this Court.

Simply stated, the equities are plain: A Rule 8 compliant complaint has been filed which contains the evidence upon which Plaintiff relies. If it is technically deficient in any respect, then the opportunity to amend is required.[10] As such, Plaintiff has met his burden to proceed in this matter.

WHEREFORE, Plaintiff requests that the Court enter an order compelling Democraticunderground.com to produce the subpoenaed documents and awarding reasonable

---

[10]    Plaintiff specifically requests such an opportunity pursuant to Federal Rules of Civil Procedure, Rule 15.

attorney fees and costs for the making this motion.

### III.    MOTION TO COMPEL

In response to Plaintiff's demand upon Public Citizen Litigation Group to reveal the identity and location for service of process upon its client, Defendant mzmolly, Mr Levy responds that no subpoena was served.  This is true but of only procedural interest as this Court can order any officer of its Court to comply with its order.  Moreover, once discovery is permitted, Plaintiff would serve such a subpoena.  Judicial economy is served by consolidating this issue here.

Defendant mzmolly's argument is at first blush persuasive: "On the theory propounded by Sinclair, once an anonymous speaker retains counsel to protect her right to remain anonymous, the very communications that specify the information to be protected and that assure the lawyer that he is representing a real person who is, in fact, the owner of the pseudonym that is subject to suit must be revealed." (Levy Clients' Response, p. 42).

However, Plaintiff is not seeking disclosure of that client information prior to the determination of the issues raised by the Levy Clients.  Instead, once those issues are disposed of – presumably in Plaintiff's favor – and if the information possessed by Democraticunderground.com is <u>not</u> sufficient to identify and locate Defendant mzmolly as this Court has already approved, then Plaintiff desires to expeditiously obtain that information from Defendant mzmolly's counsel to permit this suit to move forward.

WHEREFORE, upon the grounds stated *supra*, Plaintiff requests that the Court order Defendant mzmolly's attorney to reveal her identity and location.

## IV.  SANCTIONS SHOULD NOT BE IMPOSED

Finally, the Levy Clients seek sanctions upon Plaintiff for seeking to compel that which this Court ordered under 28 U.S.C. §1927[11] and/or Rule 37(a)(5)(B) or (C)[12].

As for the former, Plaintiff has <u>not</u> "so multiplie[d] the proceedings" in this matter "unreasonably and vexatiously" but only sought to compel that which this Court had already ordered – subpoenas on Democraticunderground.com, to identify Defendant mzmolly.

As to the latter, the motion is premature as this Court has not yet ruled upon the motion to compel.

WHEREFORE, the motion for sanctions is due to be denied by this Court.

---

[11]  "Counsel's Liability for Excessive Costs. Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

[12]  "(B) If the Motion Is Denied. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust. . .(C) If the Motion Is Granted in Part and Denied in Part. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."

### CERTIFICATE OF SERVICE

     I hereby certify that: a true and accurate copy of the foregoing was served by this Court's CM/ECF system upon Paul Alan Levy, Public Citizen Litigation Group, 1600 20th Street, NW, Washington, DC 20009, Ray Beckerman, Vandenberg & Feliu LLP, 110 East 42 St., New York, NY 10017 and  James R. Klimaski, Klimaski & Associates, P.C., 1625 Massachusetts Avenue NW, Suite 500, Washington, DC 20036-2245, this May 5, 2008.

**MONTGOMERY BLAIR SIBLEY**
Counsel for Plaintiff
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax


By:   /s/ Montgomery Blair Sibley
      Montgomery Blair Sibley
      D.C. Bar #464488

**4/28/2008**

## Larry Sinclair flyers

By: Cao, Filed under: Demonrats , General , Obama @ 8:23 am



These flyers are incredible! Kudos to whoever thought them up! (The screengrab above is from the "Obama Come Clean about Larry Sinclair" flyer, click here.

FLYERS (Download for Printing & Distribution)

* Bad/Mad Magazine Flyer
* Hand-Held Placard
* HOPE YOU'VE CHANGED FLYER
* Limo Flyer B/W
* Limo Flyer Color
* LS Flyer
* Obama Come Clean about Larry Sinclair

Help bring Larry's blog up in the search engines by searching for LarrySinclair0926.wordpress.com

**One Response to "Larry Sinclair flyers"**

1. *Judge H. Kennedy, Jr.* Says:
   May 1st, 2008 at 10:13 am

   I think it's best to allow this case to be heard in Court of Public Opinion…don't you agree?

**Leave a Reply**

Name (required)

Mail (will not be published) (required)

Website

Spam protection: Sum of two + nine ?

Exhibit "A"