UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAWRENCE SINCLAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:08-cv-00434-HHK |
| | ) | |
| TubeSockTedD, mzmolly and OWNINGLIARS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO
SINCLAIR'S MOTION FOR SANCTIONS AND SEALING**

**FACTS**

In certain exhibits to the Opposition of mzmolly and Democratic Underground to Sinclair's

Motion to Compel Disclosure of mzmolly's identity, DN 12, efiled on Wednesday, April 30, 2008,

documents used to establish Sinclair's criminal record contained his birth date. One document also

contained his social security number. The filing of these unredacted documents violated Local Civil

Rule 5.4(f). The data had been submitted by consulting counsel in Florida and Colorado with record

requests to the various state authorities because Sinclair was known to have used over a dozen

aliases, and counsel wanted to make sure that the response was complete. In addition, the birth date

appeared in the reprints of two publicly available web pages from Pueblo County, Colorado and

Pasco County, Florida, which showed outstanding warrants for Sinclair's arrest in those two

locations. Copies of those web pages were also submitted as Exhibits. It was unquestionably an

error to include this information unredacted, and lead counsel for mzmolly and Democratic

Underground, Paul Alan Levy, has apologized to Sinclair for the error. Levy Affidavit ¶ 2.

Sinclair took no action to have this information redacted or removed from the Court's

PACER web site on Wednesday, Thursday or Friday, April 30 to May 2. Instead, in the early morning of Saturday, May 3 – when the Clerk's office was closed and nothing could be removed from the Court's PACER site until Monday morning – Sinclair filed a motion to sanction Mr. Levy and to seal all exhibits pending further review of the Opposition and all supporting exhibits to make sure that they did not contain personally identifying information in violation of the Local Rules. DN 15; Levy Affidavit ¶ 4. Sinclair's counsel, Mr. Sibley, made no effort to consult with Mr. Levy before filing that motion, *id.,* which indeed contains no Certificate of Conference. Also on Saturday morning, Sinclair undertook to **publicize** the fact that his social security number could be found on the Court's PACER web site by posting that fact on his blog. Levy Affidavit ¶ 3 and Exhibit A. Sinclair identified the document number containing the information, and gave instructions to his readers that they could access the information simply by registering for PACER and paying 8 cents per page for documents they wanted to download. *Id.*[1]

Mr. Levy first learned of the erroneous filing on Saturday, when he saw an email calling his attention to Sinclair's blog post informing the public how it could obtain his social security number, Levy Affidavit ¶ 3, and then saw Sinclair's motion. He immediately looked through exhibits to identify any other documents, in addition to the one cited by Sinclair, that might contain the

---

[1]The motion mistakenly implies that Public Citizen issued a press release about the filing of the Opposition to the Motion to Compel, and posted the offending documents on its web site. Motion at 2 and n.1. In fact, although a press release was issued when counsel first served Rule 45 objections on Mr. Sibley, there has been no press release about the case since. Moreover, until the Opposition to the Motion to Compel was filed, Sinclair consistently posted every development in this case on his blog. Hence his complaint about "litigat[ing] this matter in the press" is hard to fathom.

The Memorandum in Opposition to Sinclair's motion to compel is indeed posted on the Public Citizen web site, as is every major brief on the issue of Internet anonymity (and most other issues) filed by Public Citizen over the past eight years. However, none of the supporting affidavits and exhibits in this case has been posted on the Public Citizen web site.

forbidden information, and prepared hand-redacted versions of those documents by placing labels reading "redacted" over the birth date and social security sumber where they appeared. *Id.* ¶ 5. He attempted to contact the Court's ECF help desk by telephone and email, even calling the Court's weekend emergency number to learn whether there were any personnel who could take the unredacted documents down from the Court's PACER site. He was told that there were no personnel to perform that task until Monday morning. *Id.* ¶ 6.

On Monday morning, Mr. Levy contacted the ECF help desk when it first opened. The Clerk's Office personnel told Mr. Levy that he would have to file a motion to get the documents replaced, but that, in the meantime, they would remove the links to the documents from the PACER site. *Id.* ¶ 8. Mr. Levy then drafted a Motion to Substitute Documents and tried to contact Mr. Sibley to get his consent to the motion to substitute. Mr. Sibley was not available. Meanwhile, Mr. Levy continued to review the Opposition and supporting exhibits to ensure that all references to Sinclair's birth date and social security number had been redacted. *Id.* ¶ 9. He discovered two more references to the birth date – on two pages in a single exhibit that had been downloaded into PDF from publicly available "wanted" web sites, showing warrants for Sinclair's arrest that are still outstanding. He had Public Citizen staff redact those documents as well, using Adobe Acrobat to remove the forbidden data and substitute the word "redacted" in each of the two PDF'd web pages. *Id.* ¶ 10. He added those documents to his draft motion, and called the ECF help desk to report the need to redact one more exhibit. Again, the Clerk's Office removed the link to that Exhibit from the Court's PACER site within minutes of the request. *Id.*

Mr. Levy finally reached Mr. Sibley to ask him to concur in the Motion to Substitute Documents. Mr. Sibley angrily refused to consent. He said that he had discovered that Sinclair's

birth date had been published in various places on the Internet; that he was printing those pages and would be filing a further motion with the Court; that Mr. Levy had better consent to seal all documents pending his review of the entire filing; and that if not, "you can do as you damn please." *Id.* ¶ 12; DN 19.  After delivering these remarks, Mr. Sibley hung up the telephone as Mr. Levy was trying to respond.  Had Mr. Sibley not hung up, Mr. Levy would have told him that he **had** conducted a preliminary review and believed that he had found all relevant mentions, and that the Clerk's Office had already removed those documents from public access on the PACER site. *Id.* ¶ 12; DN 19.

Later on May 5, Mr. Sibley filed a "supplement to motion to sanction," asserting that an exhibit to the Opposition had, in fact, been posted on the Internet, and requesting a sanction of $100,000 plus "attorney fees for drafting this supplement."  DN 18.  Once again, there was no attempt to confer before filing this motion, and no certificate of conference was provided.  Mr. Levy filed his Motion to Substitute Documents later that date. DN 19.  On May 6, Sinclair opposed the motion to substitute on the ground that Mr. Levy should be required to certify that the identifying date did not appear in any of the other exhibits, and that pending such a certification, the entire filing in opposition to his motion to compel should be sealed.  DN 20.  If Mr. Sibley was unaware when he filed this document that the relevant documents were no longer publicly available, it is only because, the day before, he hung up during Mr. Levy's attempted pre-filing conference before Mr. Levy could inform him of that fact.[2]

On May 6, 2008, Sinclair posted to his blog a claim that documents revealing his birth date

---

[2] The PACER Service Center has advised that it is capable of providing statistical data showing how many times, and when, any given document was viewed on PACER, but that its policy is not to supply such information except in response to a grand jury subpoena.

and social security number had been displayed in a YouTube video. Sinclair embedded the video in that page of his blog. Derke Affidavit ¶ 5. However, when a user clicks on the video, he gets a message that the video has been removed by its user. The document that appears on the screen of the video on Sinclair's web page is too blurry to read any of its content. Sinclair asserts on this blog page that he has downloaded the video from YouTube and placed it on a CD for filing with the Court. *Id.* ¶ 8. A member of the public, Joshua Ray Derke, has submitted an affidavit asserting that he viewed the video during the short time it was available on YouTube and that, although the text accompanying the video asserted that Sinclair's information could be seen on the video, in fact that video was too small, and the text too blurry, for a viewer to be able to see any such information. *Id.* ¶ 3.

On May 8, 2008, Sinclair filed a second supplement to his motion for sanctions (again without any effort to confer or certificate of conference). The motion asserted as fact that an "exhibit filing which contained Plaintiff's social security number and date of birth information was posted on the YouTube.com website . . . and has already been downloaded by an unknown number of persons." The brief gave a URL (which was hyperlinked in the brief). However, no supporting affidavit supports any of these factual assertions (and as the Derke affidavit shows, by May 8 the unreadable video had been removed days before). Once again, Sinclair asked for a sanction of $100,000 "including attorney fees for drafting this supplement."

On May 13, 2008, mzmolly's reply in support of her motion to substitute documents contained a certification by Mr. Levy that, as redacted, none of the pages filed in DN 12, including supporting exhibits, contained Sinclair's birth date or social security number. DN 28. The attached Levy Affidavit further confirms that fact. ¶ 12.

# ARGUMENT

Counsel for mzmolly and Democratic Underground acknowledge that three exhibits filed in support of the Opposition to Sinclair's Motion to Compel Discovery identifying mzmolly were filed without redaction of personal information about Sinclair which, under Local Rule 5.4(f), should have been filed with redactions. However, none of the relief sought by Sinclair in his motion should be granted, for the following reasons.

1. First, the motion was filed without any effort to confer with opposing counsel, as required by Local Rule 7(m):

> counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement.

Nor does the motion contain the requisite certificate of conference. Regrettably, the pursuit of motions either without any effort to confer, or based on a purported conference that simply goes through the motions, because his counsel apparently regards an attempt to discuss the issues to narrow the dispute as "playing games," DN 23-2, ¶ 3, has become a pattern for Sinclair in this case. Denial of his motion for failure to confer may well be an effective way to cure that habit.

2. Perhaps Sinclair will argue that the exposure of his information on the Court's PACER web site created an emergency requiring the filing of his motion without conferring. That argument would fail, however, because as a practical matter, filing a **consent motion** will always achieve faster relief than filing an opposed motion. Indeed, as the attached Levy affidavit reveals, a simple call by Mr. Levy to the ECF help desk at the Clerk's Office resulted in the almost immediate removal of the public link to the documents in question from the Court's PACER site. And when Mr. Levy attempted to discuss the problem with Sinclair's counsel by telephone on Monday, May 5, Mr. Sibley

hung up on him rather than letting Mr. Levy tell him that the public filings on the PACER site had already been removed. Levy Affidavit ¶ 12. Thus, even assuming that protecting his own privacy was the real purpose of Sinclair's motion, filing without consent was not an effective way to achieve that objective.

3. Turning to the merits, the need for the remedy of temporarily sealing the entire set of materials filed in support of the Opposition to the Motion to Compel has been mooted because the certification that the remaining unredacted documents do not contain the information proscribed by Rule 5.4(f) has already been made, first in the Reply in Support of Motion to Substitute Documents, DN 28, and now confirmed in the attached Levy Affidavit. The only ground given for the temporary sealing is the absence of such a certificate. Both the common law and the First Amendment guarantee the public's right of access to court documents, and Sinclair does not submit any evidence that unredacted personal information remains on PACER, that might justify an exception to those requirements.

4. Mr. Levy's prompt efforts to cure his mistake, once it was called to his attention, undercuts the claimed need for sanctions. On Saturday, May 3, after the mistake was called to his attention, he attempted to get the documents removed from the PACER site, but no personnel were present who could do that. Levy Affidavit ¶ 6. On Monday morning, May 5, he promptly obtained such action through calls to the ECF help desk, while presenting a motion to the Court to substitute redacted filings.

5. Moreover, the record indicates that Sinclair's real objective was not to protect his privacy, but to attack his adversary. First, although the mistaken filing was made on April 30 – and Sinclair stated that evening on his blog that he had reviewed both the brief and its supporting materials, *supra*

n. 1 – Sinclair not only made no effort to confer as required by the local rules, but he waited until the early hours of Saturday morning to file his motion seeking sealing and sanctions, at a time when it would be more than 48 hours until the documents could be removed from the PACER site. At the same time, he posted a notice on his own blog, identifying one of the documents in question – the one document revealing his social security number – by specifying its Docket Number (12-14) and telling anybody reading his blog how to obtain it from the PACER site, that is, by registering for PACER and then paying 8 cents per page. These are not the actions of an individual seeking to guard his privacy. It is, rather, the action of someone trying to create more controversy regardless of any threats to his privacy, which is quite consistent with his actions throughout this case.

6. Finally we come to the YouTube video that purportedly reveals both his social security number and his birth date by displaying documents downloaded from PACER. We say "purportedly" because there is, in fact, no evidence that these numbers were displayed on YouTube. We have only the unsworn say-so of his counsel, who signed the May 8 "supplemental opposition" that so asserts. DN 21. Undersigned counsel have never seen the actual YouTube video, and we cannot say whether Mr. Sibley saw it while it was on YouTube. However, the Derke Affidavit, submitted by a member of the public who did see it (and who urged Google to take it down), avers that the video was too small and too blurry to read the words or numbers. ¶ 3. The embedded YouTube video image on Sinclair's blog, cited in the Levy and Derke affidavits, confirms this statement – it is certainly too blurry for undersigned counsel to read (although counsel acknowledges that, at his age, his eyes are not so sharp as they used to be). *See* Levy Affidavit, Exhibit D.

There are further reasons to question the truth of the implicit assertion that the information

was visible on YouTube.[3]  Sinclair claims, on his blog, that he downloaded the video from YouTube, so that he could burn it onto a CD and file it in this Court.  Derke Affidavit ¶ 8.  However, he has not made any such filing.  It is quite possible that he has not filed this document because it would not support his position.  He might also be concerned that a forensic examination of the file might reveal that the video in his possession was **not** downloaded from YouTube, but rather is the original video that was then uploaded to YouTube.[4]  In any event, under the Best Evidence Rule, the document itself is the best evidence of its contents, and because Sinclair claims to have the original, the Court should not accept Sinclair's unsworn characterization of its contents, but should rather require the filing of the original document that was, according to Sinclair, downloaded from YouTube.  Federal Rules of Evidence, Rules 1002, 1003.

7.  Moreover, apart from the many reasons to question the accuracy of Sinclair's claims that widespread Internet posting of his personal information resulted from the filings in this case, the fact remains that Sinclair's birth date remains available to the public on the Internet even apart from those filings, as described in the Levy and Derke affidavits.  Indeed, two of the documents submitted in support of the Opposition were themselves found on the Internet, and although the filings themselves are now redacted, the originals remain online (with birth date information displayed); one of these

---

[3]DN 21 only asserts that exhibits containing the numbers were displayed on YouTube.  It never states that the numbers were discernible.

[4]The forensics expert consulted by undersigned counsel indicated that although it is possible to download a YouTube video (in violation of YouTube's Terms of Service), instead of just watching it, YouTube deliberately makes that technically quite difficult (because its business model is based on viewers using its web site and seeing advertising).  If the video was only on YouTube for a short time (and the Derke Affidavit so suggests), it is less likely that Sinclair could have successfully downloaded the electronic file, making it more likely that whatever he has is the original video that was uploaded to YouTube, and not a file downloaded from it.  In the event Sinclair ever files the CD with the Court, we are prepared to make a proper showing on these issues.

documents has been discussed on Sinclair's own blog. Moreover, the Levy and Derke affidavits reveal that Sinclair has himself been rather careless in repeatedly displaying his birth date on the Internet, in ways that would be obvious to any regular Internet user, Levy Affidavit ¶¶ 13, 15, and by the posting of materials on his own blog in a manner that allows more perceptive users to discern both his birth date and his social security number. *Id.* ¶ 14; Derke Affidavit ¶¶ 6, 7. [5]

## CONCLUSION

The motion for temporary sealing and for monetary sanctions should be denied.

Respectfully submitted,


    /s/ Paul Alan Levy
Paul Alan Levy (DC Bar No. 946400)
Greg Beck (DC Bar No. 494479)

    Public Citizen Litigation Group
    1600 - 20th Street, N.W.
    Washington, D.C. 20009
    (202) 588-1000

May 19, 2008                    Attorneys for mzmolly and DemocraticUnderground.com

---

[5]The Derke and Levy affidavits are being submitted to the Court unredacted, with a consent motion to file under seal. Redactions have been made in the efiled versions to conceal on-line locations referenced in this brief, which is written in a somewhat conclusory form on this point so that, consistent with the First Amendment principle of maximizing public access to court records, only the affidavits need be redacted.

-10-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE SINCLAIR,                          )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )        No. 1:08-cv-00434-HHK
                                            )
TubeSockTedD, mzmolly and OWNINGLIARS,      )
                                            )
                    Defendants.             )

**PROPOSED ORDER**

Plaintiff's motion for temporary sealing of documents, and for sanctions, is denied.

_____
United States District Judge

-11-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE SINCLAIR,                         )
                                           )
                Plaintiff,                 )
                                           )
        v.                                 )       No. 1:08-cv-00434-HHK
                                           )
TubeSockTedD, mzmolly and OWNINGLIARS,     )
                                           )
                Defendants.                )

**THIRD AFFIDAVIT OF PAUL ALAN LEVY**

1.    My name is Paul Alan Levy.  I am lead counsel for mzmolly and Democratic
Underground. This affidavit is made in opposition to plaintiff's motion to seal the entirety of my
clients' filing (DN 12) in opposition to the motion to compel discovery identifying mzmolly, and for
sanctions against me personally.

2.    I acknowledge that three exhibits to DN 12 that I e-filed in the middle of the day on
Wednesday, April 30, contained Sinclair's birthdate; that one of those documents contained
Sinclair's social security number; that this e-filing violated the Local Rules.  I apologize to Larry
Sinclair for this error.

3.    The first I learned of this mistake was when I came to my office on Saturday, May 3,  to
work on a brief that was due to be filed on Monday in a different case, in the Northern District of
Atlanta, and saw an email notifying me that Sinclair had posted a statement on his blog about the
April 30 filing.  Sinclair's post explained that his social security number was in a document that was
open for inspection on the Court's PACER web site.  Sinclair identified the particular document in
which that information could be found, and stated that any member of the public could obtain the
document by registering for PACER.  Later in the day, I printed a copy of the part of his blog posting

that told the public how and where to obtain this information. Those pages are attached as Exhibit A.

4. I then saw that Sinclair's counsel, Mr. Sibley, had filed his first motion to seal the filings and for sanctions. I noted that the e-mail notifying me of the e-filing had been sent at 7:47 AM on Saturday morning. This was the first I heard that such a motion might be filed. Mr. Sibley never contacted me to discuss the issue or to confer about his proposed motion.

5. I immediately examined the document that Mr. Sibley and his client had identified, and reviewed other exhibits to the filing to determine whether similar information was present elsewhere. I noticed that there was birthdate information in a second document. I prepared new documents for filing and scanned new copies on which the word "Redacted" was placed on a label covering the information.

6. I looked on the Court's web site to see how I could rectify the error by getting the redacted documents substituted for the old ones. I called the ECF Civil helpdesk number to see whether anyone would answer, and sent an email to the Court's ECF email address explaining the problem and inquiring what I could do to get the documents taken down and/or replaced. A copy of that email (and the ECF desks eventual response on Monday) is attached as Exhibit B. In addition, I called the Court's weekend emergency number to see whether there was anybody available over the weekend to get the documents taken down. I was told that there would be nobody available to address the issue until Monday.

7. Meanwhile, I reviewed other documents that had been efiled, while continuing to work on my other case on Saturday and Sunday.

8. First thing Monday morning, I called the ECF Civil Helpdesk again, and spoke to the

woman who answered the telephone. I explained the problem, and asked how the unredacted documents could be removed. She told me that I would have to file a motion to replace the filings. However, she said that she would, as a courtesy, immediately disable access to the two documents in question, pending the filing of my motion.

9. I began preparing such a motion, while also continuing to review the other exhibits to DN 12 to look for other pages that might contain the birthdate or SSN. I also called Mr. Sibley to request his consent to the motion. As indicated in my certificate of conference, I got error messages to the effect that all circuits were busy. After a few such calls did not work, I sent Mr. Sibley an email, requesting consent to get the documents replaced. I copy of that email (and of Mr. Sibley's eventual response) is attached as Exhibit C.

10. In the course of my review, I identified a third Exhibit that contained Sinclair's birthdate. Because the relevant components of that Exhibit were documents had been downloaded directly into PDF from publicly accessible Internet sites (where the birthdate was displayed), I could not do the redactions by hand, so I sent the document to a colleague who had Adobe Acrobat on his computer, to have him to the redactions. But I immediately called the ECF Civil Helpdesk, and told them that still another document had identifying information whose posting was limited by the Rules. The woman to whom I spoke told me that she would disable access to that document, as well. Within minutes after I spoke with her, I checked the Court's PACER web site and saw that PACER access to all three documents had been disabled.

11. I have to assume that if Mr. Sibley had called the ECF Helpdesk on Thursday or Friday to alert them to the presence of identifying information, that he too could have obtained prompt relief pending the filing of a motion.

-3-

12. Because I still had not been able to reach Mr. Sibley by telephone, I checked a second web site that he maintains, and found a toll-free number on that web site, which I used to call him. When I finally got through to him, we had the telephone conference that is reflected in my certificate of conference in DN 19. Because Mr. Sibley hung up on me after stating his own position, I was unable to tell him that, by the time I talked to him, I had reviewed the exhibits to DN 12 and was fairly confident that none of them besides the ones that I had already identified for redaction contained Sinclair's social security number and birth date. I also would have told him that the Exhibits I **had** identified as containing the information had already been taken down. However, I would have added that I wanted to conduct yet another review, and to ask a colleague to check my review, before making a certification to the Court. Based on that further review, I do not see any further identification of Sinclair's birthdate or social security number by anybody other than Sinclair.

13. Although this information is no longer in the Court filings, Sinclair's birthdate was widely posted on the Internet well before DN 12 was filed.

Someone purporting to be Sinclair posted comments to that discussion. Sinclair's birthdate was specifically mentioned during that discussion.

14.  In addition, by magnifying the PDF document on Sinclair's own blog, discussed in the Derke affidavit, I am able to see Sinclair's birthdate and social security number through the redactions on both my laptop and my desktop at home.  I cannot see through the redactions on my computer here at work.  I attach as Exhibit D a screen print of the embedded YouTube video from Sinclair's own blog, reflecting that the words and numbers are too small and blurry to be read.

15.  In my experience, it is common for Internet user

, which

tends to confirm his birthdate.  It does not appear that, in the period before the filing of DN 12, Sinclair has made much of an effort to prevent others from determining his birthdate.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct.  Executed on May 19, 2008.

_____
Paul Alan Levy

-5-

EXHIBIT A

# Paul Levy Of PCLG, Intentionally Discloses My Personal Information

Posted on *Saturday, May 3, 2008.*



Paul A. Levy, Esq.

Attorney for MZMOLLY and DemocraticUnderground.com

It appears that Paul Levy, Attorney with Public Citizen Litigation Group, believes he is entitled to call me all kinds of things while at the same time committing criminal acts himself.

On April 30, 2008, with Mr. Levy's full knowledge, Public Citizens Litigation Group, posted on their web site

(the following was posted on BHDC comments by Paul Day and "The Final say" aka Paul Day/Mitch/MzMolly/Concerned Citizen/Mike)

'125. The fianl say said:
Larry sinclair is owned!!
http://www.citizen.org/documents/SinclairMemoOpp.pdf
posted April 30th, 2008 at 8:44 pm | Quote'

notice of pleadings filed in the SINCLAIR v. TUBESOCKTEDD, et al. case to promote themselves. In this posting Mr. Levy and PCLG made reference to exhibits in the pleading, which could and would be accessed by anyone via PACER. Defendants supporters, friends, and I believe defendants themselves began posting these exhibits around the internet immediately.

In Exhibit "D" of Affidavit of Paul A. Levy, Mr. Levy went to great lengths to delete the "date of Request, name of person requesting, address of person requesting, and amount paid by person requesting" my Colorado Department of Corrections files (which I was told by CDOC on Friday may have been obtained illegally).

Yet Mr. Levy, in Document 12-14, DECLARATION OF WM. TOBIAS MORROW, ESQ., Exhibit -1, did knowingly, intentionally and illegally disclose my Social Security number to the same individuals that have continued to threaten me, attack me, and misrepresent me, not to mention to anyone who agrees to pay (or even those University Students who have been using school resources to defame me) 0.08 cents per page for access via PACER.

Maybe Mr. Levy needs to answer to these acts since he is claiming people have the right to make false statements and not be responsible for them, should Mr. Levy be held responsible for knowingly and intentionally disclosing my Social Security number?

Mr. Levy, since you say the internet is a forum for expressing opinion, my opinion is you are personally the lowest of low life's and you stand on your soap box preaching how Citizens have a right to protection while at the same time intentionally disclosing my information which in fact is a criminal act. I do now believe you should be liable for your actions. Let one single person or group attempt to access my credit reports, bank account information or medical or social security or tax information and I will not rest until you are dis- barred and have lost any financial gains you have made to this point. This sir is not a threat of any kind, it is a promise.

<u>Read Full Post</u> | <u>Make a Comment</u> ( 71 so far )

---

## Recently on Larrysinclair0926 Official Obama Drug Scandal Weblog...

### Rev. Wright: I Ask You To Do What Jesus Would Do!
Posted on *Thursday, May 1, 2008.*

### Obama/Wright Murder Connection Investigation Demanded!
Posted on *Wednesday, April 30, 2008.*

### Thinking About Throwing In The Towel.
Posted on *Wednesday, April 30, 2008.*

### Obama & Wright: Which One Will Rat The Other Out First Over The Donald Young Murder?
Posted on *Tuesday, April 29, 2008.*

### Obama/Young/Rezko/Levine Brings Strange Delivery To My Attorney's Office
Posted on *Tuesday, April 29, 2008.*

### Chicago PD Meeting and "Ethical" High Priced Lawyer's, Add Another One To The List
Posted on *Monday, April 28, 2008.*

### Chicago PD Meet to be Scheduled; More High Price Lawyers ; Digg.com Served
Posted on *Friday, April 25, 2008.*

### Chicago PD Request: Is Obama & Rev. Wright Having Trouble Sleeping?
Posted on *Thursday, April 24, 2008.*

EXHIBIT B

**From:** &lt;dcd_cmecf@dcd.uscourts.gov&gt;
**To:** "Paul Levy" &lt;plevy@citizen.org&gt;
**Date:** 5/5/2008 2:49:14 PM
**Subject:** Re: E-filing error

Mr. Levy-
Did you speak to anyone in the office about this today, or do you still
need help with this matter? Please let me know. Thank you.
Nicole Wilkens
Clerk's Office


      "Paul Levy"
      &lt;plevy@citizen.org&gt;
      To  &lt;dcd_cmecf@dcd.uscourts.gov&gt;
      05/03/2008 02:40 PM
      Subject    E-filing error


It has come to my attention that I mistakenly left a social security number
unredacted in an e-filing that I made last week.

Is there any way to substitute a redacted version of the document, or must
the improperly e-filed document remain on the court's ecf site?

I will call first thing Monday morning to see what I can do to rectify this
error.

Paul Alan Levy
Public Citizen Litigation Group
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000
http://www.citizen.org/litigation

EXHIBIT C

**From:**      "Montgomery Sibley" <mbsibley@earthlink.net>
**To:**        "'Paul Levy'" <plevy@citizen.org>
**Date:**      5/5/2008 10:05:22 AM
**Subject:**   RE: Request for consent

Paul:

I consent only to the total sealing of the exhibits you filed until you have
vetted and then certify that there are no other breaches of my client's
privacy.

Montgomery

-----Original Message-----
From: Paul Levy [mailto:plevy@citizen.org]
Sent: Monday, May 05, 2008 9:26 AM
To: Montgomery Sibley
Subject: Request for consent

I have been trying to call you but, each time I call, after a single ring, I
get a message "all circuits are busy now."

I have contacted the ECF desk to get the pages containing personal
identifying information taken down.  In order to get the documents replaced
as soon as possible, I need to file a motion.  In order to get this done as
quickly as possible, I am asking for your consent to substitute pages that
cover the personal information with the word "Redacted."  This consent would
be without prejudice to your right to pursue the additional relief that you
seek in your own motion.

Please advise whether I may represent that you consent.  I'll continue to
try calling, or you can call me back.  I should be in the office all day,
except for an early afternoon meeting.

Paul Alan Levy
Public Citizen Litigation Group
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000
http://www.citizen.org/litigation

EXHIBIT D



Larry Sinclair Obama Drug Scandal - Windows Internet Explorer

http://larrysinclair0926.wordpress.com/

response_to_motion_to_substitute_filing

In addition, it seems Paul A. Levy did c
(below) employed by Markuscon. Gree
legally obtain my SS#?

http://www.youtube.com/watch?v=NBoTHUkNf5A

While the video has since been removed according to Youtube, I have downloaded and saved it and am burning it to disc for filing with the US District Courts. It appears that the poster made a comment on Bigheaddc.com advising people that with my Social Security number and date of birth they could access anything they wanted on me.

Rense   Flash Player   LIMO
YouTube   Barack Obama   Sinclair
snap shots

Click to play

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE SINCLAIR,                          )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )    No. 1:08-cv-00434-HHK
                                            )
TubeSockTedD, mzmolly and OWNINGLIARS,      )
                                            )
            Defendants.                     )

**AFFIDAVIT OF JOSHUA RAY DERKE**

1. My name is Joshua Ray Derke. I make this affidavit with the understanding that it will be used to oppose motions for sanctions sought by Larry Sinclair in his suit against three anonymous bloggers.

2. On Saturday morning, May 3, 2008, Sinclair posted information on his blog telling the public how to obtain his social security number. He did this by announcing that, in a filing earlier that week, Paul Alan Levy had filed documents that were posted on the Court's PACER web site that contained his social security number. Sinclair listed the document number that contained the information (Docket Entry 12-14), specified that the number was contained in Exhibit 1 of that document, and explained that any member of the public could obtain access to the document by registering for PACER and paying 8 cents per page. I believe that Sinclair's purpose for announcing this was to encourage his critics to obtain the information and post it on the Internet.

3. During the following week, it came to my attention that a video had been posted on YouTube that supposedly revealed portions of documents from this case that contained the birth date and social security number of Larry Sinclair. I found the video and watched it. Although the video's description on the YouTube web site indicated that the video revealed Sinclair's birth date and social

security number, I was unable to read either number on the video, because the size of the video was too small, and the picture was too blurry, to discern those details.

4. However, because I believed that the posting of the video was improper, I flagged it for removal. At the time I watched the video, it appeared to have been put up very recently, and the profile of the poster indicated that he or she had only had an account for a day. I also noticed that the video had a very small number of views. When I visited the YouTube web site later that night, the video had already been taken down. Thus, it appears that the video was up on the YouTube web site for only a brief period of time. More recently, a visitor to the location where the YouTube video had been posted, http://www.youtube.com/watch?v=NBoTHUkNf5A, sees a message stating that the "video has been removed by the user."

5. I do not know who posted that information on YouTube. I suspect that it was posted by Sinclair himself, or by somebody associated with him, because in a May 6 posting on his own blog, still viewable at http://larrysinclair0926.wordpress.com/2008/05/06/yt-video-pclg-paul-levy-ducom-fan-club-post-ss-after-being-called-on-it/, he embedded the YouTube player with the video itself. In my experience, the only way to get the proper code to embed such a video from YouTube in a web site is to take it directly from the web page from YouTube that displays the movie, where, if the embedded code hasn't been disabled by the poster, you can copy and paste the code anywhere that code is compatible. Therefore, on the face of the posting, it would appear that Sinclair was attempting to increase the traffic to the video, which would be odd if it were really true that the video displayed his social security number and birth date in readable form, considering he is complaining about the fact that such information was filed and displayed on the Court's PACER web site. I note that the image from the video that is visible on his web site is too blurry to read the specific words

-2-

or numbers.

6.  Although the birth date and social security number were not viewable from the posted

video, both pieces of information can be found on Larry Sinclair's own web site

7.  The first page

8.  O                                                                    ', Sinclair claimed that he

had downloaded the video from the YouTube web site, and burned it onto a CD for filing with the

Court.  I do not know whether he actually did this downloading, but to my understanding it would

-3-

violate YouTube's Terms of Service for him to have done so.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct.  Executed on May 14, 2008.

Joshua Ray Derke