UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

Lawrence Sinclair,

                Plaintiff,

vs.

TubeSockTedD, mzmolly and
OWNINGLIARS,

                Defendants.

_____/

Case No.: 1:08-cv-00434-HHK

MONTGOMERY BLAIR SIBLEY'S NOTICE
OF TEMPORARY SUSPENSION AND
MOTION FOR HEARING ON TEMPORARY
SUSPENSION

      Montgomery Blair Sibley ("Sibley"), counsel for Plaintiff gives notice of his automatic,

temporary suspension by this Court on May 21, 2008, and submits this, his verified response and

Motion For Hearing on Temporary Suspension, and states:

### STATEMENT REGARDING ORAL ARGUMENT

      Sibley requests – and believes it is his right under the Fifth and Sixth Amendments – oral

argument[1] on the matters raised herein given the complicated nature of the facts and the value that

such an argument would provide to a fair resolution of the issues herein.

### SUMMARY OF ARGUMENT

      The errors in procedure and substance in this matter, singularly and collectively, are of such

magnitude that reciprocal suspension is constitutionally impermissible.  As this Court is obligated

to consider the record before automatically temporarily suspending Sibley, the errors in the Florida

---

[1]   *See*: *Londoner v. Denver*, 210 U.S. 373 (1908)("On the contrary, due process of law has never been a term of fixed and invariable content. This is as true with reference to oral argument as with respect to other elements of procedural due process. For this Court has held in some situations that such argument is essential to a fair hearing."); *Federal Communications Commission v. WJR, The Goodwill Station, Inc*., 337 U.S. 265, 276 (1949)("Without in any sense discounting the value of oral argument wherever it may be appropriate or, by virtue of the particular circumstances, constitutionally required . . ." (Footnote Omitted).)

disciplinary proceedings must be heard by this Court.  In *Selling v. Radford*, 243 U.S. 46, 49 (1917), the United States Supreme Court concluded by <u>expressly</u> holding:

> Thus defining what is open to our consideration, we think we ought not to foreclose the subject on the answer made to the rule to show cause in the proceeding which is now before us, **but that an opportunity should be afforded the respondent, confining himself to the propositions stated, if he is so advised, to file the record or records of the state court within thirty days from this date with permission by printed brief**, considering the record intrinsically, to point out any ground within the limitations stated **which should <u>prevent</u> us from giving effect to the conclusions established by the action of the Supreme Court of Michigan which is now before us**, as we have seen, as part of the petition we are now considering. (Emphasis added).

Accordingly, <u>before</u> "giving effect to the conclusions established by the action of the Supreme Court of" Florida,  an "opportunity should be afforded" to Sibley to present the "record intrinsically, to point out any ground within the limitations stated which should prevent us from giving effect to the conclusions established by the action of the Supreme Court [of Florida] . . . ". Such an "opportunity" will reveal much about the Florida so-called justice system[2]  and is exercised *infra*.

I.    **THE PROCEDURE USED TO MAKE SUCH DETERMINATION WAS SO LACKING AN OPPORTUNITY TO BE HEARD AS TO CONSTITUTE A DEPRIVATION OF THE ATTORNEY'S DUE PROCESS RIGHTS**

First, the Florida Supreme Court Order of Suspension is <u>void</u> as the judicial actors involved **failed** to take the requisite loyalty oaths of offices <u>prior</u> to adjudicating Sibley's disciplinary

---

[2]    Such an opportunity will confirm the continued vitality of President Truman's 1948 observation that: "The main difficulty with the South is that they are living eighty years behind the times and the sooner they came out of it the better it will be for the country and themselves." *Correspondence with friend Ernie Roberts on Civil Rights,* August 18, 1948.

proceedings.

Second, as the practice of law is unquestionably a "fundamental right", Florida's radical departure from constitutionally-mandated procedures for suspending that "fundamental right" as demonstrated by the record below cannot be condoned by this Court by suspending Sibley here.

In particular, (i) attorney disciplinary proceedings are "quasi-criminal" matters and thus to be accorded the substantial procedural rights attendant thereto, (ii) the failure to permit Sibley to call witness and obtain documents violated the Fifth and Sixth Amendments, (iii) the refusal to continue the Final Hearing was an egregious abuse of discretion by the Referee, (iv) the Referee *verbatim* adoption of the Florida Bar's proposed order and his striking of all Sibley's affirmative defenses was plain error and (v) the Referee's behavior removed the label of "fair and impartial" from him and thus denied Sibley such a tribunal.

Second, the premise of *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) – that state proceedings afford an adequate opportunity to raise the federal constitutional claims – is clearly invalid in Florida as <u>all</u> Sibley's substantial "federal constitutional claims" were **stricken** by the Referee and **ignored** by the Florida Supreme Court.

Third, the Florida Supreme Court's *per curiam* without-a-written-decision adoption of the Referee's Report violated Due Process such that this Court cannot be party to such an egregious breach of fundamental procedural due process.

## II.    THE PROOF WAS SO INSUFFICIENT THAT THE COURT, CONSISTENT WITH ITS DUTY, COULD NOT ACCEPT AS FINAL THE CONCLUSION OF THE FLORIDA SUPREME COURT THAT THE SIBLEY ENGAGED IN SUCH MISCONDUCT

The substantive proof errors are just as plain. Simply put, Sibley did <u>not</u> fail to pay child support – he was unable as the record clearly establishes and such order (i) was not issued by a

3

competent court and (ii) in all events was *de facto* overturned on appeal.

Likewise, Sibley did not violate Rule 4-3.1 as **none** of his filings were "frivolous" and the cited court order to that end fails to even mention that phrase.

Accordingly, this Court may not suspend Sibley from the practice of law before it upon the Florida Supreme Court's order.

STATEMENT OF THE CASE AND OF THE FACTS

I.    INTRODUCTION

On **August 5, 2002**, after hearings stretching back two years to **October 24, 2000,** Judge Maxine Cohen Lando of the Florida Circuit Court for the 11th Judicial Circuit, in and for Miami-Dade County, Florida, entered an order in Case No.: 94-18177 FC 19 on child support directing Sibley to pay $100,000 in back child support and thereafter $4,000/month and giving Sibley until **January 1, 2003**, to purge that contempt or face incarceration. A copy of that order is attached as Exhibit "A" to the Florida Bar Complaint in this matter which is found in the Appendix hereto. The order of **August 5, 2002**, was adopted *verbatim* by Judge Lando from a proposed order submitted by counsel for Barbara Sibley, the former wife in that action.

Notwithstanding that Sibley had until **January 1, 2003,** to purge the contempt amount, at a hearing held on **November 22, 2002**, Judge Lando, without notice of her intent to incarcerate Sibley and refusing to allow Sibley to be fully heard, ordered Sibley to commenced a sentence of indefinite incarceration in the Miami-Dade County Department of Corrections which ultimately ran until February 7, 2003, for civil contempt due to failure to pay child support. Notably, Judge Lando had already issued her writ of bodily attachment the day **before** the hearing, apparently having already made up her mind to incarcerate Sibley prior to the hearing. A copy of that order is also attached

4

as Exhibit "A" to the Florida Bar Complaint found in the Appendix hereto.

In the subsequent appellate proceedings before the Florida Third District Court of Appeal, Judges Schwartz, Goderich and Cope issued their opinions on the appeal affirming Judge Lando's August 5, 2002, order which contained significant findings of fact by those appellate judges which had no basis in the record to justify the affirmation.

Finally, in another appeal, Florida Third District Court of Appeal Judges Cope, Gersten and Green entered an order sanctioning Sibley. It is from this order that the second count of the Florida Bar Complaint arises. Again, that order contains numerous misstatements of facts in order to arrive at its apparently pre-ordained conclusion.

Thus, the sole facts upon which Sibley was sanctioned by the Florida Supreme Court rests on two questionable Florida circuit court orders and one Florida district court order.

## II.    BACKGROUND

Sibley's divorce action was commenced on August 12, 1994, by his Former Wife when she filed a petition for dissolution of marriage upon which a final judgment of dissolution was granted on September 20, 1994. Sibley was designated in that final judgment as the "primary residential custodian" of the minor children.

On May 14, 1998, the circuit court entered an agreed order on removing children from Miami-Dade County which required solely that Sibley give Sibley's Ex-Wife forty-five (45) days written notice prior to removing the children from Miami-Dade County.

On March 29, 2000, Sibley gave written notice pursuant to that court order to Sibley's Ex-Wife that he intended to relocate to the Washington D.C. area. In early June 2000, Sibley did relocate and has been domiciled and resided in Maryland since that time.

5

Some 120 days after that March 29, 2000, notice, Sibley's Ex-Wife filed on July 27, 2000, an "Emergency Motion for Temporary Primary Physical Residence of the Minor Children and To Allow Minor Children To Be Enrolled in Private Schools and Prohibiting the Removal of the Children to Washington D.C."  After numerous delays, Judge Lando finally set for conclusion the hearing on the "Emergency Motion" for September 24, 25 and 26, 2001 – over **1½  years later**. During that time, Sibley was <u>only</u> allowed to see his children by Judge Lando seven days.

On August 4, 2001, Sibley filed his Supplemental Petition for Modification of Child Support. That supplemental petition sought relief from the terms of the Marital Settlement Agreement between the parties that (i) Sibley pay $4000/month in support if he relocated from Miami and (ii) Sibley pay all the educational expenses of the children.  The basis for the Supplemental Petition was that due to his inability to secure employment as an attorney and the birth of a child by a subsequent marriage, there had been a sufficient, material, involuntary and permanent in nature change in his financial circumstances warranting a modification.  Significantly, though part of the subsequent hearings, Judge Lando <u>never</u> entered an order on that Supplemental Petition for Modification.

At the conclusion of the hearings on the motion for temporary custody held on September 26, 2001, as Sibley's Ex-Wife had <u>not</u> finished presenting her direct case – though having hearings on October 23, 2000, December 15, 2000, September 24, 25 and 26, 2001, to do so – the matter was adjourned by Judge Lando to October 8, 2001.

On October 8, 2001, Sibley's Ex-Wife finally rested her case.  Hence, after waiting **<u>438</u>** days to present his case in the half day allotted to him by Judge Lando, Sibley was able to in minimal form present his case.  Thereafter, Judge Lando gave the parties two weeks to submit proposed findings of facts and law.

6

On December 15, 2001 – **Five Hundred Six (506)** days after the filing of the "Emergency Motion",  Judge Lando <u>finally</u> entered her Order on Emergency Motion for Temporary Custody of the Minor children.  Those children had been residing with the Sibley's Ex-Wife since July 2000 <u>without</u> benefit of a court order permitting a change in custody until this order was entered on December 15, 2001. Noteworthy is that the order entered by Judge Lando was <u>identical</u> to the proposed order submitted by Sibley's Ex-Wife's Counsel.

In January, 2002, Sibley's Ex-Wife filed two motions for contempt relating to enforcement of the marital settlement agreement between the parties relating to child support.  The first sought payment of $4,000/month in child support from July 2000 until the present pursuant to the terms of the Martial Settlement Agreement between the parties which they – and notably <u>not</u> the court – had determined   in July 1994 was an appropriate amount given the parties relative financial circumstances at that time.

The second motion for contempt sought enforcement of the terms of the Marital Settlement Agreement between the parties which required that Sibley pay 100% of the children's educational expenses.

On June 4, 5, 6, 7, 2002, Judge Lando held and then adjourned until July 1, 2002, the trial on the pending motions related to final child custody, support and modification of Sibley's obligations under the Marital Settlement Agreement.

At the conclusions of the hearings on July 1, 2002, Judge Lando – without making her intentions known on the record – ordered counsel to submit proposed orders and written closing arguments by July 19, 2002.   Sibley <u>timely</u> submitted his 52 page proposed findings of fact and conclusions of law.  On July 26, 2002, after having the benefit of receiving and reviewing Sibley's

7

proposed findings, counsel for Sibley's Ex-Wife <u>belatedly</u> submitted her proposed orders.

On August 5, 2002, some <u>692</u> days after the commencement of the hearings which formed the basis for Judge Lando's rulings on the motion to transfer custody and contempt, Judge Lando signed the proposed order granting Sibley's Ex-Wife's motion for contempt. A copy of that order is attached as Exhibits "A" to the Florida Bar Complaint found in the Appendix.

Most conspicuously, a comparison of Sibley's Ex-Wife proposed order with Exhibit "A" of the Florida Bar Complaint reveal that they are **identical**: as such, it is plain that Judge Lando entered *verbatim*, the proposed order of Sibley's Ex-Wife's Counsel on the contempt motion and **ignored** Sibley's proposed finds and fact and law *in toto*.

Judge Lando adopted Sibley's Ex-Wife's counsel's findings *verbatim* and ordered Sibley (i) to pay $100,000 for past due child support and (ii) remain current on his child support of $4,000 per month. Next, Judge Lando found that the Sibley "at all times from May 2000 had the present financial ability to pay but willfully or intentionally failed and refused to do so and wilfully violated the Order of this Court." The Court then sentenced Sibley to Ninety (90) days in the Dade County Jail beginning January 1, 2003, unless he paid the specified amounts by December 1, 2002.[3]

---

[3]    Not <u>one</u> single fact or legal position of Sibley's from his 52 page proposed findings of fact and conclusions of law was – understandably – included in Sibley's Ex-Wife's counsel's proposed orders adopted *verbatim* by Judge Lando. Among those conspicuously absent facts which Judge Lando failed to recognized in her adopted order that Sibley had demonstrated without refutation by Sibley's Ex-Wife were:

- Sibley had remarried and had another child imposing a new set of financial obligation upon him;

- Sibley had lost his job as an attorney and after diligent search was unable to find comparable employment;

On August 27, 2002, Sibley filed his notice of appeal of the above orders.  That appeal was assigned Case No.: 3D02-2308 by the Third District Court of Appeal.

Notwithstanding that Sibley was given until **January 1, 2003**, to pay the ordered $275,000, Judge Lando incarcerated Sibley for "indirect contempt" on **November 22, 2002**, upon her finding that Sibley "continues to 1) have the ability to pay the past due child support (of $100,000), and 2) that he is willfully refusing to pay his child support obligation."   Patently, this action by Judge Lando was to put the "squeeze" on Sibley given the pending Thanksgiving and Christmas holidays and his four year old son's upcoming December birthday.

The following day, November 23, 2003, Sibley filed a notice of appeal with the Florida Third District Court of Appeal of the November 22, 2002, Family Court order which was assigned Case No. 3D02-3171.

On December 23, 2003, two judges of the Florida Third District Court of Appeals  – Alan R. Schwartz and Mario P. Goderich – entered the majority opinion in *Sibley v. Sibley*, Case No. 3D02-3171, 833 So.2d 847 (Fla. 3d DCA 2002)  affirming Sibley's incarceration "for indirect contempt," holding remarkably that (i) "the record shows substantial assets, although admittedly not

---

- Sibley has and continues to pay the medical expenses of the children and life insurance for their benefit on himself; a sum in excess of the child support guidelines;

- Sibley made his motion for modification of his support obligations some six months prior to the motions for contempt, thereby undercutting a finding of wilful non-compliance as found by Judge Lando in her contempt orders;

- Sibley was employed in a family-owned start up business which has yet to predictably turn a profit in its first year though it is a viable company manufacturing custom made goods for, among others, White House Communications, C-SPAN, and the Smithsonian.

in the purge amount, in his [Sibley's] own name" and (ii) Sibley "may command, simply by asking, the payment of the purge amount through his very wealthy father. . ."

In the dissenting opinion the Honorable Judge Cope, pointed out that the holding of the majority that Sibley's "very wealth father" can pay was issued by the majority based on the "`tipsy coachman' doctrine, or `right for the wrong reason' rule" for which there was **no** factual support in the record.   Notably, though this appeal of Judge Lando's orders resulted in a *de facto* reversal of the conclusion that Sibley willfully failed to pay child support, the Florida Bar omitted this appeal from its Complaint.

Subsequently, Sibley took another appeal to the Third District Court of Appeal which was assigned Case No.: 3D03-2083.  The second count of the Florida Bar Complaint arises from that portion of the opinion in that matter which held in pertinent part:

> The former wife contends that the husband's appeals have repeatedly been shown to be without merit and have constituted an abuse of the legal process. Upon consideration of the motion, the former husband's response filed January 5, 2004, and after review of this court's files, we agree. . . .The former husband has served as an unending source of vexatious and meritless litigation. This has caused needless consumption of resources by the court system and needless expense to the former wife. Awards of attorney's fees have not served as a deterrent, as the former husband has not paid them. We conclude that the standards of Lussy are met. We have considered the criteria set forth in the Safir decision and conclude that those are met as well. We therefore prohibit the former husband from further self-representation in this court.

On November 12, 2004, Father made a motion for rehearing challenging the panel to cite even one case brought before it in which Father  was deemed to have filed –either by the Court or Sibley – a frivolous, abusive or incomprehensible pleading.  Notably, in denying the motion for rehearing, the panel was unable and/or refused to so do.

10

### III.    COURSE OF PROCEEDINGS BELOW

#### A.    THE DISCIPLINARY COMMITTEE HEARINGS

On November 22, 2002, Judge Lando – who apparently couldn't wait to report her premature incarceration of Sibley to the Florida Bar – wrote a letter to the Florida Bar reporting her "finding" of contempt of Sibley – five weeks before the January 1, 2003, deadline to purge the terms of her August 5, 2002, order.   As a result, the Florida Bar assigned that complaint TFB File No. 2005-00,557(2B) alleging failure to pay child support.

Delaying the matter apparently to allow the process to be the punishment – and with full knowledge that the State of Maryland would not admit Sibley to practice as long as there was a disciplinary proceeding pending in Florida – it was not until (i) November 5, 2005 when the Grievance Committee found probable cause and (ii)  July 12, 2006, that the Florida Bar filed the instant complaint – a delay of **One Thousand Three Hundred Twenty Eight (1,328)** days from Judge Lando's contrived complaint to filing of the first count of the instant Complaint on TFB File No. 2005-00,557(2B).

The Second Count of the Complaint which alleges a violation of Rule 4-3.1 (Meritorious Claims) arose from the Complaint of Sibley's Former Wife's attorney filed with the Florida Bar in early December 2004 arising from the November 4, 2004 opinion in *Sibley v. Sibley*, 885 So.2d 980 (3rd DCA 2004) in which the Court found that Sibley was "a source of vexatious and meritless litigation."   That matter was assigned TFB File No. 2003-00,597(2B).   Again, making the process the punishment, it was not until (i) December 1, 2005 that the Grievance Committee found probable cause and (ii) July 12, 2006, that the Florida Bar filed the instant complaint – a delay of Six Three Hundred Fifteen (**615**) days from the complaint to filing of the second count of the Complaint arising

11

from TFB File No. 2003-00,597(2B).

### B.   THE LEON COUNTY REFEREE

Continuing the pattern of using the nuisances of procedure to inflict punishment through process prior to adjudication, Justice Lewis of the Florida Supreme Court in an order dated July 27, 2006, referred the matter to the Circuit Court of Leon County for assignment of a Referee. This "assignment" was done without an *iota* of facts in the Complaint supporting venue in Leon County and was plainly incompetent under Florida Bar Rule 3-7.6(d). Subsequently, the Honorable Judge John E. Crusoe was appointed to act as Referee in the Florida disciplinary matter.

On July 15, 2006, Sibley served and filed his Notice of Depositions Duces Tecum and of Production from Non-Parties" seeking the depositions of the judges who had issued the order upon which solely the Florida Bar sought discipline.[4]

On September 15, 2006, Sibley filed his (i) Answers and Affirmative Defenses to the Complaint, (ii) his "First Omnibus Motion" seeking, *inter alia*, a change in venue and (iii) motion to compel production of documents previously requested from the Florida Bar.

On September 20, 2006, notwithstanding the pending motion to change venue, the Referee entered his order denying Sibley's "First Request for Issuance of Subpoenas Duces Tecum" seeking the depositions of the afore-mentioned judges.  On September 26, 2006, Sibley promptly filed his "Motion to Re-Consider Order Denying Sibley's First Request for Issuance of Subpoena Duces Tecum".

On October 3, 2006, as the Florida Bar couldn't not raise a <u>single</u> argument in opposition to

---

[4]   Judges Gerald B. Cope, Jr., David M. Gersten, Melvia B. Green,  Mario P. Goderich, of Third District Court of Appeal, Alan R. Schwartz, Former Judge Third District Court of Appeal and Maxine Cohen Lando, Judge, 11th Judicial Circuit.

the motion to transfer venue and thus did not object, the Referee granted Sibley's motion to change venue to Miami-Dade County, the only permissible venue under Florida Bar Rule 3-7.6(d).

### C.    THE MIAMI-DADE COUNTY REFEREE

Pursuant to Justice Lewis' order of October 4, 2006, this matter was then transferred to Miami-Dade County.  The appointment of the Honorable Orlando A. Prescott as the successor-Referee was made on October 11, 2006, by 11th Circuit Chief Judge Farina.  According to the Florida Supreme Court order of October 4, 2006, the Referee was ordered to (i) conduct a case management conference within sixty (60) days, to wit, **December 10, 2006**, and (ii)  to issue his Report by **April 9, 2007.**[5]

On September 1, 2006, the Florida Bar moved to strike Sibley's Affirmative Defenses.  On December 15, 2006, without affording Sibley an opportunity to be heard in opposition, the Referee granted the motion thereby striking those affirmative defenses which included, *inter alia*, federal constitutional claims, and – commencing a pattern and practice of the Referee – signed the Florida Bar's proposed order without prior comment by Sibley on that order.

The next event is clouded due to its *ex parte* origins between the Referee and counsel for the Florida Bar, but on **December 18, 2006**, again without prior consultation with Sibley, the Florida Bar noticed a "Telephone Status Conference" for January 2, 2007.  At that hearing, the Case Management Conference to "establish a schedule for the proceedings" was set for January 23, 2007 – notably Forty Five (45) days after the Florida Supreme Court's order requiring such a hearing by December 10, 2006.

---

[5]    Putting the initial resolution of this matter at One Thousand Six Hundred (**1,600**) days since the initial complaint by Judge Lando.

13

On January 16, 2002, the Referee entered an order granting Sibley's motion to reconsider the issuance of subpoenas for the afore-mentioned judges.

At the conclusion of the January 23, 2007, hearing, the Referee requested further briefing on Sibley's First Request for Issuance of Subpoenas Duces Tecum filed on September 16, 2006. Full briefing was accomplished by the parties and non-parties as ordered by February 15, 2007.

Either prior to or after the hearing on January 23rd, the Referee – despite asking the parties to submit an agreed-as-to-form order of his rulings at that hearing – entered the Florida Bar's proposed orders:

    (i)    Denying Sibley's Motion to Compel production;

    (ii)    Denying Sibley's Motion for More Definite Statement; and

    (iii)    Granting the Florida Bar's Motion for Summary Judgment (though he denied the motion orally during the hearing)

After consultation between the parties, they submitted the agreed-as-to-form order which the Referee entered on January 29, 2007. Notably, accurately reflecting what transpired at the hearing, the Florida Bar's Motion for Summary Judgment was <u>denied</u>. Hence, despite the Florida Supreme Court's order requiring compliance with Florida Bar Rule 3-7.6(c) by **December 10, 2006**, as of **January 29, 2007**, the Referee had ignored without (i) giving explanation or (ii) seeking leave to delay his obligations to resolve the initial matters within the requisite Sixty (60) days.

Of perhaps determinative status, on **January 31, 2007**, Sibley filed his "Second Request for Issuance of Subpoenas Duces Tecum" seeking the deposition of Joanne E. Sargent, Counsel, Third District Court of Appeals whose testimony was relevant to the matters at hand to demonstrate the open hostility of the Florida judiciary to Sibley and serve as a basis to impeach the various orders

14

which were the sole accusations against Sibley made by "persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy".[6] A copy of the letter from Joanne E. Sargent which demonstrates the hostility and bias of the Third District Court of Appeals in support of that request is attached as Exhibit "B" to the Appendix. Significantly, *the Referee never troubled himself to rule upon this the Second Request and to this day it remains outstanding*.

On March 8, 2007, shepard of the Referee's obligations that the Florida Bar plainly sees its role, counsel for the Florida Bar wrote the Referee requesting an order to set a final hearing date. The Referee ignored this letter. On March 19, 2007, Mr. Min continued his secretarial duties for the Referee reminding him again that the Referee had failed to discharge this Court's order to set a final hearing.

On March 27, 2007, the Referee in an *ex parte* communication contacted Mr. Min to request Mr. Min to draft a motion to the Florida Supreme Court to enlarge time to finish the Report due on April 9, 2007. Though specifically requested by Sibley to detail the nature of that *ex parte* discussion pursuant to *The Florida Bar v. Mason*, 334 So.2d 1,7 (Fla. 1976)[7], the Referee refused to disclose the sum and substance of that *ex parte* communication.

Notably however, when contacted by Sibley making the same demand, Mr. Min stated "I was contacted by Judge Prescott's assistant to submit a proposed Motion for Enlargement of Time."[8]

---

[6]    *Wolff v. McDonnell* 418 U.S. 539, 595 (1974) (Douglas, dissenting).

[7]    "We are unimpressed with Sibley's argument that the punishment is too severe, particularly in view of Sibley's willful failure to disclose the *ex parte* communications after being asked to do so by opposing counsel." *Id.* at 7.

[8]    Mr. Min initially represented to Sibley that he was "contacted by the Referee" and only after being accused of improper *ex parte* communication did he change his story to being contacted by "Judge Prescott's assistant".

*A priori* this is not an accurate representation by Mr. Min as the substance of the *ex parte* communication obviously had to be quite a bit more than that as Mr. Min's draft *for the Referee* of the motion to enlarge time including the language as to the "good cause" for the delay. Therefore, the *ex parte* communication between the Referee and Mr. Min was necessarily quite a bit more than has been disclosed.

Thus, on March 27, 2007, Mr. Min indeed drafted a motion to enlarge time and forwarded to the Referee who promptly and ultimately ignored it. Upon receipt of this proposed motion, Sibley immediately made on March 28th his "Motion to Dismiss or, Alternatively, Sibley's Fourth Affidavit and Motion to Disqualify".

After receipt on March 28th by the Referee of Sibley's "Motion to Dismiss or, Alternatively, Sibley's Fourth Affidavit and Motion to Disqualify", the Referee in a burst of judicial attention without apparent forethought to this matter entered orders (i) clarifying his prior orders which had both granted and denied the Florida Bar's motion for summary judgment and (ii) denying Sibley First Request for Issuance of Subpoenas Duces Tecum[9].

Additionally, on March 28th, the Referee entered a "Notice of Final Hearing" setting April 16, 2007, at 1:00 p.m. for the putative, out-of-time and void Final Hearing. A copy of that "Notice Setting Final Hearing" is attached to the Appendix as Exhibit "C" to the Appendix.

Notably, (i) there was <u>no</u> certificate of service on the "Notice", thereby violating the applicable Florida Bar Rules and (ii) the envelope in which the order was sent did not contain any stamp and thus is of uncertain mailing date.

Moreover, notwithstanding the Referee had faxed orders to Sibley on various occasions (see

---

[9] Though, as noted above, <u>ignoring</u> Sibley Second Request for Issuance of Subpoenas Duces Tecum.

16

Exhibit "D" in the Appendix), the Referee decided it was appropriate to let Sibley – who lives in Maryland – know of the hearing date by U.S. mail. Additionally, the "Notice" failed to indicate the number of days for the hearing – not surprising as that issue was never raised or addressed at the January 23, 2007, status hearing and indeed was incapable of being resolved as Sibley still had discovery requests outstanding. Finally, the Referee never checked with Sibley as to his availability for that hearing on April 16, 2007..

Upon receipt of the "Notice for Final Hearing" on April 5, 2007, Sibley immediately made a motion to continue the trial for two weeks or, alternatively, appear by telephone hearing for the yet-to-be held requisite Case Management Conference. The basis for the continuation request of two weeks was that Sibley was (and still is) involved in a very-high profile case with issues both legal and of national security concerns the discharge of which required his professional attentions to his client in Washington, D.C., during the last two weeks of April.

On April 10, 2007, Mr. Min again reminded the Referee that the April 9th deadline had come and gone, and suggested a motion for enlargement of time to file the Report might be politic.

Accordingly, on April 10, 2007, the Referee made a factually unsupported motion to enlarge, seeking Forty-Five (45) days, to finish the matter – though the Referee did not believe it was necessary for him to explain how he did not have time to finish this matter though given notice on October 11, 2006, that he had to finish this matter by April 9, 2007.[10] Significantly, in that motion the Referee makes conclusory factual statements that Sibley specifically challenges as to their validity.

On April 12, 2007, though having (i) failed to hold the requisite Case Management

---

[10] The Florida Supreme Court granted that motion gratuitously converting it to a motion to enlarge time without giving Sibley a chance to reply.

Conference at all, (ii) ignored this Court's April 9, 2007, deadline to finish the final hearing and (iii) belatedly asked for and received a Forty Five (45) extension from this Court to finish the matter, the Referee ***refused*** Sibley's "Motion to Continue Final Hearing", for two weeks and ***refused*** to permit Sibley to appear by telephone pursuant to Florida Rules of Judicial Administration, Rule 2.071(c) on April 16, 2007. A copy of that order is attached as Exhibit "D" to the Appendix.

On April 16, 2007, without permitting Sibley to appear by telephone, the Referee conducted and concluded this matter at an *ex parte* hearing with Mr. Min thereby trying Sibley *in absentia*. Sibley, due to the nature of his professional obligations, was unable to attend.

On or about April 20, 2007, Sibley and the Florida Bar submitted proposed Reports. On June 28, 2007 – adopting *verbatim* except for an increase of the term of suspension recommended by the Florida Bar from two (2) to three (3) years the Florida Bar's proposed Report and failing to include a single fact or conclusion proposed by Sibley – the Referee *putatively* issued his Report, though – continuing a pattern of passive-aggressive behavior towards Sibley – ***failed*** to serve it upon Sibley[11]. A copy of that Report and Recommendation is attached as Exhibit "E" to the Appendix.

Given that the putative Report contained factual representations by the Referee which were demonstrably false and included an *ad hominem* attack on Sibley, Sibley sought from the Florida Supreme Court a subpoena *duces tecum ad testificatum* directed to the Referee given that Referee misrepresented facts in the Report when he stated "The undersigned attempted to schedule a mutually convenient time for the final hearing and left messages for the Sibley to determine what his schedule was. As of the filing of this report, none of those messages have been returned." (Report, p. 2). This blatant prevarication can be established through telephone records and oral

---

[11]    This failure to serve by the passive-aggressive Referee was arguably to allow the time to appeal to lapse thereby foreclosing appellate review.

examination of the Referee regarding this as to exactly when he "left messages" and Sibley's alleged failure to return them.

That request for discovery was denied by the Florida Supreme Court.

### D.    THE FLORIDA SUPREME COURT PROCEEDINGS

On July 31, 2007, Sibley timely filed his "Petition for Review" with the Florida Supreme Court despite the acknowledged improper attempts by the Referee and the Florida Supreme Court to fore-shorten the time for that filing by (i) not properly serving Sibley and (ii) *ex cathedra* ignoring the requirements of Florida Bar Rule 3-7.7(c)(1).  Briefing by Sibley and the Florida Bar thereon was concluded on November 15, 2007.   Sibley's appeal specifically raised the following issues:

1.    Sibley was Denied A Fair and Impartial Judiciary;

2.    Sibley Was Put to Charges Not Made Under Oath;

3.    Sibley Was Denied His Right to Confront and Cross Examine His Accusers and to Call Witnesses in His Defense;

4.    The Premise of *Middlesex* Was Violated by the Striking of All Sibley's Affirmative Defenses Which, *Inter Alia* Included Federal Constitutional Claims;

5.    Sibley Could Not be Punished by Florida for Properly Pursuing State and Federal Court Remedies; and

6.    Florida Bar Disciplinary Proceeding Are a "Quasi-criminal" Proceeding and Not a "Quasi-judicial Administrative Proceeding";

Though Sibley had (i) moved to disqualify the Florida Supreme Court Justices and (ii) specifically demanded oral argument by motion, the Florida Supreme Court **never** ruled upon these requests and the appeal was submitted to the Florida Supreme Court for decision on November 21, 2007, without oral argument.

19

On **February 29, 2008**, Sibley-here filed as attorney for Florida J.A.I.L. 4 Judges[12] a suit against The Florida Bar, The Florida Supreme Court, and its sitting Justices. That suit was filed in U.S. District Court for the Southern District of Florida and assigned Case. No.: 08-cv-20533-Altonaga, where it now pends.

On **February 29, 2008**, Laura Rush, counsel for the Florida Supreme Court and Justices stipulated to and accepted service on behalf of the Florida Supreme Court and its Justices of the Florida J.A.I.L. 4 Judges lawsuit. On **March 4, 2008**, Sibley The Florida Bar waived service of the summons and complaint in that suit.

On **March 7, 2008** – some **One Thousand Nine Hundred Twenty Three (1923) days or over five (5) years** after the original complaint was filed and **Three (3) days** after service of the new federal complaint upon it – the Florida Supreme Court entered its order adopting the Referee's Report and Recommendation and ordered the suspension of Sibley from the practice of law in Florida for a period of three (3) years A copy of that order is attached as Exhibit "F" to the Appendix.

Notably, in the **March 7, 2008**, order the Florida Supreme Court _**failed**_ to address even _**one**_

---

[12]     Florida J.A.I.L. 4 Judges is actively seeking to amend Article V of the Florida Constitution with certain provisions known as "The Judicial Accountability Law"(J.A.I.L.). The J.A.I.L. proposal would create special grand juries to investigate complaints against judges. These grand juries would have the power to discipline judges by levying fines, removing them from the bench and, where appropriate, subjecting them to criminal proceedings before special trial juries. Under present practice, the judiciary is _de-facto_ self-regulated and this has led in many instances to intolerable abuses of judicial discretion without recourse for those harmed. These instances have involved conflict of interest, denial of due process, withholding of evidence, and other violations of the constitutional rights of individuals, including arbitrary and unjustified fines, sanctions, seizure of property, loss of parental rights and incarceration. United under the banner of Florida J.A.I.L. 4 Judges is a broad coalition of citizens from all backgrounds, professions, and political persuasions who are dedicated to the mission of reforming the Florida judiciary.

of Sibley's points on appeal in its *per curiam* adoption without written explanation of the Referee's Report.

On April 14, 2008, in response to a motion to stay filed by Sibley, the Florida Supreme Court stayed Sibley's suspension until May 14, 2008, pending further action by the United States Supreme Court.

### E.    THE UNITED STATES SUPREME COURT PROCEEDINGS

On April 8, 2008, Sibley filed his petition for certiorari to review the Florida Supreme Court suspension with the United States Court where it pends as Case No. 07-10270 and is set for conference on June 5, 2008.

**ARGUMENT**

I.   **PROCEDURAL ERRORS**

A.   **THE SUSPENSION ORDER OF THE FLORIDA SUPREME COURT IS VOID**

On May 8, 2008, and on May 22, 2008, Applicant first learned from the Florida Supreme Court Administrator ("Administrator") that six (6) of the seven (7) justices of the Florida Supreme Court did **not** take their requisite loyalty oaths **prior** to ruling on over twenty-five (25) interlocutory and potentially dispositive motions relating to Applicant's disciplinary hearing. That Administrator provided copies of those Justices' loyalty oaths which are attached and show the following:

(i)    Justice Cantero[13] has two oaths of office on file with Florida. The first was un-dated and failed to comply with both United States Code, 4 §§ 101 and 102. The second, is dated **October 10, 2007**, more than five (5) years after he was appointed by Governor Bush on July 10, 2002.

(ii)   Justice Bell's[14] has two oaths of office on file with Florida. The first was dated December 7, 1990 – well before his appointment as a Florida Supreme Court Justice on December 30, 2002, by Governor Bush. The second is dated **October 10, 2007**, almost five (5) years after he was appointed.

(iii)  Justice Charles T. Wells assumed his duties as Justice of the Supreme Court on June 16, 1994, but did not execute a loyalty oath until **October 10, 2007**, over thirteen (13) years after he was appointed.

(iv)   Justice Harry Lee Anstead advanced to the highest

---

[13]   On May 1, 2008, Justice Cantero resigned as a Justice of the Florida Supreme Court effective September 6, 2008.

[14]   On May 24, 2008, Justice Cantero resigned as a Justice of the Florida Supreme Court effective October 1, 2008.

judicial office in Florida government on July 1, 2002, when he became Florida's 50th Chief Justice. However, he did not execute his loyalty oath until **October 18, 2007**, more than five (5) years after he became Chief Justice.

(v)     Justice Barbara J. Pariente was appointed as a Justice of the Florida Supreme Court on December 10, 1997. She has two oaths of office on file with the Administrator. The first, improper as it is without a notary jurat, apparently is dated stamped September 15, 1993, four years before she became a Justice. The second is dated **October 10, 2007**, almost ten (10) years after her appointment as a Justice.

(vi)    Justice Peggy A. Quince was appointed to the Florida Supreme Court on December 8, 1998, but did not execute the loyalty oath until **October 10, 2008**, almost ten (10) years after she was appointed.

(vii)   Justice R. Fred Lewis was appointed to the Supreme Court of Florida on December 7, 1998, and properly executed his loyalty oath on January 13, 1999.

On May 16, 2008, the Miami-Dade County State Attorney's Office Public Corruption concluded its investigation of – among other judges – Judge Orlando Prescott – the Referee in this matter.[15]

That investigation found in pertinent part:

Judge Orlando Prescott also stated to investigators that this matter came to his attention when he was contacted by Ms. Kearson. He was also a newly-appointed County Court judge in 2000. **Judge Prescott acknowledged that the signature on the Loyalty Oath form submitted in his name was a forgery**. He indicated that he had

---

[15]    Florida Bar Rule 3-7.6 "Procedures Before a Referee" states "(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to appoint referees for duty in the chief judge's circuit. **Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges**.(Emphasis added). Thus, Applicant is entitled to a county, circuit or retired judge.

> signed numerous documents at the time of his appointment, and would have personally signed the oath had it been presented to him. Judge Prescott successfully ran for retention in 2002, and was elevated to the Circuit Court in 2005. **After he was apprised of the forged Loyalty Oath form, he executed a new oath on February 4, 2008**.  (Emphasis added.)

A copy of that report is attached hereto.  Accordingly, Judge/Referee Prescott did not take the loyalty oath until almost one (1) year <u>after</u> he issued his Report and Recommendation that Applicant be suspended for three (3) years from the practice of law in Florida.

The significance of the failure of six (6) of the Florida Supreme Court Justices and Judge/Referee Prescott to take the federally-required loyalty oath is straightforward: Both the federal constitution and federal statutes require the loyalty oath to be executed **before** an individual may commence the duties of their public office.  Here, that was <u>not</u> properly done.

Article VI of the federal Constitution states: "The Senators and Representatives before mentioned, and the members of the several state legislatures, and all executive and **judicial officers**, both of the United States and of the several states, **shall be bound by oath or affirmation, to support this Constitution**."  (Emphasis added).

United States Code, Title 4, §101 states: "*Oath by Members of Legislatures and Officers.* Every member of a State legislature, and every executive and **judicial officer** of a State, shall, **<u>before</u> he proceeds to execute the duties of his office**, take an oath in the following form, to wit: "I, A B, do solemnly swear that I will support the Constitution of the United States." (Emphasis added).  Following is 4 U.S.C. §102 which requires: "*Same; by Whom Administered.* Such oath may be administered by any person who, by the law of the State, is authorized to administer the oath of office; and the person so administering such oath shall cause a record or certificate thereof to be made in the same manner, as by the law of the State, he is directed to record or certify the oath of

office."

In Florida, that "law of the State" is found at the Florida Constitution, Article II, §5(b)[16] and Florida Statute §876.05(1)[17].  Here, indisputably, Judge/Referee Prescott **failed** to take that oath before he conducted the disciplinary proceedings against Applicant.  Likewise, as evidenced from the docket sheet of Applicant's disciplinary proceedings before the Florida Supreme Court, that Court entered over twenty-five (25) orders on motions – many of them dispositive – **before** the six Justices realized in October 2007 that they had failed to follow federal and Florida law related to loyalty oaths and began to execute proper oaths of office.[18]

The consequence of the failure to take the loyalty oath is plain:  All actions take <u>prior</u> to the oaths being taken are **<u>void</u>**.  While federal law is undeveloped on this point, the Florida Supreme Court has repeatedly confirmed the "void" nature of such pre-loyalty oath activity.  In *Treasure, Inc.*

---

[16]    "Each state and county officer, before entering upon the duties of the office, shall give bond as required by law, and shall swear or affirm:  "I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the state; and that I will well and faithfully perform the duties of (title of office) on which I am now about to enter. So help me God.", and thereafter shall devote personal attention to the duties of the office, and continue in office until a successor qualifies."

[17]    "Public employees; oath. All persons who now or hereafter are employed by or who now or hereafter are on the payroll of the state, . . . **are required to take an oath before any person duly authorized to take acknowledgments of instruments for public record** in the state in the following form: I, _____, a citizen of the State of Florida and of the United States of America, and being employed by or an officer of _____ and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida."

[18]    "Generally, state officials know something of the individual's basic legal rights. If they do not, they should, for they assume that duty when they assume their office. **Ignorance of the law is no excuse for men in general. It is less an excuse for men whose special duty is to apply it, and therefore to know and observe it.**"  *Screws v. United States*, 325 U.S. 91, 129 (1945)(Justice Rutledge, concurring, emphasis added).

*v. State Beverage Dept*, 238 So.2d 580, 583 (Fla. 1970), the Florida Supreme Court stated:

> The exercise of sovereign power is constitutionally restricted to those who meet the constitutional requirements – **and only to those**. **The taking of the oath** and the issuing of the formal commission **not only constitute the official conveyance to the recipient of a portion of the state's sovereign power, but serve to impress upon the appointee or elected official the great public trust and confidence which is placed in him by his appointment**. <u>**This Court long ago held that in the absence of a duly executed commission, the person appointed to exercise the state's power lacks the authority to exercise such power**</u>. (Emphasis added).

Similarly, in *Tappy v. State ex rel. Byington*, 82 So.2d 161, 165-166 (Fla. 1955) the same

Court held:

> Section 2, Article XVI, of the Constitution provides, so far as it is material here, that 'Each and every officer of this State * * * shall before entering upon the discharge of his official duties take the following oath of office * * *.' There can be no doubt that because of this provision, **the taking of the official oath** by Governor Collins was **an indispensable ingredient of the installation in office which the Constitution required, and that <u>until</u>** this oath was taken **Governor Collins was not 'duly qualified' as governor, for the reason that <u>without the oath he had no power or authority to discharge the official duties</u> of the office of governor.**" (Emphasis added).

*Accord*: *Opinion of the Justices*, 14 Fla. 277 (Strict compliance with state loyalty oath law is

necessary, and failure to comply strips an officer of all governmental power); Attorney General

Opinion, AGO96-41.[19]

---

[19]    "You have asked for my opinion on substantially the following questions: 1. May a person elected to the Charter Board of the City of Tamarac assume that office without taking the statutorily prescribed oath set out in section 876.05, Florida Statutes? . . .In sum: 1. All elected officers of the City of Tamarac are required by law to take the oath set forth in section 876.05, Florida Statutes. . . .The provisions of the statute apply to all employees and elected officers of the state, including the Governor and constitutional officers and all employees and elected officers of all cities, towns, counties, and political subdivisions, including the school system . . .The oath must be taken before a person authorized to take acknowledgments of instruments for public record and must be filed with

Accordingly, the judicial actions taken by Judge/Referee Prescott and the six Florida Supreme Court Justices were <u>void</u> and Applicant will prevail on this issue.

### B.    RULE 3-7.7(F) VIOLATES FLORIDA AND FEDERAL LAW

The procedural rights attendant upon this disciplinary proceeding are determined by the nature of this proceeding. The Florida Supreme Court has defined the nature of attorney disciplinary proceedings as "a quasi-judicial administrative proceeding." Rule 3-7.7(f)(1). By so doing, the Florida Supreme Court has <u>violated</u> Federal law thereby denied to Sibley his fundamental procedural rights. Accordingly, Sibley takes exception to the characterization of Florida attorney disciplinary proceedings as "a quasi-judicial administrative proceeding" under Rule 3-7.7(f)(1).

As the United States Supreme Court has stated: "Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer. *Ex Parte Garland*, 4 Wall. 333, 380, 18 L.Ed. 366; *Spevack v. Klein*, 385 U.S. 511, 515. He is accordingly entitled to procedural due process, which includes fair notice of the charge. *See In re Oliver*, 333 U.S. 257, 273. . . .These are adversary proceedings of a quasi-criminal nature. *Cf. In re Gault*, 387 U.S. 1, 33." *In re Ruffalo*, 390 U.S. 544, 550-551 (1968). Accordingly, notwithstanding any Florida Rule or pronouncement by the inferior Florida Supreme Court,, the attorney disciplinary proceedings must not trespass upon those rights guaranteed to Sibley under the United States Constitution.

Moreover, the significance of attorneys in our society cannot be ignored either. In an 8-1 decision, the Supreme Court recognized:

> The lawyer's role in the national economy is not the only reason that the opportunity to practice law should be considered a "fundamental right." We believe that the legal profession has a noncommercial role and duty that reinforce the view that the practice of law falls within

the records of the governing official or employing governmental agency." (Footnotes omitted).

> the ambit of the Privileges and Immunities Clause. Out-of-state lawyers may -- and often do -- represent persons who raise unpopular federal claims. In some cases, representation by nonresident counsel may be the only means available for the vindication of federal rights. The lawyer who champions unpopular causes surely is as important to the "maintenance or well being of the Union," as was the shrimp fisherman in *Toomer* or the pipeline worker in *Hicklin*.

*Supreme Court of New Hampshire v. Piper,* 470 U.S. 274 (1985).

Here, Sibley – an "out-of-state lawyer" – has and continues to raise "unpopular federal claims" in the Florida courts – when only he can for (i) lack of local counsel willing to incur the wrath of a demonstrably vindictive Florida judiciary[20] and (ii) the natural ability to persevere regardless of personal cost imposed by a Florida judicial resolution system which is "fair" in name only.

Accordingly, Sibley was denied those procedural rights secured by the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or opportunity to be heard as to constitute a deprivation of the attorney's due process rights".

## C.    THE DELAY IN RESOLUTION DENIED DUE PROCESS TO SIBLEY

While it is doubtlessly true that: "The constitutional right to a speedy trial in criminal cases has no application to civil proceedings"[21], the United States Supreme Court had held that: "Disbarment, designed to protect the public, is a punishment or penalty imposed on the. . . .**These are adversary proceedings of a quasi-criminal nature**." *In re Ruffalo*, 390 U.S. 544, 550-551 (1968). Accordingly, some aspect of speedy trial rights must attach to such this disciplinary

---

20    See Exhibit "B" to the Appendix hereto.

21    *Julian v. Lee*, 473 So.2d 736, 739 (Fla. 5th DCA 1985); see also Amend. VI, U.S. Const.

proceeding. Indeed, while the constitutional right to speedy trial in attorney disciplinary proceedings has never been expressly addressed, analogous situations abound compelling this Court to recognize the delay here has frustrated the assertion of Sibley's rights and damaged him immeasurably.[22]

Here, the allegations were brought to the Florida Bar's attention in December 2002. Now, some One Thousand Six Hundred (1600) days or Four and One Half (4 ½) years later, this matter is <u>still</u> pending against Sibley.

In *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967), for example, where the government's delay in the prosecution for criminal trespass of a civil rights demonstrator was found to be unjustified under the Constitution's speedy trial clause, the court noted that the right to quick resolution of controversies "has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in *Magna Carta* (1215), wherein it was written, 'We will sell to no man, we will not deny or defer to any man either justice or right' . . .'"[23]

---

[22]    "Many of the same considerations that impel judicial protection of **the right to a "speedy trial" in criminal cases or implementation of civil decrees with all deliberate speed are <u>not</u> inapposite in agency deliberations**. Those situations generally involve protection of constitutional rights, but delay in the resolution of administrative proceedings can also deprive regulated entities, their competitors or the public of rights and economic opportunities without the due process the Constitution requires." *MCI Telecommunications Corp. v. F. C. C.,* 627 F.2d 322, 341 (D.C. Cir. 1980)(Footnotes omitted, emphasis added.)  *Accord*: *Dickey v. Florida*, 398 U.S. 30, 54 (1970) (Brennan, J., concurring; citation omitted)("Society's interest in avoiding undue delay in criminal trials stems from a general presumption that governmental delay is unfair: "Despite the difficulties of proving, or disproving, actual harm in most cases, it seems that inherent in prosecutorial delay is 'potential substantial prejudice' . . . ."); *Smith v. Illinois Bell Tel. Co.*, 270 U.S. 587, 591 (1926) ("(p)roperty may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them.").

[23]    Regarding the application of the constitutional speedy trial right at least in *quasi*-criminal administrative proceedings, see Goldman, *Administrative Delay and Judicial Relief*, 66 Mich.L.Rev. 1423, 1436-39 (1978).

Likewise, Sibley has a federal "constitutional right to be brought to trial within a reasonable time." The State of Florida has an obligation imposed on it that "justice shall be administered without sale, denial or delay".[24] Can this Court publically say that a Sixteen Hundred (1600) day delay in adjudication is discharging that burden?

Here Sibley has been significantly harmed by the delay. Factual issues have become clouded due the passage of time. Documents are no longer available. On a professional level, the bar complaint against Sibley has caused Sibley to repeatedly lose clients who did not want to invest their legal matters with an attorney who may be disbarred. Moreover, the State of Maryland has refused to admit Sibley to practice as long as the Florida Bar proceedings continue. Last, lost to the gowned-ones is the stress that this constant Damocles sword hanging over Sibley's head for over four years this proceeding represents. To further delay is simply to continue to punish Sibley without a hearing implicate the Eighth Amendment's cruel and unusual prohibition.

Accordingly, Sibley was denied those procedural rights secured by the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or opportunity to be heard as to constitute a deprivation of the attorney's due process rights".

### D.    THE LACK OF SWORN ALLEGATIONS AND REFUSAL TO PERMIT SIBLEY TO CALL WITNESSES

The Florida Supreme Court has held that: "In addition to the authority to hear this evidence provided by the Florida Evidence Code, a referee in a bar-discipline case can consider any evidence he or she deems relevant to resolving a factual question." *The Florida Bar v. Clement*, 662 So.2d 690,f/n #3 (Fla. 1995).

---

[24]    Florida Constitution, Article I, § 21. Access to courts.

However, Sibley expressly challenges this holding as the superior federal law prohibits this court from allowing disciplinary proceedings which trespass upon those rights guaranteed to Sibley under the U.S. Constitution. Those rights include the right under the Sixth Amendment to "be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." Thus, notwithstanding any Florida law to the contrary, under the supremacy clause of the United States Constitution, the Acts of Reconstruction and the Sixth and Fourteenth Amendments, Sibley has the right to confront his accusers before suffering any "punishment or penalty imposed" upon him.

The United States Supreme Court held that "(i)n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Likewise, in *Greene v. McElroy*, 360 U.S. 474, 496 (1959), the court found that cross-examination and confrontation must be permitted whenever "governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings" was one of the "immutable' principles of our jurisprudence."

Most significantly, in *Ex Parte Burr*, 22 U.S. 529, 530 (1824), the Court was presented with a motion for mandamus to the Circuit Court for the District of Columbia, to restore Mr. Burr to his place of attorney at the bar of that Court. In detailing the level of proof necessary to remove an attorney from the practice of law, the Court held: "In the case at bar, the proceedings were supposed to be irregular, because **Mr. Burr was put to answer charges _not_ made on oath**. That the charges, in a regular complaint against an attorney, ought not to be received and acted on, **unless made on oath**, is admitted. It is a course of proceeding which is recommended by considerations, too obvious

to require that they should be urged." (Emphasis added).

Here, The Florida Bar **failed** to present charges <u>under</u> oath or permit Sibley to "be confronted with the witnesses against him".

Moreover, Sibley was <u>denied</u> an opportunity to call witnesses in his defense, *i.e.*, Judge Lando, the six Third District Court of Appeal Judges and their legal counsel, Joanne Sargent.

Thus, it bordered upon the intellectually dishonest for the first Referee to cite *United States v. Morgan*, 313 U.S. 409 (1941) for the proposition that Sibley should be denied the testimony of the <u>un-sworn</u> complaining witnesses as requested when the history of that case clearly establishes that Sibley falls within the exception to the general rule cited in *United States v. Morgan.*.

The *Morgan* line of cases arose from the validity of an order of the Secretary of Agriculture fixing maximum rates to be charged by market agencies at the Kansas City Stockyards. *Packers and Stockyards Act 1921*, 7 U.S.C. §§ 181 – 229. In the first case, *Morgan v. United States*, 298 U.S. 468 (1936), the contention that the plaintiffs had not been accorded the hearing which the statute made a prerequisite to a valid order was at issue. The district court had struck from plaintiffs' complaints the allegations that the Secretary had made the order without having heard or read the evidence and without having heard or considered the arguments submitted, and that his sole information with respect to the proceeding was derived from consultation with employees in the Department of Agriculture. *United States v. Morgan*, 304 U.S. 1, 14 (1938).

The Supreme Court concluded that first case by stating "that it was error to strike these allegations, that the **defendant should be required to answer them**, and that the question whether plaintiffs had a proper hearing should be determined." *Id.* (Emphasis added).

Hence, finding that the Secretary of Agriculture sat in a similar position to that of a judge

required fundamental due process[25], the Supreme Court went on to <u>order</u> that the Secretary answer

question under oath concerning the nature of the actions he took in his judicial capacity so that the

plaintiffs' allegations could be properly considered.  "The defendants should be required to answer

these allegations, and the question whether plaintiffs had a proper hearing should be determined."

*Morgan v. United States*, 298 U.S. 468, 482.[26]

Subsequently, "after the remand, the bills were amended and interrogatories were directed

---

[25]    "That duty is widely different from ordinary executive action. It is a duty which carries with it fundamental procedural requirements. There must be a full hearing. There must be evidence adequate to support pertinent and necessary findings of fact. **Nothing can be treated as evidence which is not introduced as such**. *United States v. Abilene & Southern Railway Co., supra*. Facts and circumstances which ought to be considered must not be excluded. **Facts and circumstances must not be considered which should not legally influence the conclusion.** Findings based on the evidence must embrace the basic facts which are needed to sustain the order. . .  A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding. Hence it is frequently described as a proceeding of a **quasi judicial** character. The requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The 'hearing' is the hearing of evidence and argument. If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given. " *Morgan v. United States*, 298 U.S. 468, 480-481.  (Emphasis added).

[26]    In fact, "The part taken by the Secretary himself in the departmental proceedings is shown by his full and candid testimony. The evidence had been received before he took office. He did not hear the oral argument. The bulky record was placed upon his desk and he dipped into it from time to time to get its drift. He decided that probably the essence of the evidence was contained in appellants' briefs. These, together with the transcript of the oral argument, he took home with him and read. He had several conferences with the Solicitor of the Department and with the officials in the Bureau of Animal Industry, and discussed the proposed findings. He testified that he considered the evidence before signing the order. The substance of his action is stated in his answer to the question whether the order represented his independent conclusion, as follows: 'My answer to the question would be that that very definitely was my independent conclusion as based on the findings of the men in the Bureau of Animal Industry. I would say, I will try to put it as accurately as possible, that it represented my own independent reactions to the findings of the men in the Bureau of Animal Industry.'" *United States v. Morgan*, 304 U.S. 1, 18.

to the Secretary which he answered. The court received the evidence which had been introduced at its previous hearing, together with additional testimony bearing upon the nature of the hearing accorded by the Secretary. **This evidence embraced the testimony of the Secretary and of several of his assistants**. The district court rendered an opinion, with findings of fact and conclusions of law, holding that the hearing before the Secretary was adequate and, on the merits, that his order was lawful. On this appeal, plaintiffs again contend (1) that the Secretary's order was made without the hearing required by the statute; and (2) that the order was arbitrary and unsupported by substantial evidence." *United States v. Morgan*, 304 U.S. 1, 14. (Emphasis added).

After reviewing the testimony of the Secretary, the Supreme Court found that there was a **failure** to accord due process holding:

> The maintenance of proper standards on the part of administrative agencies in the performance of their quasi judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, **they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play**. **As the hearing was fatally defective, the order of the Secretary was invalid.**

*United States v. Morgan*, 304 U.S. 1, 22.   (Emphasis added).

Here, Sibley is alleging – and he is collaborated by the dissent in *Sibley v. Sibley,* 833 So.2d 847(Fla.App. 3 Dist. 2002) – that the judicial actors who entered the orders upon which the two counts of the complaint are based were not relying upon the record before them.  Moreover, that the Third District Court of Appeal judges – just as the Secretary in *Morgan* – could not have made their determination that Sibley's cases were "meritless" in the cases which they were **not empaneled** to

34

decide.

Accordingly, the trilogy of *Morgan* cases clearly establishes the exception to the general rule which prohibits the deposition of judges: where the facts upon which they relied are at issue.

Here, Sibley was not seeking the "meaning" of the subject orders, but instead the "relevant facts" relied upon by the judges in each of the cases the Florida Bar relied upon to maintain that Sibley behaved in a manner which violated the cited Florida Bar Rules. If, as Sibley maintains with authority, those judges relied upon evidence (i) "which was not introduced as such" and/or (ii) "which should not legally influence the conclusion", then due process has been denied him and no finding of an ethical breach can be premises upon such discredited orders.

Additionally, the right to confront and cross examine is particularly relevant when the complaining witnesses – here the judges and their legal counsel – can be demonstrated to be made by "persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy".

This point is made indelible – and thus binding upon this inferior Court – in *Greene v. McElroy*, 360 U.S. 474, 496-497 (1959), where the Court stated:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that, where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. . . . This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases . . . , but also in all types of cases where administrative and regulatory actions were under scrutiny.

Here, this Court would sanction the extreme harm to Sibley by government action of suspension or disbarment by judges demonstrably "motivated by malice, vindictiveness, intolerance, prejudice, or jealousy" without requiring those individuals to swear to their charges or permit Sibley to cross-examine them all the while shielding their judicial acts from any sort of scrutiny under the (i) *per curiam* affirmance without written decision policy and (ii) the defense of judicial immunity to any claim against a judge.

Hence, the <u>failure</u> to (i) permit Sibley to take discovery or call as witnesses the subject judges and (ii) acknowledge and rule upon the request to take Joanne Sargent's deposition rises to a level of Sixth Amendment constitutional deprivation and as such, Sibley was denied those procedural rights secured by the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or opportunity to be heard as to constitute a deprivation of the attorney's due process rights".

### E.    THE REFEREE'S ABUSE OF DISCRETION VIOLATED DUE PROCESS

It was a plain abuse of discretion for the Referee to <u>refuse</u> to continue the putative "Final Hearing" for two weeks to accommodate Sibley's pre-existing professional obligations.

Clearly, the Referee <u>ignored</u> the Florida Supreme Court's orders on the timely resolution of the disciplinary matter.  Thus, the Referee while granting to himself the *ex cathedra* right to do whatever he pleased, Sibley – who sought only a Fourteen (14) day delay in a matter that was Sixteen Hundred (1600) days old – could not be afforded that minimal courtesy by the Referee.

"A motion for continuance is addressed to the sound judicial discretion of the trial court and absent abuse of that discretion the court's decision will not be reversed on appeal." *Ziegler v. Klein*, 590 So.2d 1066, 1067 (Fla. 4th DCA 1991).  "Factors to be considered in determining whether the

36

trial court abused its discretion in denying the motion for continuance include whether the denial of the continuance creates an injustice for the movant; whether the cause of the request for continuance was unforeseeable by the movant and not the result of dilatory practices; and whether the opposing party would suffer any prejudice or inconvenience as a result of a continuance." *Fleming v. Fleming*, 710 So.2d 601, 603 (Fla.App. 4 Dist. 1998). *Accord*: *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir.) (Flynt ), *amended*, 764 F.2d 675 (9th Cir.1985).

Here, (i) Sibley had not sought a continuance before, (ii) no "injustice" would be created by delaying the final hearing two weeks, (iii) Sibley's continuance request was "unforeseeable" as the Referee did not give notice to Sibley of the final hearing until ten (10) days before the hearing and failed to indicate the length of the hearing, (iv) Sibley engaged in <u>no</u> dilatory practices but promptly and timely filed each document and (v) no "prejudice or inconvenience" would be suffered by a two-week delay.

Moreover, and most significantly, by refusing to continue the Final hearing two weeks, the Referee forced upon Sibley a "Hobson's Choice"[27] of attending the hearing or breaching his professional obligations to a client who was in constant need of them during a significant point in her criminal and civil proceedings in Washington D.C.[28]

---

[27]   Hobson's choice is an apparently free choice which is really no choice at all. The phrase is said to originate from Thomas Hobson (1544–1630), a livery stable owner at Cambridge, England who, in order to rotate the use of his horses, offered customers the choice of either taking the horse in the stall nearest the door—or taking none at all.

[28]   In the District of Columbia, Sibley represent Deborah Jeanne Palfrey, a/k/a the "D.C. Madam" who (i) was indicted in a matter assigned Criminal Case Number: 07-046-GK and (ii) has had all her assets  seized in a civil forfeiture matter in Case No.:1:06-CV-01710-GK.  During the time frame of mid-April 2007, Sibley was faced with (i) an injunction against him personally regarding records he held and (ii) preparing the documents for the transition of her criminal appointed attorney to a new attorney.  Additionally, significant issues regarding communications with the White House Counsel's office were on-going during this time.  These, and other matters that

Additionally, at the hearing on January 23, 2007, the Referee <u>failed</u> to discharge his obligations pursuant to Florida Bar Rule 3-7.6(c) which states:

> Within 60 days of the order assigning the case to the referee, the referee shall conduct a pretrial conference. The purpose of the conference is to set a schedule for the proceedings, including discovery deadlines and a final hearing date. The referee shall enter a written order in the proceedings reflecting the schedule determined at the conference.

Again, the Referee at the January 23rd hearing **failed** to:

(i)     Set a schedule for the proceedings;
(ii)    Set discovery deadlines;
(iii)   Set a final hearing date; or
(iv)    Enter a "written order "reflecting the schedule determined at the conference" (notably because <u>no</u> such schedule was determined at the conference).

Instead, Sibley is ambushed on April 5, 2007, by an order to appear for the putative "Final Hearing" absent notice of (i) who the witnesses of the Complainant will be and (ii) who he may call in his defense. Plainly, this Court cannot condone such behavior and conclude that "due process" was accorded Sibley here.

As such, it was an abuse of discretion to require Sibley to drop everything – including his personal child care responsibilities – and rush off to Miami for the Referee's putative[29] final hearing.

Last, it is worthy of note that Sibley sought leave to appear by telephone for the yet-to-be concluded requisite Case Management Conference on April 16, 2007, but the Referee refused that

---

Sibley is unable to disclose at this time, precluded Sibley from disappearing to Miami for a hearing of indeterminate length during the last two weeks of April without breaching his obligations to his client and the Court which had entered a temporary injunction against him.

[29]    "Putative" is the correct adjective here as (i) the Case Management hearing had never been completed and (ii) the Referee had never ruled upon Sibley's Second Request for Issuance of Subpoena Duces Tecum.

request by ignoring it.

Accordingly, Sibley was denied those procedural rights secured by the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or opportunity to be heard as to constitute a deprivation of the attorney's due process rights.

### F.    THE DENIAL OF DOCUMENTARY DISCOVERY

On August 10, 2006, Sibley served upon the Florida Bar a request to produce. On August 14, 2006, The Florida Bar served its response. Sibley promptly file a motion to compel production of the documents requested. On January 23, 2007, the Referee denied Sibley's motion to compel.

A review of Sibley's Requests 1, 2, 5 and 6, reveal that at the very least, each may " lead to the discovery of admissible evidence". Briefly stated:

> Request #1:    *All documents related every instance when Complainant has disciplined a member for the Florida Bar for violation of Rule 4-8.4(h) of the Rules Regulating the Florida Bar –* The selective prosecution of Sibley by Complainant is a central affirmative defense in this matter and as such the relevance of the disposition of similarly situated Sibleys is relevant. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357 (1978).

> Request #2:    *All documents related every instance when Complainant has disciplined a member for the Florida Bar for violation of Rule 4-3.1 of the Rules Regulating the Florida Bar –* see #1 above.

> Request #5:    *All documents related to reports detailing the number of complaints processed by Complainant for each of the last three years –* Plainly, Sibley has a right to have "justice shall be administered without sale, denial or delay". The time of processing complaints by the Complainant thus is relevant to a determination of whether Sibley's rights to "justice without delay" have been violated by Complainant.

> Request #6:    *All documents related to reports detailing the length*

> *of time to process complaints by Complainant for each of the last*
> *three years* – see #5 above.

As noted in *Greene*, *supra*, ". . .where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence . . ." Here, the denial to Sibley of the sought-after documentary evidence also denied to Sibley fundamental due process. *Accord: Wardius v. Oregon*, 412 U.S. 470, 474 (1973)("Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . it does speak to the balance of forces between the accused and his accuser.")

The requests were particularly relevant as (i) there is <u>no</u> reported decision sanctioning an attorney as Sibley was sought to be sanction here for alleged "meritless" filings and (ii) since the amendment in 1995 to the Florida Bar Rules to include Rule 4-8.4(h), there has been <u>no</u> reported sanctioning of an attorney for violating this Rule of not paying child support. Accordingly, how the Florida Bar has treated other similarly situated attorneys is clearly relevant to Sibley's claims herein.

Accordingly, for the denial of access to relevant documentary evidence, Sibley was denied those procedural rights secured by the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or opportunity to be heard as to constitute a deprivation of the attorney's due process rights.

### G. STRIKING OF AFFIRMATIVE DEFENSES

On September 1, 2006, the Florida Bar moved to strike Sibley's Affirmative Defenses. On December 15, 2006, without affording Sibley an opportunity to be heard in opposition, the Referee

granted the motion and struck all of Sibley's affirmative defenses.[30]

As this Court knows, Sibley sought to challenge the constitutionality of the Florida Bar Disciplinary Proceedings against him in United States District Court. This Court ruled in dismissing the appeal of the district court abstention on *Younger* grounds: "To the extent that Appellant's claims are based on state litigation which had already concluded when he filed his complaint, such claims are barred by *Rooker/Feldman*" and (ii) "Appellant's claims arising from his current bar disciplinary proceedings, including his challenge to the Florida Supreme Court's recusal practices, . . . are precluded by *Younger/Middlesex* abstention principles." *Sibley v. The Florida Supreme Court*, Case No.: 07- 14563-B (11th Cir. 2008).

The petition for certiorari on those claims is pending before the United States Court. See: *Sibley v. The Florida Supreme Court, et al.*, Case No.: 07-9171.

Sibley's claims in that regard were dismissed by this Court under the doctrine enunciated by the Court in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). In *Middlesex*, the Supreme Court held:

> Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. *Trainor v. Hernandez*, 431 U.S. 434 (1977); *Juidice v. Vail*, 430 U.S. 327 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore*, 442 U.S. at 426. "[T]he . . . pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the

---

[30] Sibley's constitutional claims raised in his stricken affirmative defenses included, *inter alia*, his: fundamental rights as a parent as a parent recognized in *M. L. B. v. S. L. J.*, 519 U.S. 102, 116 (1996), fundamental right to access court, First Amendment right to petition the government, Article IV, Privileges and Immunities Clause right to access court, Fifth Amendment Due Process right to access court, federal Fourteenth Amendment Equal Protection right to access court, Fourteenth Amendment Due Process right to access court, federal right to access federal court recognized in *Donovan v. City of Dallas*, 377 U.S. 408, 413 (1964).

> constitutional claims. . . ." Id. at 430. *See also Gibson v. Berryhill*,
> 411 U.S. 564 (1973). (Emphasis added).

Id. at 432. In conclusion, the Supreme Court ruled: "So long as the constitutional claims of Sibleys **can be determined in the state proceedings**, and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Id.* at 435. (Emphasis added).

Accordingly, the Florida Supreme Court – and its putative impartial Referee – were obligated to "afford an adequate opportunity to raise the constitutional claims. . . ." *Moore v. Sims*, 442 U.S. 415, 430 (1979). Here, Sibley sought to raise his federal constitutional claims in his affirmative defenses to the Complaint of the Florida Bar. They were stricken from consideration by the Referee and ignored on appeal to the Florida Supreme Court.

Hence, the conceptual underpinning of *Middlesex* – that Florida's state courts are competent to determine federal constitutional claims – has been proved to be <u>false</u>. Here, not only were all Sibley's claims stricken by the Referee, the Florida Supreme Court – though properly presented with an appeal raising these issues – ignored each and every issue in its *per curiam* adoption of the Referee's suspension recommendation.

Thus, unlike the Sibley in *Middlesex* who "had an 'opportunity to raise and have timely decided by a competent state tribunal the federal issues involved,' *Gibson v. Berryhill*, 411 U.S. at 577", Sibley here had no such opportunity. Middlesex at 437.

Therefore, Sibley was denied the procedural rights secured by the federal Constitution through *Middlesex* and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or opportunity to be heard as to constitute a deprivation of the attorney's due process rights."

42

### H.    VERBATIM ADOPTION OF BAR'S PROPOSED ORDER

A review of the proposed "Report" from the Florida Bar and the "Report" eventually signed and submitted by the Referee reveal that they are *de facto* and *de jure* identical.

The U.S. Supreme court noted in *Anderson v. City of Bessemer*, 470 U.S. 564, 572 (1985):

> We, too, have criticized courts for their *verbatim* adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record. *See, e.g., United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656-657 (1964); *United States v. Marine Bancorporation*, 418 U.S. 602, 615, n. 13 (1974). We are also aware of the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor.

As a result, the proceedings before the Referee were violative of the right to an impartial tribunal and as such Sibley was denied those procedural rights secured by the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or opportunity to be heard as to constitute a deprivation of the attorney's due process rights".

### I.    SIBLEY WAS ENTITLED TO A JURY TRIAL

In his Answer to the Florida Bar Complaint, Sibley demanded "a trial by jury of each issues raised by the pleadings and so triable", or, alternatively, an advisory jury.

Clearly, it is black letter law that criminal defendants have a fundamental right to jury trial and infringement of that right is fundamental error.  Given that an attorney disciplinary hearing is a "quasi-criminal" proceeding, the novel question arises as to whether Sibley was similarly entitled to a jury trial as he requested.

The first landmark decisions since the adoption of the U.S. Constitution which confirmed the

right of the defense in a criminal case to not have the bench make a decision on motions until all

legal arguments had been made by both sides before the jury, *United States v. Fenwick*, 25 F. Cas.

1062; 4 Cranch C.C. 675 (1836); and, 22 F. Cas. 1322; 5 Cranch C.C. 573 (1839)(Right to make

legal argument to jury).  Later the Fourth Circuit in *U.S. v. Moylan*, 417 F 2d 1002, 1006 (1969)

affirmed the right of jury nullification, stating,

> We recognize, as appellants urge, the undisputed power of the jury to
> acquit, even if its verdict is contrary to the law as given by the judge,
> and contrary to the evidence. This is a power that must exist as long
> as we adhere to the general verdict in criminal cases, for the courts
> cannot search the minds of the jurors to find the basis upon which
> they judge. **If the jury feels that the law under which the
> defendant is accused, is unjust, or that exigent circumstances
> justified the actions of the accused, or for any reason which
> appeals to their logic or passion, <u>the jury has the power to acquit</u>,
> and the courts must abide by that decision**.  (Emphasis added).

As such, in this quasi-criminal matter, Sibley was entitled – and denied – a jury trial on the

claims in the Florida Bar Complaint.  Thus, Sibley was denied those procedural rights secured by

the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the

procedure used to make such determination was so lacking in notice or opportunity to be heard as

to constitute a deprivation of the attorney's due process rights".

### J.    FAIR AND IMPARTIAL TRIBUNAL

Indisputably Sibley is entitled under the Fifth Amendment to the "absolute right" to an

impartial and competent tribunal.  "The Due Process Clause entitles a person to an impartial and

disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative

proceedings safeguards the two central concerns of procedural due process, the prevention of

unjustified or mistaken deprivations and the promotion of participation and dialogue by affected

individuals in the decision making process." *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980).

44

Here, in five particulars that right has been trampled by the Referees' behavior in this case:

1.      By entering the Order of August 7, 2006, without affording Sibley a chance to be heard in opposition – which would have included among other issues that it was arguably federal contempt of court for the Referee to proceed at that point in time as the matter had been removed to federal court – the Referee indulged in prohibited judicial behavior – deciding a matter before hearing both sides.

2.      The Referee's apparent attempt to cover-up the failure to abide by the thirty (30) day ruling requirement by the Referee, apparently manipulating the record to avoid an undesirable result for him personally and professionally as it appears the Referee has done so here.

3.      The Referee simply signing any proposed order the Florida Bar presents to him without any real understanding or concern for the issues presented.

4.      In an egregious example of *ex parte* communications, the Referee and the attorney for the Florida Bar have engaged in improper *ex parte* communications.

5.      The Referee has <u>ignored</u> the express order of the Florida Supreme Court to timely conduct a Case Management Conference and final hearing to Sibley's prejudice by forcing him to make motions to disqualify thus inflaming a judge's sense of un-reviewableness.

As a result of which, <u>neither</u> of the two Referees can be considered fair and impartial in this matter.

Moreover, the Florida Supreme Court's impartiality was repeatedly questioned given the pending federal suits individually and on behalf of J.A.I.L. for Judges against the Florida Supreme Court and its Justice by Sibley which questioning was ignored by that Court.

Accordingly, for denial of a competent and impartial magistrate, Sibley was denied those procedural rights secured by the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or

opportunity to be heard as to constitute a deprivation of the attorney's due process rights".

**K.     FAIR AND IMPARTIAL TRIBUNAL**

Last, the Florida Supreme Court's order of March 7, 2008, adopting *per curiam* without written reasons the Referee's report violates due process guarantees imposed on a court to detail the *ratio decidendi* for a decision.

In *Black v. Romano* 471 U.S. 606 (1985), Justice Marshall in his concurrence wrote:

> The theme unifying these cases is that whether due process requires written reasons for a decision, or for a particular step in the decision making process, is, like all due process questions, to be analyzed under the three-factor standard set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). When written reasons would contribute significantly to the "fairness and reliability" of the process by which an individual is deprived of liberty or property, id., at 343, reasons must be given in this form unless the balance between the individual interest affected and the burden to the government tilts against the individual. Id., at 335. Whether written reasons would make such a contribution in any particular case depends on a variety of factors, including the nature of the decision making tribunal, the extent to which other procedural protections already assure adequately the fairness and accuracy of the proceedings, and the nature of the question being decided. (Footnotes omitted.)

Here, a patently procedurally defective disciplinary proceeding demanded a written decision from the Florida Supreme Court to comport the challenged-by-Petitioner procedures with federal constitutional constraints. Yet, instead, all the Florida Supreme Court did was adopt a Referee's Report which had struck from consideration – and thus ignored – Petitioner's substantial federal constitutional objections. A litigant might as well be in the Coliseum before a Cesar for all the due process such a disciplinary proceeding by the Florida Supreme Court provided.

Accordingly, federal Constitutional law obligated the Florida Supreme Court to articulate their *ratio decidendi* in determining Petitioner's constitutional challenges. Otherwise, the rule of law

46

and the promise of stare decisis is lost in to Petitioner and the premise of Middlesex is completely undermined and rendered invalid.

Therefore, Sibley was denied those procedural rights secured by the federal Constitution and thus, pursuant to Addendum 5, Rule 5(B)(1) has shown that "the procedure used to make such determination was so lacking in notice or opportunity to be heard as to constitute a deprivation of the attorney's due process rights".

## II.    SUBSTANTIVE DUE PROCESS ERRORS – RULE 4-8.4(H)

The first count of the Complaint alleges that Sibley violated Rule 4-8.4(h) by failing to pay child support.  That Rule states that a lawyer shall not:  "willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation".

Here, for below reasons, the allegations of the Florida Bar Complaint and upon the law that this Court is bound to notice that the orders were <u>not</u> based upon any record evidence and that Sibley, lacking the ability to pay, did <u>not</u> "wilfully refuse" to pay child support obligations.

### A.    THE AUGUST 5, 2002 CONTEMPT ORDER WAS NOT BASED UPON RECORD EVIDENCE

This Court cannot ignore that the August 5, 2002 contempt order was <u>not</u> based upon record evidence and, as it was a *verbatim* adoption of a proposed order, it must be rejected as a basis for any action as detailed at, "Verbatim Adoption of Bar's Proposed Order"*, supra.*

#### 1.    *SIBLEY V. SIBLEY*, 833 SO.2D 847 (FLA.APP. 3 DIST. 2002)

Though not an exhibit to the Florida Bar Complaint, in response to that Complaint, Sibley raised the decision in *Sibley v. Sibley,* 833 So.2d 847 (Fla.App. 3 Dist. 2002) as evidence that Sibley did <u>not</u> violate  Rule 4-8.4(h) as recognized by the dissent written by Judge Cope in that matter.

47

Similarly, the majority opinion written by Judges Schwartz and Goderich which affirmed Judge Lando's decision is so full of factual errors that Judge Cope was compelled to point them out in his dissent.  As a result, Sibley cannot be said to have violated  Rule 4-8.4(h) upon the result obtained in *Sibley v. Sibley,* 833 So.2d 847 (Fla.App. 3 Dist. 2002).

Moreover, this Court must take notice of the decision in *Sibley v. Sibley,* 833 So.2d 847, n. 2 (Fla.App. 3 Dist. 2002), which plainly holds that "Notwithstanding that the [Sibley] has adamantly refused to reveal many of his financial records – which in itself raises a strong presumption against him, *City of Miami v. Rantanen*, 645 So. 2d 4 (Fla. 1st DCA 1994)  – the record shows substantial assets, although admittedly not in the purge amount, in his own name."

Accordingly, Count I's allegation that "Sibley violated Rules 4-8.4(h) of the Rules Regulating the Florida Bar" <u>cannot</u> be premised upon the trial court's orders attached to the Complaint as those orders were expressly overruled on appeal.          Indeed, in his dissent, Judge Cope pointed out: "The incarceration order in this case was entered precisely on the theory that the former husband does have $100,000 in assets in his personal possession with which to satisfy the purge amount. The majority opinion concedes that the record does not adequately support the trial court's view of the matter."  *Id.* at 850.

Additionally, Rule 4-8.4(h) states that a lawyer shall not:  "willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation".  Here, the court which entered the order was not competent to do so when the order was entered.

That order of Judge Lando was incompetent as she was without authority to proceed in Case No.: 94-18177 FC 19 after the filing by Sibley of his affidavit and motion for disqualification on August 20, 2002, pursuant Florida Statute §38.10 and Judge Lando's failure to rule upon that

affidavit pursuant to Florida Rules of .Judicial Administration, Rule 2.160.   Accordingly, Judge

Lando was not competent to issue the subject order which is Exhibit "A" to the Florida Bar

Complaint.

As such, Sibley did <u>not</u> "willfully" refuse to pay a child support obligation as he did not have

the ability to pay such obligation and that determination was not made by a competent court.

### 2.   THE AUGUST 5, 2002 CONTEMPT ORDER DOES NOT DEMONSTRATE SIBLEY HAD THE ABILITY TO PAY

A review of the findings of fact in the Contempt Orders establish that it fails to make the

requisite findings of fact and as such depart from the essential requirements of law in this regard.

Florida Family Law Rules of Procedure, Rule 12.615 – "Civil Contempt in Support Matters"

requires that such an order must (i) "contain a recital of the facts on which these findings are based"

and (ii) contain "separate affirmative finding that the contemnor has the present ability to comply

with the purge and the factual basis for that finding".   Thus, in order to be competent under this

Rule, an incarcerative order must contain facts that the contemptor at all times relevant had the

ability to pay the court ordered amounts and at present has the ability to pay the purge amounts.

In the Contempt Order, Judge Lando – through Mother's counsel – made the conclusory

finding that Sibley "at all times from May, 2000 had the present financial ability to pay", the required

"recital of facts" simply does not support such a finding.   Indeed, the recited facts inexorably point

to just the opposite conclusion.   Hence, upon what factual basis Judge Lando relied in order to make

that conclusion is a proper subject of discovery of her by Sibley.

As for year 2002, Judge Lando finds that Sibley's gross income is $37,500 annually from his

employment as general manager of his Sibley's company which translates to <u>gross</u> income of

$3,125/month – far in excess of the $4000/month that Judge Lando finds Sibley has had the present

ability to pay since May 2000 just under the Support Order.  Indeed, even taking the out of context statement that Sibley's Law Practice has taken in $17,000 so far this year[31] , that amount still if added to the other income of Sibley's would not permit payment of $4,000/month and leave Sibley with funds upon which to live and support his fourth child.  *Accord: Bickett v. Bickett*, 579 So. 2d 149 (3rd DCA 1991)(Court must assure that husband has funds remaining on which to live.)

As for the years 2000 and 2001, Judge Lando makes <u>no</u> "recital of facts" that Sibley had the ability to pay $4,000/month during those years.  Simply stated, the Support Contempt Order is devoid of any such "recital of facts" in that regard and hence Judge Lando's conclusion to that end must be examined for a basis in fact prior to its acceptance as a basis for sanctioning Sibley.

Moreover, in the Contempt Order, Judge Lando fails to make the requisite "separate affirmative finding that the contemnor has the present ability to comply with the purge and the factual basis for that finding."  Again, faced with the proof of a negative, Sibley can now only point to the Contempt Order and ask Judge Lando:  where is the factual basis for the finding of present ability to pay?  Where is the recitation of assets or income that Sibley possesses that could be used to pay the $100,000 in support arrearage and the $4,000/month traveling forward?  Simply stated, there was none.  Indeed, as stated above, Sibley's income did not begin to be available to meet such past and future obligations.  Hence, Sibley's income cannot be used as a basis for a finding based on the record that he has the "ability to pay"such amounts and thus Sibley did "willfully refuse" to pay a child support obligation as required by Rule 4-8.4(h).

Alternatively, such a factual finding could be premised upon assets owned by Sibley.  Here again, <u>no</u> such finding of assets presently held by Sibley that could be used to pay the past and future

---

[31]    That testimony was that Sibley had received $16,000 and that money was a cost and fee retainer for a matter through a potentially expensive trial.

support obligations is recited in the order: indeed, the only findings in this regard show a consistent

negative net worth of Sibley throughout this matter's long history.  Accordingly, Judge Lando must

be questioned upon what factual basis she relied upon to determine that Sibley had assets from which

he could pay the $100,000 in child support.

In sum, the Support Contempt Order is facially deficient of both the requisite findings of fact

that (i) Sibley had had at all material times the ability to pay the support of $4,000/month and (ii) that

he presently has the ability to pay both the ordered arrearage of $100,000 and the monthly support

figure of $4,000 going forward.

**B.    THE NOVEMBER 22, 2002 CONTEMPT ORDER WAS NOT BASED UPON RECORD EVIDENCE**

Last, Judge Lando entered on November 22, 2002, the Commitment Order which first

concludes by  incorporating "those previous factual and legal findings" that Sibley "has wilfully

refused to pay any child support . . .".

Then, Judge Lando continues that Sibley has "substantial personal assets, jointly held with

his present wife, which are easily liquidated into cash . . . these include sterling silver and art, which

could have been sold and have not been.  The Court notes that Mr. Sibley has retained private

counsel, ordered and paid for court reporters and transcripts, transportation and other litigation costs,

including litigation that has been termed frivolous in Federal Court."[32]  Plainly, such a conclusion

has no  basis in the record.

As such, Sibley did <u>not</u> "wilfully refuse to pay child support" in violation of Rule 4-8.4(h).

---

[32]    This last assertion of "frivolousness" is so patently false as to raise the question of whether
indeed Sibley received anything like due process from the courts of this state.

## IV.   SUBSTANTIVE DUE PROCESS ERRORS – RULE 4-3.1

As for Count II, Complainant claims that as a result of the opinion in *Sibley v. Sibley,* 885 So.2d 980 (Fla. 3rd DCA 2004)( a copy of which is attached to the Complaint) serves as a basis for alleging a violation of Rules 4-3.1 which states "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."

### A.   SIBLEY FILED No FRIVOLOUS MATTERS

What is barred is the bringing of a proceeding which is "frivolous".  Noteworthy, the Comments to Rule 4-3.1 state in part: "The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification, or reversal of existing law."

Here, a review of the decision in *Sibley v. Sibley,* 885 So.2d 980 reveals that the word "frivolous" is never employed by that court as it relates to Sibley.  Indeed, the court on four occasions uses the word "frivolous" in four cited cases to describe the sort of pleading that warrant sanctions.  Hence, the failure of the Third District Court of Appeal to describe – as honestly that court could not – Sibley's pleadings as "frivolous", precludes a finding that Sibley violated Rules 4-3.1.

The sum total of facts recited by Judges Cope, Gersten and Green in *Sibley v. Sibley,* 885 So.2d 980 to justify the sanction imposed upon Sibley was grounded in three areas.

First, an un-cited, undated, out of context quote attributed to Sibley in a letter to his former wife.  Besides the lack of notice of utilization of such quote as discussed *infra*, the *ad hominem*

attempt by the panel to impute an improper motive to Sibley is irrelevant to considerations here. Regardless of the subjective intent of a litigant in pursuing litigation, it can only be the objective consideration of the frivolousness of the pleadings that must be utilized to determine whether sanctions should be imposed. To hold otherwise opens the door for a court to subjectively impute to a litigant *mala fides* and, notwithstanding objectively non-frivolous pleadings, make the determination that such intent justifies barring the courthouse door to a litigant.

Second, after listing Sibley's twenty-five matters filed in that Court, the panel simply concludes – without citation to any of the decisions in those matters – that "the former husband's subsequent *pro se* proceedings in this court have been found to have no merit. As is shown by this appeal, the former husband has repeatedly tried to re-litigate matters decided in earlier proceedings, without any legitimate basis to do so."

As to the first statement, *merit* is not a criteria for denying access to the court. If it were, then every litigant who does not prevail on an appeal would be subject to denial of access to the court.

Moreover, the basis for the denial in every single instance in that court was upon a decision on the merits and <u>not</u> a dismissal for lack of jurisdiction or for frivolous filings. Perforce, a review of those twenty-five matters reveals that in all but three of them, the decision of the panels were *per curiam* without written opinion. Hence for this panel to speculate upon the "merits" of those appeals is an *ex post facto* exercise undertaken towards a conclusion where no conclusion can be made.[33]

Additionally, Judges Cope, Gersten and Green <u>failed</u> to note that in <u>not</u> one of the twenty-five

---

[33]    Indeed, as one court has noted, "In rendering the decree for the plaintiff, the chancellor stated that he relied on the *per curiam* decision of *Hoffman v. Drennen*, Fla.1956, 88 So.2d 624. This was a decision without opinion affirming a decree. We are of the view that **such a decision does not establish any point of law; and there is no presumption that the affirmance was on the merits.**" *Schooley v. Judd*, 149 So.2d 587, 590 (Fla.App. 2 Dist. 1963)(Emphasis added).

appeals were sanctions imposed upon Sibley by the various panels under Rules of Florida Appellate Procedure, Rule 9.410 which authorizes the court to "impose sanctions for any violation of these rules, or for the filing of any proceeding, motion, brief, or other paper that is frivolous or in bad faith." *Ipso facto*, none of the twenty-five appellate matters of Sibley were "frivolous or in bad faith". If the judges of this court had any reason to make such a finding in any of Sibley's twenty-five matters, they most certainly would have. This, they never did.

Noteworthy is that counsel for Sibley's ex-wife, likewise authorized under Rule 9.410 to make such a motion, realizing the *prima facie* good faith and basis for the twenty-five matters, <u>never</u> made such a motion in any of the twenty-five matters.

As to the second statement – "As is shown by this appeal, the former husband has repeatedly tried to re-litigate matters decided in earlier proceedings, without any legitimate basis to do so" – the panel's conclusory statement is simply wrong. In fact, in the panel's decision of November 3, 2004, there is only <u>one</u> reference to an attempt by Sibley to "re-litigate matters decided in earlier proceedings"– the March 4, 2003, order of the circuit court – calling into question this panel's reckless use of the plural "matters" when accuracy demands that the singular "matter" be utilized.[34]

Finally, the twelve actions in federal court cited by the panel were of no moment in Judges Cope, Gersten and Green's determination of the sanction imposed by them. First, noteworthy is that – with one exception – Federal Rule of Civil Procedure, Rule 11 sanctions were <u>not</u> imposed on Sibley by the federal courts which heard these matters resulting in the obvious conclusion that these

---

[34]    Even accepting Judges Cope, Gersten and Green's conclusions of the *res judicata* effect of the prior appeal, neither Sibley's ex-wife's counsel nor Judges Cope, Gersten and Green found Sibley's attempt to invoke the exception to *res judicata* under *State v. McBride*, 848 So.2d 287 (Fla. 2003) to be frivolous or in bad faith as <u>no</u> *sua sponte* motion for sanctions under Rule 9.410 was made in this matter.

54

matters were <u>not</u> frivolous.

Indeed, in two of them Sibley made significant federal law.[35]  Moreover, as noted by Judges Cope, Gersten and Green, all but one of the remaining nine federal suits were dismissed as an act of abstention discretion by the federal courts under *Rooker-Feldman* and *Younger* doctrine principals.  When a litigant seeks discretionary relief from a federal court which relief is denied and <u>no</u> Rule 11 sanctions are ordered, such a pattern of litigation can <u>not</u> serve as the basis for sanctions in Florida State court.  Do so hold would impinge on Sibley's right to access federal courts recognized in *Donovan v. City of Dallas*, 377 U.S. 408, 413 (1964) where the court stated:

> Petitioners being properly in the federal court had a right granted by Congress to have the court decide the issues they resented, and to appeal to the Court of Appeals from the District Court's dismissal. They have been punished both for prosecuting their federal-court case and for appealing it. They dismissed their appeal because of threats to punish them more if they did not do so. The legal effect of such a coerced dismissal on their appeal is not now before us, but the propriety of a state court's punishment of a federal-court litigant for pursuing his right to federal-court remedies is. **That right was granted by Congress and cannot be taken away by the State. The Texas courts were without power to take away this federal right by contempt proceedings or otherwise**. (Emphasis added).

As such, Judges Cope, Gersten and Green's conclusion that "The former husband has served

---

[35]    In *Sibley v. Schwartz*, Case No.: 01-3746-Civ-King, *affirmed*, No. 01-16571 (11th Cir. 2001), contrary to Judge King's holding that Defendant Judge Lando enjoyed absolute judicial immunity, the Eleventh Circuit held for the first time in this circuit that "[a]lthough absolute judicial immunity shields state court judges from suits seeking damages for acts taken in their judicial capacity, 'judicial immunity is not a bar to prospective injunctive relief' in 42 U.S.C. § 1983 suits against judicial officers acting in their judicial capacity. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)."

Additionally, in *Sibley v. Lando*, Case No.: 03-21885-Civ-Huck, *rev.* No. 03-14910 (11th Cir. 2004), the 11th Circuit, **reversed** the dismissal of the lawsuit Sibley brought against Judge Lando for her unlawful imprisonment of him and reinstated the matter holding "For the foregoing reasons we find that the district court (1) erred when it applied the *Rooker-Feldman* doctrine as a jurisdictional bar to Sibley's claims; (2) abused its discretion when it abstained from hearing Sibley's claims under the *Younger* doctrine."

as an unending source of vexatious and meritless litigation" is <u>without</u> basis in fact. Moreover, even if true, <u>neither</u> of these conclusion have been recognized by any court as being the basis for limiting access to court by a litigant for redress of grievances.

Accordingly, the conclusions of Judges Cope, Gersten and Green that the standards of *Lussy* and *Safir* are met simply ignores the attached facts and the law to obtain a conclusion which is logically indefensible.

As such, Judges Cope, Gersten and Green plainly (i) misstated the facts and (ii) found Sibley's appeal "meritless" in cases in which they did not sit or of which they had no knowledge.

Last, the idea of "mertilessness" as a basis for sanction is both novel and absurd. In in *BE&K Construction Co. v. National Labor Relations Bd.* 536 U.S. 516, 532 (2002), the Court addressed the concept of "merit" stating:

> Nor does the text of the First Amendment speak in terms of successful petitioning—it speaks simply of "the right of the people . . . to petition the Government for a redress of grievances." Second, even unsuccessful but reasonably based suits advance some First Amendment interests. Like successful suits, unsuccessful suits allow the "'public airing of disputed facts,'" *Bill Johnson's, supra*, at 743 (quoting Balmer, *Sham Litigation and the Antitrust Law*, 29 Buffalo L. Rev. 39, 60 (1980)), and raise matters of public concern. They also promote the evolution of the law by supporting the development of legal theories that may not gain acceptance the first time around. Moreover, the ability to lawfully prosecute even unsuccessful suits adds legitimacy to the court system as a designated alternative to force. See Andrews, *A Right of Access to Court Under the Petition Clause of the First Amendment: Defining the Right*, 60 Ohio St. L. J. 557, 656 (1999) (noting the potential for avoiding violence by the filing of unsuccessful claims). Finally, while baseless suits can be seen as analogous to false statements, that analogy does not directly extend to suits that are unsuccessful but reasonably based. For even if a suit could be seen as a kind of provable statement, the fact that it loses does not mean it is false. At most it means the plaintiff did not meet its burden of proving its truth. That does not mean the defendant has proved—or could prove—the contrary.

Plainly, there is no factual basis to sanction Sibley for his legal actions cited by the Florida Third District Court of Appeal.

### B.     THE BIAS OF THE THIRD DISTRICT COURT OF APPEALS

The Third District Court of Appeal bias against Sibley precludes them  – and every order issued from that Court – from being relied on to establish anything.

On April 23, 2004, pursuant to Florida Bar Rules, Sibley was given Course Credit Approval to teach  "Disqualifying State and Federal Trial and Appellate Judges and Suing them Personally" ("the Program")  for three general Continuing Legal Education Requirement credits and assigned course number 4036 by the Florida Bar.

On or about **August 13, 2004**, – prior to the issuance of the opinion in *Sibley v. Sibley* on **November 3, 2004** – Joanne Sargent, attorney for the Florida Third District Court of Appeals  – after conversations with staff members of Florida Bar – wrote the Executive Director of the Florida Bar – John F. Harkness, Jr. – objecting to the approval of the Program for continuing legal education credit.  The letter references orders in lawsuits between Sibley and judges of the Florida Third District Court of Appeal.  *Without reference to the merits of the Program*, solely upon an *ad hominem* attack on Sibley and notably on behalf of the Florida Third District Court of Appeal, Ms. Sargent concluded that "A review of the enclosed orders in Mr. Sibley's cases will convince you, I believe, that the proposed course should not be approved for C.L.E. credit." A copy of that letter is attached hereto as Exhibit "B".  As a result, on or about November 1, 2004, <u>without</u> prior notice or an opportunity to be heard given to Sibley, the Florida Bar Rules and Policy Committee met rescinded the Program credit.

Additionally, the bias of the Third District Court judges and the true genesis of their sanction

of Sibley comes on the heels of <u>four</u> members of the Third District Court of Appeals disqualifying themselves from matters in which Sibley is a party based upon motions to disqualify which alleged **unethical** behavior by those four judges – two of which *sua sponte* disqualified themselves when no motion for disqualification was pending, and **follows the admission by Third District Court of appeal Judges Levy and Ramirez to an *ex parte* meeting they had with Sibley's ex-wife's counsel on March 9, 2004, immediately prior to oral argument in Sibley's case**.

Accordingly, upon Substantive Due Process grounds, Sibley cannot be sanctioned by this Court for the Florida Bar Complaint allegations as the proof was so insufficient that this Court, consistent with its duty, could not accept as final the conclusion of the other court that the attorney engaged in such misconduct.

## V.    CONCLUSION

The failure to take the loyalty oaths, the mis-handling below by the Florida Bar, Referees, and the Florida Supreme Court's failure to intervene though repeatedly requested by Sibley to do so, has resulted in a proceeding so divorced from fundamental concepts of due process and the right to confront one's accusers as to prohibit this Court from signing its name to any order tacitly approving the proceedings below by suspending Sibley here.

Moreover, even if the procedural flaws could be ignored, the merits of the two counts of the Complaint fail under real analysis to stand.  First, Sibley never wilfully failed to pay child support. Second, Sibley's repeated petitioning never crossed the line into frivolousness and as such this Court cannot silence one of the few attorneys who will take on a judiciary which has permitted the travesty which is the Florida Family Court system to continue its primary profit making purpose in this state as it destroys families in its wake.

WHEREFORE, Sibley requests that (i) due to the extraordinary circumstances described herein the temporary stay be vacated and (ii) that no reciprocal suspension be imposed.

I SWEAR that all statements made herein, including those made in attachments which are incorporated herein by reference, are true and correct to the best of my knowledge, information, and belief.

## CERTIFICATE OF SERVICE

I hereby certify that: a true and accurate copy of the foregoing was served by this Court's CM/ECF system upon Paul Alan Levy, Public Citizen Litigation Group, 1600 20th Street, NW, Washington, DC 20009, Ray Beckerman, Vandenberg & Feliu LLP, 110 East 42 St., New York, NY 10017 and James R. Klimaski, Klimaski & Associates, P.C., 1625 Massachusetts Avenue NW, Suite 500, Washington, DC 20036-2245, this June 14, 2008.

MONTGOMERY BLAIR SIBLEY
Counsel for Plaintiff
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By:   /s/ Montgomery Blair Sibley
        Montgomery Blair Sibley
        D.C. Bar #464488

APPENDIX

The Failure to Take Loyalty Oath Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit "1"

The Florida Bar Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit "A"

The letter from Joanne E. Sargent which demonstrates the hostility and bias of the Third District Court of Appeals to Sibley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit "B"

The "Notice Setting Final Hearing" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit "C"

The Order denying the Motion to Continue Final Hearing" . . . . . . . . . . . . . . . . . . . Exhibit "D"

The Referee's Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit "E"

The March 7, 2008 Order Suspending Sibley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit "F"

## IN THE SUPREME COURT OF FLORIDA
### (Before a Referee)

THE FLORIDA BAR,                                   Supreme Court Case
                                                   No. SC06-1387
      Complainant,

vs.

MONTGOMERY BLAIR SIBLEY                             The Florida Bar File
                                                   Nos. 2003-00,597(2B) and
      Respondent.                        2005-00,557(2B)

_____/

## REPORT OF REFEREE

I.   **SUMMARY OF PROCEEDINGS**:

     Pursuant to the undersigned being duly appointed as Referee for the Supreme Court of Florida to conduct disciplinary proceedings as provided for by Rule 3-7.6 of the Rules Regulating The Florida Bar, trial of this cause was undertaken on April 16, 2007. All of the pleadings, notices, motions, orders, and exhibits are forwarded with this report and the foregoing constitute the record in this case.

     The following individuals appeared as for the parties:

On Behalf of The Florida Bar:   Barnaby L. Min
                          The Florida Bar
                          444 Brickell Avenue
                          Suite M-100
                          Miami, Florida 33131

On Behalf of the Respondent:   None.  Mr. Sibley, representing himself, failed to appear after properly being notice to appear.

II.   **FINDINGS OF FACT**:

1

A.    Jurisdictional Statement:

The Respondent is, and was at all times material herein, a member of The Florida

Bar, and subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.

B.    Narrative Summary of Cases:

The undersigned attempted to schedule a mutually convenient time for the final

hearing and left messages for the Respondent to determine what his schedule was.  As of

the filing of this report, none of those messages have been returned.  Accordingly, on

March 28, 2007, the undersigned sent out a Notice of Final Hearing and scheduled the

final hearing for April 16, 2007.  On April 11, 2007, the Respondent filed a Motion to

Dismiss or, Alternatively, Fifth Affidavit and Motion to Disqualify, or, Alternatively,

Motion to Continue Hearing which was denied.  On the final hearing date of April 16,

2007, the Respondent failed to appear.   The Respondent failed to contact the

undersigned's chambers or counsel for The Florida Bar to indicate that he was

unavailable or would not be appearing for the final hearing.  The undersigned notes that in

his motion filed on April 11, 2007, the Respondent stated that he would be available by

telephone.  Yet, as noted, the Respondent failed to contact either the undersigned or

counsel for The Florida Bar by telephone, facsimile, or electronic mail.

Accordingly, the final hearing proceeded without the Respondent being present.  *See The*

*Florida Bar v. Catalano*, 685 So. 2d 1299 (Fla. 1996)**.**

## COUNT I
## The Florida Bar File No. 2003-00,597(2B)

By order dated August 5, 2002, Judge Maxine Cohen Lando of the Eleventh Judicial Circuit found the Respondent in contempt of court for willfully failing to pay child support.  In that order, Judge Lando determined that the Respondent owed child support in the amount of $100,000.00.  Judge Lando further determined that the Respondent had the present financial ability to pay the child support but willfully failed to do so and, accordingly, willfully violated the trial court's order.  Because the Respondent was in contempt of court for willfully failing to pay child support, Judge Lando sentenced the Respondent to 90 days in jail unless the Respondent paid the outstanding child support. Judge Lando further set a payment plan for the Respondent to pay his outstanding child support.

By order dated October 18, 2002, Judge Lando amended her contempt order to increase the incarceration period to an indefinite period of time until the Respondent fully paid the outstanding child support.  As of November 22, 2002, the Respondent failed to pay any of the outstanding child support and failed to comply with Judge Lando's payment plan.  Accordingly, on November 22, 2002, Judge Lando issued an Order of Contempt and Commitment to the Miami-Dade County Corrections Department. Respondent sought review of Judge Lando's various orders of contempt and they were upheld on appeal.

### COUNT II
### The Florida Bar File No. 2005-00,57(2B)

On November 3, 2004, the Third District Court of Appeal filed an opinion in the matter of *Sibley v. Sibley*, 885 So. 2d 980 (Fla. 3rd DCA 2004) affirming the lower court's child support and contempt orders, and directing that the Respondent was precluded from further self-representation in that court.  In that opinion, the Third District Court of Appeal found that the Respondent had initiated 25 self-represented appellate proceedings (24 of which were found to be of no merit); filed at least 12 federal court actions against various judges assigned to his case, the court system, and his former wife (all of which were dismissed); and had filed a federal action in Delaware against his former wife (which was dismissed).  The Third District Court of Appeal also found that the Respondent "has served as an unending source of vexatious and *meritless* litigation", and agreed that his appeals were without merit. (emphasis added).  The Respondent sought review of the Third District's opinion by the Supreme Court of Florida, which was denied at *Sibley v. Sibley*, 901 So. 2d 120 (Fla. 2005).

III.    **<u>RECOMMENDATION AS TO GUILT</u>**:

Based on the foregoing, I find that  The Florida Bar has presented clear and convincing evidence of guilt to this Court and I make the following recommendations:

## AS TO CASE NUMBER 2003-00,597(2B)

I recommend that the Respondent be found guilty of violating Rule 4-8.4(h) (A lawyer shall not willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation) of the Rules of Professional Conduct.

## AS TO CASE NUMBER 2004-70,036(11F)

I recommend that the Respondent be found guilty of violating Rule 4-3.1 (Meritorious Claims and Contentions) of the Rules of Professional Conduct.

## IV.    **RECOMMENDATION AS TO DISCIPLINARY MEASURES TO BE APPLIED**:

Based on the foregoing, I recommend that the Respondent be suspended from the practice of law in the State of Florida for a period of three (3) years.

My recommendation is based on the facts presented and found and the following applicable standards from **Florida Standards for Imposing Lawyer Sanctions**:

A.    5.14    Admonishment is appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

B.    6.21    Disbarment is appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

C.    6.22    Suspension is appropriate when a lawyer knowingly violates a court

order or rule and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

D.    7.1    Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

E.    7.2    Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

## V.    **PERSONAL    HISTORY,    PAST    DISCIPLINARY    RECORD, AGGRAVATING FACTORS, AND MITIGATING FATORS**:

Prior to recommending discipline pursuant to Rule 3-7.6(m) (1) (C) of the Rules Regulating The Florida Bar, I considered the following:

A.    Personal History of the Respondent:

Age: 50

Date Admitted to Bar: December 7, 1987

Prior disciplinary record: N/A

B.    Aggravating Factors:

1.    9.22(b)    Dishonest or selfish motive

    2.    9.22(c)    Pattern of misconduct

    3.    9.22(d)    Multiple offenses

    4.    9.22(e)    Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency

    5.    9.22(g)    Refusal to acknowledge wrongful nature of conduct

    6.    9.22(i)    Substantial experience in the practice of law

C.    <u>Mitigating Factors</u>:   None

## VI. **STATEMENT OF COSTS AND RECOMMENDATION AS TO THE MANNER IN WHICH COSTS SHOULD BE TAXED**:

I find the following costs were reasonably incurred by The Florida Bar in these proceedings and should be assessed against the Respondent:

| | |
|---|---|
| Administrative Fee | $1,250.00 |
| Court Reporter (Hearing on 1-23-07) | $    75.00 |
| Court Reporter (At Final Hearing) | $  135.00 |
| Copy Costs | $1,176.35 |
| Staff Investigator's Costs | $1,354.15 |
| Bar Counsel's Travel Costs | $    19.86 |
| **INTERIM TOTAL** | **$4,010.36** |

I recommend that the foregoing costs be assessed against the Respondent.  It is further recommended that the execution issue with interest at the statutory rate to accrue

on all costs not paid within 30 days of entry of the Supreme Court's final order.

Dated this _____ day of _____, 2007.


**Orlando A. Prescott**

**ORLANDO A. PRESCOTT**
**Referee, Circuit Court Judge**
**Richard E. Gerstein Justice Building**
**1351 NW 12 Street, Room 713**
**Miami, Florida 33125**


Copies to:
      Barnaby L. Min, Bar Counsel
      Montgomery Blair Sibley, Respondent
      Kenneth L. Marvin, Staff Counsel
      Brian B. Burgoon, Designated Reviewer

# Supreme Court of Florida

FRIDAY, MARCH 7, 2008

**CASE NO.:** SC06-1387
Lower Tribunal No(s).: 2003-00,597(2B),
2005-00,557(2B)

THE FLORIDA BAR      vs.     MONTGOMERY BLAIR SIBLEY

---

Complainant(s)                         Respondent(s)

      The report of the referee is approved and respondent is suspended from the practice of law for three years, effective thirty days from the date of this order so that respondent can close out his practice and protect the interests of existing clients.  If respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately.  Respondent shall accept no new business from the date this order is filed until he is reinstated.

      Respondent is further directed to comply with all other terms and conditions of the report.

      Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Montgomery Blair Sibley in the amount of $4,599.51, for which sum let execution issue.

      Not final until time expires to file motion for rehearing, and if filed, determined.  <u>The filing of a motion for rehearing shall not alter the effective date of this suspension.</u>

LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.

A True Copy
Test:

Thomas D. Hall
Clerk, Supreme Court

cic
Served:
HON. ORLANDO A. PRESCOTT, JUDGE      BARNABY LEE MIN
KENNETH LAWRENCE MARVIN            MONTGOMERY BLAIR SIBLEY
BRIAN DAVID BURGOON

R. Fred Lewis
Chief Justice



Elisabeth H. Goodner
State Courts Administrator

## Office of the State Courts Administrator
**Laura Rush**
**General Counsel**
**850.488.1824 / 850.410-5301 Fax / rushl@flcourts.org**

May 8, 2008

Montgomery Biair Sibley
1629 K Street, Suite 300
Washington, D.C. 20006

Dear Mr. Sibley:

This letter responds to your April 18 request for the section 876.05, Florida
Statutes, loyalty oaths for Justice Raoul G. Cantero, III and for Justice Kenneth B. Bell.
Copies of loyalty oaths for Justices Cantero and Bell are enclosed.

Sincerely,

Laura Rush

Enclosures

# OATH OF LOYALTY

## STATE OF FLORIDA

## COUNTY OF Leon

I, RAOUL G. CANTERO, III , a citizen of the State of Florida and of the
United States of America, and being employed by or as an officer of the
Florida State Courts System and as a recipient of public funds as such
employee or officer, do hereby solemnly swear or affirm that I will support
the Constitution of the United States and of the State of Florida.



Signature

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ACKNOWLEDGMENT OF AT-WILL EMPLOYMENT

I hereby acknowledge that my employment with the Florida State Courts
System, pursuant to 110.205(2)(c), Florida Statutes, is not covered under the
Career Service and that all employees of the Florida State Courts System
serve at the pleasure of the appointing authority and do no attain tenure
rights.

_____

Signature

SUBSCRIBED AND SWORN TO BEFORE ME AT:

_____

This _____ day of _____, _____

Printed Name _____

Signature _____

Title _____

Identification Used  (1) _____   and  (2) _____
                        (#) _____         (#) _____.

5:01

# O A T H   O F   L O Y A L T Y

**STATE OF FLORIDA**

**COUNTY OF** _Escambia_

I, _Kenneth Bradley Bell_ , a citizen of the State of Florida and the United States of America, and being employed by or an officer of _STATE COURTS SYSTEM_ and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida.

I hereby acknowledge that my employment with the State Courts System is, pursuant to 110.205(C), Florida Statutes, not covered under Career Service and that all employees of the State Courts System serve at the pleasure of the appointing authority and do not attain tenure rights.

_B. Bell_
_____
(Signature)

Subscribed and sworn to before me at

_Pensacola, Florida_

this _7th_ day of _December_ ,

19 _90_.

_Avis V. Lace_

Title _Notary Public_

My Commission Expires _____

My Commission Expires Aug. 20, 1993

Revised 05/88(8/89)

# OATH OF LOYALTY FOR JUDGES
## (Section 876.05, Florida Statues)

**STATE OF FLORIDA**

**COUNTY OF** <u>LEON</u>

I, <u>RAOUL G. CANTERO</u>, a citizen/resident of the State of Florida and of the United States of America, and being an officer of the Florida State Courts System and as a recipient of public funds as such officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida.

<u>RAOUL G. CANTERO</u>
Name (please print)

_(signature)_
Signature

<u>OCTOBER 10, 2007</u>
Date

Subscribed and sworn to before me at:

<u>TALLAHASSEE, FLORIDA</u>

This <u>10th</u> day of <u>OCTOBER</u>, <u>2007</u>

Printed Name <u>MARIA BARKER</u>

Signature <u>Maria Barker</u>

Title <u>JUDICIAL ASSISTANT</u>

Personally known to me <u>✓</u>, or type of identification:

Driver's License _____

Social Security Card _____

Other _____

# OATH OF LOYALTY FOR JUDGES
## (Section 876.05, Florida Statues)

**STATE OF FLORIDA**

**COUNTY OF** LEON

I, KENNETH B. BELL , a citizen/resident of the State of Florida and of the United States of America, and being an officer of the Florida State Courts System and as a recipient of public funds as such officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida.

KENNETH B. BELL
Name (please print)

Signature

10 - 24 - 07
Date

Subscribed and sworn to before me at:

TALLAHASSEE , FLORIDA

This 24th day of OCTOBER , 2007

Printed Name MARIA BARKER

Signature Maria Barker

Title JUDICIAL ASSISTANT

Personally known to me ✓, or type of identification:

Driver's License _____

Social Security Card _____

Other _____

R. Fred Lewis
Chief Justice

Elisabeth H. Goodner
State Courts Administrator

## Office of the State Courts Administrator

Laura Rush
General Counsel
850.488.1824 / 850.410-5301 Fax / rushl@flcourts.org

May 21, 2008

Montgomery Blair Sibley
1629 K Street, Suite 300
Washington, D.C. 20006

Dear Mr. Sibley:

This letter responds to your May 20 request for copies of loyalty oaths
for Chief Justice R. Fred Lewis, Justice Charles T. Wells, Justice Harry Lee
Anstead, Justice Barbara J. Pariente and Justice Peggy A. Quince. Copies of
the requested oaths are enclosed. Copies of loyalty oaths for Justice
Kenneth B. Bell, as well as for Justice Raoul G. Cantero, were provided to
you in my May 8 correspondence to you.

Sincerely,

Laura Rush

Enclosures

1

## OATH OF LOYALTY

STATE OF FLORIDA

COUNTY OF ___Dade___

RECEIVED

99 JAN 14 PM 1: 17

OSCA - ASD

I, ___R. Fred Lewis___, a citizen of the State of Florida and of the United States of America, and being employed by or an officer of the Florida State Courts System and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida

_____
Signature

---

## ACKNOWLEDGMENT OF AT-WILL EMPLOYMENT

I hereby acknowledge that my employment with the State Courts System is, pursuant to 110.205(2)(c), Florida Statutes, not covered under Career Service and that all employees of the State Courts System serve at the pleasure of the appointing authority and do not attain tenure rights.

_____
Signature

Subscribed and sworn to before me at

___Tallahassee, Leon County, Florida___

This ___13th___ Day of ___January___, 1999

_____

Title _____

Pamela M. Blackwell
MY COMMISSION # CC611901 EXPIRES
January 7, 2001
BONDED THRU TROY FAIN INSURANCE, INC.

Type of identification used:
Driver's License _____ .
Social Security _____
Voter Registration _____
Passport _____
Other ___personally known___

# OATH OF LOYALTY FOR JUDGES
## (Section 876.05, Florida Statues)

**STATE OF FLORIDA**

**COUNTY OF** LEON

I, Charles T. Wells, a citizen/resident of the State of Florida and of the United States of America, and being an officer of the Florida State Courts System and as a recipient of public funds as such officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida.

CHARLES T. WELLS
Name (please print)
CHARLES T. WELLS

*Charles T Wells*
Signature

October 10, 2007
Date

Subscribed and sworn to before me at:

Tallahassee, Leon County, Florida

This 10th day of October , 2007

Printed Name Pamela Moody Blackwell

Signature *Pamela Moody Blackwell*

Title Notary Public, State of Florida

Pamela Moody Blackwell
Commission # DD379769
Expires January 7, 2009
Bonded Troy Fain - Insurance, Inc. 800-385-7019

Personally known to me X , or type of identification:

Driver's License _____

Social Security Card _____

Other _____

# OATH OF LOYALTY FOR JUDGES
### (Section 876.05, Florida Statues)

STATE OF FLORIDA

COUNTY OF __LEON__

I, __Harry Lee Anstead_____, a citizen/resident of the State of Florida and of the United States of America, and being an officer of the Florida State Courts System and as a recipient of public funds as such officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida.

Harry Lee Anstead
Name (please print)

Signature

10/18/07
Date

Subscribed and sworn to before me at:

This __18__ day of __October__ , __2007__

Printed Name __Kay J. Livings__

Signature

Title __Judicial Assistant__

Personally known to me __X__ , or type of identification:

Driver's License _____

Social Security Card _____

Other _____

# OATH OF LOYALTY FOR JUDGES
## (Section 876.05, Florida Statues)

## STATE OF FLORIDA

## COUNTY OF __LEON__

I, __BARBARA J. PARIENTE__, a citizen/resident of the State of Florida and of the United States of America, and being an officer of the Florida State Courts System and as a recipient of public funds as such officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida.

BARBARA J. PARIENTE
Name (please print)

_Barbara J. Pariente_
Signature

__October 10, 2007__
Date

Subscribed and sworn to before me at:

__TALLAHASSEE, FLORIDA__

This __10th__ day of __OCTOBER__ , __2007__

Printed Name __MARIA BARKER__

Signature __Maria Barker__

Title __JUDICIAL ASSISTANT__

Personally known to me __✓__, or type of identification:

Driver's License _____

Social Security Card _____

Other _____

## OATH OF LOYALTY

STATE OF FLORIDA

COUNTY OF ___Palm Beach___

I, ___Barbara J. Pariente___ , a citizen of the State of Florida and of the
United States of America, and being employed by or an officer of the Florida
State Courts System and a recipient of public funds as such employee or officer,
do hereby solemnly swear or affirm that I will support the Constitution of the
United States and of the State of Florida.

_____
Signature

---

## ACKNOWLEDGEMENT OF EMPLOYMENT AT-WILL STATUS

I hereby acknowledge that my employment with the State Courts System is, pursuant
to 110.205(c), Florida Statutes, not covered under Career Service and that all
employees of the State Courts System serve at the pleasure of the appointing
authority and do not attain tenure rights.

_____
Signature

Subscribed and sworn to before me at

_____

This _____ Day of _____ ,19___

_____

Title_____

Commission Expires_____

Revised 4/91

93 SEP 15 AM 7:56
OSCA-ASD
RECEIVED

# OATH OF LOYALTY FOR JUDGES
## (Section 876.05, Florida Statues)

**STATE OF FLORIDA**

**COUNTY OF** _Leon_

I, _Peggy A. Quince_, a citizen/resident of the State of Florida and of the United States of America, and being an officer of the Florida State Courts System and as a recipient of public funds as such officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida.

_Peggy A. Quince_
Name (please print)

_Peggy A. Quince_
Signature

_October 10, 2007_
Date

Subscribed and sworn to before me at:

_Tallahassee, Florida_

This _10th_ day of _October_ , _2007_

Printed Name  _MARIA BARKER_

Signature  _Maria Barker_

Title  _JUDICIAL ASSISTANT_

Personally known to me _✓_, or type of identification:

Driver's License _____

Social Security Card _____

Other _____



## CLOSE OUT MEMO
## PRELIMINARY INQUIRY

### Public Corruption Unit

| | |
|---|---|
| A.S.A.:       Joseph M. Centorino | INVESTIGATION #: 64-08-42 |
| SIGNATURE: | DATE: 5/16/08 |
| | DATE: 5/16/08 |
| JOSEPH M. CENTORINO, Division Chief, PC Unit | |
| JOSE J. ARROJO, Chief Assistant | DATE: 5/16/08 |

SUBJECT(S): Syed A. Shah       EMPLOYMENT:   Former Payroll Administrator, Administrative Office of the Courts, Miami-Dade County

INVESTIGATOR:  Cedric W. Johnson
AGENCY:        OIG
PHONE:         305-375-1946

### ALLEGATION:

| CRIME | STATUTE | | DEGREE |
|---|---|---|---|
| Forgery | F.S. 831.01 | 3 F | |
| Official Misconduct | F.S. 839.25 | 3 F | |
| False or Fraudulent Notarization | F.S. 117.105 | 3 F | |

### CONCLUSION:

This inquiry was opened upon referral from Linda Kelly Kearson, General Counsel for the Eleventh Judicial Circuit of Florida.  Ms. Kearson informed that an issue had been raised by Attorney John B. Thompson, concerning possible forgery of a Loyalty Oath submitted on behalf of Miami-Dade Circuit Judge Dava Tunis.  The document containing the oath, which is required to be signed by all State judges pursuant to section 876.05, Florida Statutes, was submitted on behalf of Judge Tunis on September 12, 2000.  The oath was obtained by Attorney Thompson from Miami-

Tunis was a forgery. In support of his allegation, Thompson submitted the affidavit of Curtis Baggett, Expert Document Examiner, who stated that he had compared the signature on the oath with five documents containing the known signatures of Dava J. Tunis, and had concluded that the signature on the Loyalty Oath form was authored by a person other than Judge Tunis.

Ms. Kearson forwarded the document in question to Judge Tunis, who acknowledged that the signature on the form was indeed a forgery. Ms. Kearson then conducted a review of loyalty oaths on file for other Miami-Dade judges and located two other possibly forged loyalty oaths, one for Judge Orlando Prescott submitted on July 20, 2000, and one for Judge Linda Singer Stein submitted January 5, 1993.

Ms. Kearson, in reviewing the aforesaid documents, noted that all three of the questioned signatures were notarized by the same Notary Public, Syed A. Shah, a former employee of the Administrative Office of the Courts, who had retired from his position on December 31, 2002.

This writer, upon receiving the aforesaid information from Ms. Kearson, spoke with the Miami-Dade County Office of Inspector General, which had initiated its own investigation of the three apparently forged signatures. In the course of their investigation, OIG investigators interviewed Judges Tunis, Prescott and Stein, as well as the subject, Syed Shah. A report summarizing the findings of the OIG investigation was forwarded to this writer for review for possible criminal charges. The findings of the report and this writer's conclusion are summarized below.

## JUDGE DAVA TUNIS

Judge Tunis related to OIG investigators that this matter came to her attention when she received Ms. Kearson's response to a public records request from Mr. Thompson, and that she had immediately acknowledged that the signature on her 2000 Loyalty Oath was not hers. She said she had also reviewed her personnel file and found another signature that was not hers, on an undated "Policy Statement" regarding discrimination in the workplace, intended to be signed by employees of the Florida State Court System. Judge Tunis said she then notified Florida Supreme Court Chief Justice R. Fred Lewis of the forgery.

Judge Tunis stated to investigators that the signature on the Loyalty Oath document is clearly a forgery, and that she had no recollection of having signed the form. She noted that she was newly-appointed as a judge at the time the form was submitted, and would have personally signed the document had it been brought to her attention.

Judge Tunis, who was appointed to the County Court in 2000, successfully ran for retention in 2002, and was elevated to the Circuit Court in 2005. Following the revelation of the forged Loyalty Oath form, Judge Tunis executed a Loyalty Oath on February 4, 2008.

## JUDGE ORLANDO PRESCOTT

Judge Orlando Prescott also stated to investigators that this matter came to his attention when he was contacted by Ms. Kearson. He was also a newly-appointed County Court judge in 2000. Judge Prescott acknowledged that the signature on the Loyalty Oath form submitted in his name was a forgery. He indicated that he had signed numerous documents at the time of his appointment, and would have personally signed the oath had it been presented to him.

Judge Prescott successfully ran for retention in 2002, and was elevated to the Circuit Court in 2005. After he was apprised of the forged Loyalty Oath form, he executed a new oath on February 4, 2008.

## JUDGE LINDA SINGER STEIN

Judge Linda Singer Stein stated to investigators that she reviewed the document in question when this matter was brought to her attention by Ms. Kearson. She acknowledged that the signature purporting to be hers does not exactly match her signature, but was unsure whether the signature on the form was written by her. She was a newly-elected County Court Judge when the form was filed in 1993, and had little memory of the form or any employee who may have notarized it.

Please Recycle

0674 - C:\Documents And Settings\A00610\Local Settings\Temporary Internet Files\OLK6D\PB2 Report For Preliminary Inquiry Syed A Shah.Doc|DU

Judge Stein, who was first elected to the County Court in 1992, initially served in the Criminal Division of the Hialeah Branch Court, and since 1994 has sat in the Civil Division of that Court. She executed a new Loyalty Oath on February 4, 2008.

## SUBJECT SYED A. SHAH

Subject Syed A. Shah stated to the OIG investigators that he began working for the County around 1980, and began working for the Administrative Office of the Courts in 1987 as a Payroll Administrator. He retired from that position in 2002. Through his position as Payroll Administrator, he became a Notary Public, and often notarized documents for the judges. He said that he was the only notary in his area of the office, and was the only one that the judges or their secretaries would contact to notarize the Oath of Loyalty.

Shah acknowledged that he had notarized all three documents in question, each of which bears his notary stamp. However, he denied signing any of the three judges' names and maintained that the signatures were properly notarized by him. According to records maintained by the Bureau of Notaries Public, Division of Elections, Office of the Secretary of State for the State of Florida, the Subject's Notary Public Commission, under which he notarized the questioned documents, expired on June 13, 2001. The Subject's commission was renewed at that time based upon the Subject's application, until it expired on April 13, 2005. It was not renewed thereafter.

## CONCLUSION

There is sufficient evidence, based upon the statements of Judge Tunis and Judge Prescott, as well as the apparent discrepancy in their signatures, to conclude that the signatures on the Loyalty Oath forms submitted in their names in 2000 were forged. However, there is insufficient evidence to prove that the Subject, who denied the forgery, or any other person, forged the documents. None of those interviewed provided information concerning the identity of the forger. It is unlikely that the identity of the forger could be conclusively determined through forensic handwriting analysis or other investigative means.

The Subject was a public employee at the time he notarized the false signatures, as well as a Notary Public, which is also a public office under Florida Statutes. There are two witnesses, both judges, who would testify that they did not sign the forms in question and were not present at the time that the forms were notarized. It may be presumed, from the nature of his employment and the fact that he regularly notarized the signatures of sitting judges, that the Subject was familiar with the identities of the judges. However, any prosecution for Official Misconduct or Notary Fraud (or even Forgery), even if there were sufficient evidence to support one or more of these charges, would be time-barred since the applicable three-year Statute of Limitation for said offenses, pursuant to F.S. 775.15 (2) (b), expired during 2003 for both documents.

Inasmuch as the offenses in question were arguably based on misconduct in office by a public employee, the extender provision contained in section 775.15(b) might be applied to extend the time for initiating prosecution. However, such provision would extend the Statute of Limitations for at most two (2) years after the subject left public office. It has been 5½ years since the subject retired from his County position, and three years since his notary commission finally expired.

It is also arguable that a violation of F.S. 117.105 includes a material element of fraud, which might make applicable the extender provision of F.S.775 (15) (a), since the fraud was discovered less than a year ago. However, the fraud extender only provides an extension of three (3) years beyond the otherwise applicable Statute of Limitations, which expired, as noted above, in 2003.

The possibility of "stacking" the extenders contained in the two aforesaid statutes was considered, which could, in theory, bring the felony charges within the period of the second statutory extension. After consulting with ASA Penny Brill, Chief of the Legal Division, and ASA Angelica Zayas, also of the Legal Division, it was determined by this writer that the Statutes cannot be "stacked" and that only one or the other extender may be utilized.

Therefore, it is the conclusion of this writer that even if criminal forgery could be proven, prosecution of the subject would be time-barred by applicable Statutes of Limitations.

It should be noted also that there is no evidence that any of the judges involved, Tunis, Prescott or Stein, had any prior knowledge of or involvement with the forgeries. There is no conceivable criminal motive for a judge to have participated in a forgery of his or her own Loyalty Oath. The issue of what, if any, legal consequences flow from the absence of a properly signed Loyalty Oath by a judge is beyond the scope of this memo.

This matter has already been brought to the attention of the Judicial Qualifications Commission (JQC) of the State of Florida by Mr. Thompson. Accordingly, the information derived from the OIG investigation, as well as this memorandum, will be forwarded to that agency

This inquiry is closed.

cc: Jose J. Arrojo



FLORIDA SUPREME COURT

| Home | Justices | Public Info | Clerk | Court Decisions | Docket Search | FAQ | About the Court |

*Florida Supreme Court Docket*

## Case Docket

### Case Number: SC06-1387  - Active

### THE FLORIDA BAR  vs.  MONTGOMERY BLAIR SIBLEY

#### Lower Tribunal Case(s): 2003-00,597(2B), 2005-00,557(2B)

List of Abbreviations      Printer Friendly View

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| 07/14/2006 | COMPLAINT | CO The Florida Bar FB BY: WD Arne Carl Vanstrum 865771 | (O&1) |
| 07/14/2006 | REQUEST-ADMISSIONS | CO The Florida Bar FB BY: WD Arne Carl Vanstrum 865771 | (O&1): (STRICKEN, SEE 07/27/06 ORDER) |
| 07/21/2006 | No Fee Required | | |
| 07/27/2006 | ORDER-STRIKE | | In light of The Florida Bar's filing an Amended Request for Admissions with this Court on July 27, 2006, the Request for Admissions filed with this Court on July 14, 2006, is hereby stricken. |
| 07/27/2006 | REQUEST-ADMISSIONS | CO The Florida Bar FB BY: WD Arne Carl Vanstrum 865771 | AMENDED (O&1) |
| 07/27/2006 | ORDER-REFEREE APPOINTMENT (DISCIPLINARY) | | HON. CHARLES A. FRANCIS, C.J., 2ND JUDICIAL CIRCUIT |
| 07/27/2006 | NOTICE-FILING | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | REMOVAL OF ACTION FROM STATE COURT AND MEMORANDUM OF LAW IN SUPPORT (08/11/06, FORWARDED TO REFEREE) |
| 08/02/2006 | REFEREE APPOINTED | | DATED 08/01/06, HON. JOHN E. CRUSOE, 2ND JUDICIAL CIRCUIT (RE-ASSIGNED TO HON. ORLANDO A. PRESCOTT, 11TH JUDICIAL CIRCUIT - SEE ORDER DATED 10/03/06) |
| 08/14/2006 | NOTICE-FILING | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | NOTICE OF FILING REMOVAL OF ACTION FROM STATE COURT AND MEMORANDUM OF LAW IN SUPPORT, W/ NOTICE OF REMOVAL ATTACHED (08/14/06, SENT TO REFEREE) |
| 08/15/2006 | NOTICE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | (STYLED IN USDC) NOTICE OF REQUEST FOR COPY OF MAGISTRATE'S REPORT AND REQUEST FOR ORDER TO SHOW CAUSE WHY STATE COURT PROCEEDINGS SHOULD NOT BE ENJOINED PURSUANT TO 28 U.S.C. 1441(D): (08/15/06, SENT TO REFEREE) |
| 08/17/2006 | RESPONSE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | RESPONDENT'S RESPONSE TO AMENDED REQUEST FOR ADMISSIONS (08/17/06, SENT TO REFEREE) |
| 08/18/2006 | MOTION-RECUSAL/DISQUALIFICATION | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | (MOTION IS UNSIGNED) RESPONDENT'S AFFIDAVIT AND MOTION TO DISQUALIFY (08/18/06, SENT TO THE REFEREE) (08/22/06, SIGNED AFFIDAVIT/MOTION FILED) (08/23/06, SIGNED AFFIDAVIT/MOTION SENT TO |

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| | | | REFEREE) |
| 08/21/2006 | MISC. DOCKET ENTRY | | PE Montgomery Blair Sibley - "OBJECTIONS TO MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION" (STYLED IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA) (08/23/06, SENT TO REFEREE) |
| 08/21/2006 | MOTION-RECUSAL/DISQUALIFICATION | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "SECOND AFFIDAVIT AND MOTION TO DISQUALIFY" (08/23/06, SENT TO REFEREE) |
| 08/22/2006 | MISC. DOCKET ENTRY | | PE Montgomery Blair Sibley - "MOTION FOR ORDER TO SHOW CAUSE WHY JUDGE JOHN E. CRUSOE SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATING 28 U.S.C. § 1441(D)" (STYLED IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA) (08/23/06, SENT TO REFEREE) |
| 09/13/2006 | PETITION-PROHIBITION | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | & REQUEST FOR STAY OF STATUS CONFERENCE ON 09/14/06 (FILED AS "VERIFIED PETITION FOR WRIT OF PROHIBITION") (REQUEST FOR STAY IS DENIED - SEE ORDER DATED 09/13/06) (PROHIBITION DENIED-SEE ORDER DATED 10/16/06) |
| 09/13/2006 | ORDER-STAY PROCEEDINGS BELOW DY | | To the extent Respondent Sibley is seeking a writ of prohibition directing the referee in this matter not to conduct the status conference scheduled to take place on Thursday, September 14, 2006, the petition is denied. The remainder of the petition is still under consideration by the Court. |
| 09/19/2006 | MOTION-OTHER SUBSTANTIVE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "FIRST REQUEST FOR ISSUANCE OF SUBPOENAS DUCES TECUM" (09/20/06, SENT TO REFEREE) |
| 09/19/2006 | MOTION-OTHER SUBSTANTIVE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "FIRST MOTION TO COMPEL" (09/20/06, SENT TO REFEREE) |
| 09/19/2006 | MOTION-OTHER SUBSTANTIVE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "FIRST OMNIBUS MOTION" (09/20/06, SENT TO REFEREE) |
| 09/19/2006 | ANSWER | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "ANSWER AND AFFIRMATIVE DEFENSES / JURY TRIAL DEMAND OR, ALTERNATIVELY, REQUESTED" (09/20/06, SENT TO REFEREE) |
| 10/03/2006 | ORDER-CIRCUIT COURT | | GRANTING RESPONDENT'S MOTION TO CHANGE VENUE DATED 10/03/06, ALONG WITH MISC. PLEADINGS FILED BEFORE JUDGE CRUSOE |
| 10/03/2006 | MOTION-REHEARING ON MISC ORDER | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS MOTION TO RE-CONSIDER ORDER DENYING RESPONDENT'S FIRST REQUEST FOR ISSUANCE OF SUBPOENA DUCES TECUM |
| 10/04/2006 | ORDER-REFEREE APPOINTMENT (DISCIPLINARY) | | HON. JOSEPH P. FARINA, C.J., 11TH JUDICIAL CIRCUIT |
| 10/16/2006 | ORDER-OTHER SUBSTANTIVE DY | | Respondent Sibley's petition for writ of prohibition is hereby denied. |
| 10/19/2006 | REFEREE APPOINTED | | HON. ORLANDO A. PRESCOTT, 11TH JUDICIAL CIRCUIT |
| 12/22/2006 | MOTION-OTHER SUBSTANTIVE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS MOTION TO DISMISS OR ALTERNATIVELY, RESPONDENT'S THIRD AFFIDAVIT AND MOTION TO DISQUALIFY AND MOTION FOR CONTEMPT |

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| 01/16/2007 | RESPONSE | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | TO RESPONDENT'S MOTION TO DISMISS OR, ALTERNATIVELY, RESPONDENT'S THIRD AFFIDAVIT AND MOTION TO DISQUALIFY AND MOTION FOR CONTEMPT (COPY) |
| 01/31/2007 | RESPONSE | George L. Waas 129927 BY: George L. Waas 129927 | IN OPPOSITION TO THE ISSUANCE OF SUBPOENAS TO JUDGES FOR DISCOVERY PURPOSES (O&7) (CERT. OF SERVICE DOES NOT REFLECT SERVICE ON BAR COUNSEL OR THE REFEREE) (02/01/07, SENT TO REFEREE) |
| 02/01/2007 | PETITION-PROHIBITION | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS SECOND VERIFIED PETITION FOR WRIT OF PROHIBITION W/ATTACHMENTS |
| 02/02/2007 | ORDER-CIRCUIT COURT | | DATED 01/04/07, DENYING RESPONDENT'S MOTION TO DISMISS OR ALTERNATIVELY, RESPONDENT'S THIRD AFFIDAVIT AND MOTION TO DISQUALIFY AND MOTION FOR CONTEMPT (COPY) |
| 02/08/2007 | MOTION-DISMISS | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | RESPONDENT'S SECOND VERIFIED PETITION FOR WRIT OF PROHIBITION (FILED AS RESPONSE TO RESPONDENT'S SECOND VERIFIED PETITION FOR WRIT OF PROHIBITION AND/OR THE FLORIDA BAR'S MOTION TO DISMISS) |
| 02/26/2007 | PETITION-PROHIBITION | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS THIRD VERIFIED PETITION FOR WRIT OF PROHIBITION W/ATTACHMENTS |
| 04/16/2007 | MOTION-DISMISS | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS MOTION TO DISMISS OR, ALTERNATIVELY, FIFTH AFFIDAVIT AND MOTION TO DISQUALIFY, OR, ALTERNATIVELY, MOTION TO CONTINUE FINAL HEARING |
| 04/16/2007 | MOTION-DISMISS | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS MOTION TO DISMISS AND FIFTH VERIFIED PETITION FOR WRIT OF PROHIBITION |
| 04/16/2007 | RESPONSE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS REPLY TO BAR'S MOTION IN LIMINE AND TO RECONSIDER THE ORDER DENYING DISCOVERY |
| 04/23/2007 | NOTICE-ADDRESS CHANGE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | AND NOTICE OF UNAVAILABILITY FROM 06/25/07 THROUGH 07/05/07, AND FROM 08/08/07 THROUGH 08/16/07 |
| 04/26/2007 | RESPONSE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | RESPONDENT'S OBJECTION TO REFEREE'S MOTION FOR ENLARGEMENT OF TIME TO FILE REPORT (W/ATTACHMENTS) |
| 04/26/2007 | MISC. DOCKET ENTRY | | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 RESPONDENT'S INITIAL PROPOSED "REPORT OF REFEREE" |
| 05/07/2007 | REFEREES REPORT | | W/MISC. PLEADINGS & E-MAIL |
| 05/07/2007 | AFFIDAVIT/STATEMENT OF COSTS | | |
| 05/07/2007 | MOTION-EXT OF TIME (REFEREE'S REPORT) | Hon. Orlando A. Prescott, Judge 480746 BY: Hon. Orlando A. Prescott, Judge 480746 | |
| 05/07/2007 | ORDER-CIRCUIT COURT | | DATED 01/04/07, DENYING RESPONDENT'S MOTION TO DISMISS OR, ALTERNATIVELY, RESPONDENT'S THIRD AFFIDAVIT AND MOTION TO DISQUALIFY AND MOTION FOR CONTEMPT |

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| 05/07/2007 | ORDER-CIRCUIT COURT | | DATED 04/12/07, DENYING RESPONDENT'S MOTION TO DISMISS OR, ALTERNATIVELY, FIFTH AFFIDAVIT AND MOTION TO DISQUALIFY, OR, ALTERNATIVELY MOTION TO CONTINUE FINAL HEARING |
| 05/07/2007 | ORDER-CIRCUIT COURT | | DATED 04/16/07, DENYING RESPONDENT'S MOTION TO DISMISS AND FIFTH VERIFIED PETITION FOR WRIT OF PROHIBITION |
| 05/18/2007 | ORDER-OTHER SUBSTANTIVE DY | | Respondent's Second Verified Petition for Writ of Prohibition filed with this Court on February 1, 2007, is hereby denied. The Florida Bar's Response to Respondent's Second Verified Petition for Writ of Prohibition and/or The Florida Bar's Motion to Dismiss filed with this Court on February 8, 2007, is hereby denied as moot. The Respondent's Third Verified Petition for Writ of Prohibition filed with this Court on February 26, 2007, is hereby denied. Respondent's Reply to The Florida Bar's Motion in Limine and to Reconsider the Order Denying Discovery filed with this Court on April 16, 2007, is hereby dismissed as unauthorized. Respondent's Initial Proposed "Report of Referee" filed with this Court on April 26, 2007, is hereby dismissed as unauthorized. |
| 05/18/2007 | ORDER-ACCEPTANCE AS TIMELY FILED GR (MISC) | | The Referee's Motion for Enlargement of Time to File Report has been treated as a motion to accept the report as timely filed and is hereby granted. The Report of Referee was filed with this Court on May 7, 2007. |
| 05/18/2007 | ORDER-OTHER SUBSTANTIVE | | The order of the referee dated January 4, 2007, which denied Respondent's Motion to Dismiss or, Alternatively, Respondent's Third Affidavit and Motion to Disqualify and Motion for Contempt, is hereby approved. The order of the referee dated April 12, 2007, which denied Respondent's Motion to Dismiss or, Alternatively, Fifth Affidavit and Motion to Disqualify, or, Alternatively Motion to Continue Final Hearing, is hereby approved. The order of the referee dated April 16, 2007, which denied Respondent's Motion to Dismiss and Fifth Verified Petition for Writ of Prohibition, is hereby approved. |
| 05/29/2007 | NOTICE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | OF NON-RECEIPT OF REFEREE'S REPORT AND REQUEST FOR A COPY (DENIED AS MOOT, SEE ORDER DATED 07/11/07) |
| 05/31/2007 | MOTION-REHEARING ON MISC ORDER | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | ON ORDER DATED 05/18/07 (FILED AS PETITIONER'S RULE 9.330 MOTION FOR REHEARING) |
| 06/01/2007 | ORDER-OTHER SUBSTANTIVE | | This Court having issued an order on May 18, 2007, granting the Referee's motion for enlargement of time for the filing of the report, that date shall be used as the date for commencement of the time period for the filing of any petitions seeking review of that report. Thus, any petitions for review must be filed on or before July 23, 2007. NO CONTINUANCES WILL BE GRANTED. |
| 06/04/2007 | LETTER-FLA BAR (WILL NOT PETITION FOR REVIEW) | Kenneth Lawrence Marvin 200999 BY: Kenneth Lawrence Marvin 200999 | |
| 06/11/2007 | MOTION-OTHER SUBSTANTIVE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS RESPONDENT'S DEMAND FOR COMPLIANCE WITH RULE 3-7.7(c)(1)) |

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| 07/06/2007 | MOTION-OTHER SUBSTANTIVE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | RESPONDENT'S THIRD REQUEST FOR ISSUANCE OF SUBPOENA DUCES TECUM |
| 07/11/2007 | ORDER-OTHER SUBSTANTIVE GR | | Respondent's Demand for Compliance with Rule 3-7.7(c)(1), filed with this Court on June 11, 2007, is hereby granted and the parties shall have to and including August 3, 2007, in which to file a Petition for Review. Included with this order is a copy of the Report of Referee filed with this Court on May 7, 2007, which shows the referee's service of the report to all parties on April 25, 2007. |
| 07/11/2007 | ORDER-OTHER SUBSTANTIVE DY | | Upon consideration of respondent's Notice of Non-Receipt of Referee's Report and Request for a Copy, filed with this Court on May 29, 2007, it is hereby ordered that respondent's request for a copy of the referee's report to be served to respondent is hereby denied as moot. Respondent's request for tolling of the sixty-day deadline to file a petition for review until the report is sent to respondent is hereby denied as moot. |
| 07/11/2007 | ORDER-OTHER SUBSTANTIVE DY | | Respondent's motion for rehearing of this Court's order dated May 18, 2007, is hereby denied. |
| 07/17/2007 | ORDER-OTHER SUBSTANTIVE DY | | Respondent's Third Request for Issuance of Subpoena Duces Tecum, filed with this Court on July 6, 2007, is hereby denied. |
| 07/31/2007 | PETITION-REVIEW | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | |
| 08/06/2007 | MOTION-RECUSAL/DISQUALIFICATION | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "MOTION AND AFFIDAVIT FOR DISQUALIFICATION OF ALL THE JUSTICES OF THE FLORIDA SUPREME COURT" |
| 08/20/2007 | INITIAL BRIEF-MERITS | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | W/APPENDIX (NOT E-FILED, NO COPIES FILED, EXCEEDS PAGE LIMIT) (CONTAINS REQUEST FOR ORAL AGRUMENT AND REQUEST TO SUPPLEMENT THE RECORD) |
| 08/22/2007 | ORDER-BRIEF STRICKEN (NON-COMPLIANCE) | | Respondent's initial brief, which was filed with this Court on August 20, 2007, does not comply with Florida Rule of Appellate Procedure 9.210 and is hereby stricken. Respondent is hereby directed, on or before September 11, 2007, to serve an original and seven copies of an amended initial brief which does not exceed fifty pages in length, with the Certificate of Compliance immediately following the Certificate of Service. Please be advised that any additional relief requested from this Court must be submitted by a separate motion and not included in the brief. Per this Court's Administrative Order In Re: Mandatory Submission of Electronic Copies of Documents, AOSC04-84, dated September 13, 2004, counsel are directed to transmit a copy of all briefs in an electronic format as required by the provisions of that order. |
| 08/22/2007 | MOTION-STRIKE | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | THE FLORIDA BAR'S MOTION TO STRIKE THE RESPONDENT'S INITIAL BRIEF (O&7) (08/27/07, WITHDRAWN) |
| 08/22/2007 | MOTION-TOLL TIME | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | THE FLORIDA BAR'S MOTION TO TOLL TIME (08/27/07, WITHDRAWN) |

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| 08/27/2007 | NOTICE-WITHDRAWAL | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | THE FLORIDA BAR'S NOTICE OF WITHDRAWAL OF THE FLORIDA BAR'S MOTION TO STRIKE THE RESPONDENT'S INITIAL BRIEF |
| 08/27/2007 | NOTICE-WITHDRAWAL | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | THE FLORIDA BAR'S NOTICE OF WITHDRAWAL OF THE FLORIDA BAR'S MOTION TO TOLL TIME |
| 08/31/2007 | MOTION-BRIEF PAGE ENLARGEMENT | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS RESPONDENT'S MOTION TO VACATE ORDER OF AUGUST 22, 2007, OR, ALTERNATIVELY, FOR LEAVE TO FILE BRIEF IN EXCESS OF PAGE LIMITATIONS |
| 09/07/2007 | INITIAL AMD BRIEF-MERITS | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | W/APPENDIX (O&7 & E-MAIL) (CONCLUSION EXCEEDS 1 PAGE) |
| 09/21/2007 | NOTICE-FILING | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | OF ORIGINAL TRANSCRIPT FROM 04/16/07 FINAL HEARING |
| 09/21/2007 | RECORD/TRANSCRIPT | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | 1 VOLUME OF ORIGINAL TRANSCRIPT FROM 04/16/07 HEARING |
| 09/25/2007 | ORDER-RECUSAL DY | | "Respondent's Motion and Affidavit for Disqualification of All the Justices of the Florida Supreme Court," filed with this Court on August 6, 2007, is hereby denied. |
| 09/25/2007 | ORDER-BRIEF ENLARGEMENT DY/STRICKEN | | Upon consideration of "Respondent's Motion to Vacate Order of August 22, 2007, or, Alternatively, for Leave to File Brief in Excess of Page Limitations," filed with this Court on August 31, 2007, it is ordered that the motion to vacate is hereby denied. Furthermore, respondent's motion to file an initial brief on the merits in excess of page limitations is hereby denied. |
| 09/25/2007 | ORDER-BRIEF STRICKEN (NON-COMPLIANCE) | | "Respondent's Amended Initial Brief," which was filed with this Court on September 7, 2007, does not comply with Florida Rule of Appellate Procedure 9.210 and is hereby stricken. Respondent is hereby directed, on or before October 15, 2007, to serve an original and seven copies of an amended initial brief with a conclusion, of not more than one page, setting forth the precise relief sought. Please be advised that any additional relief requested from this Court, including a request for oral argument, must be submitted by a separate document and not included in the brief. Per this Court's Administrative Order In Re: Mandatory Submission of Electronic Copies of Documents, AOSC04-84, dated September 13, 2004, counsel are directed to transmit a copy of all briefs in an electronic format as required by the provisions of that order. |
| 09/27/2007 | NOTICE-FILING | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | OF ORIGINAL TRANSCRIPT FROM 01/23/07 CASE MANAGEMENT CONF. |
| 09/27/2007 | RECORD/TRANSCRIPT | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | 1 VOLUME OF ORIGINAL TRANSCRIPT FROM 01/23/07 HEARING |
| 10/15/2007 | INITIAL AMD BRIEF-MERITS | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | W/APPENDIX (O&7 & E-MAIL) |
| 10/15/2007 | REQUEST-ORAL ARGUMENT | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "RESPONDENT'S MOTION FOR ORAL ARGUMENT AND ALLOCUTION" |
| 10/26/2007 | ANSWER BRIEF-MERITS | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | W/APPENDIX (O&7 & E-MAIL) |
| 10/29/2007 | MOTION-EXT OF TIME (REPLY BRIEF-MERITS) | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | W/ATTACHMENTS |

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| 11/02/2007 | ORDER-EXT OF TIME GR (REPLY BRIEF-MERITS) | | |
| 11/15/2007 | REPLY BRIEF-MERITS | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | (O&7 & E-MAIL) |
| 11/21/2007 | ORDER-NO REQ SCHED (MISC) | | The above case has been submitted to the Court without oral argument. Per this Court's Administrative Order In Re: Mandatory Submission of Electronic Copies of Documents, AOSC04-84, dated September 13, 2004, if you have not already done so, counsel are directed to transmit a copy of all briefs in an electronic format as required by the provisions of that order. |
| 11/29/2007 | MOTION-RECUSAL/DISQUALIFICATION | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "RESPONDENT'S SECOND MOTION AND AFFIDAVIT FOR DISQUALIFICATION OF ALL THE JUSTICES OF THE FLORIDA SUPREME COURT" (W/ATTACHMENTS) |
| 11/30/2007 | AFFIDAVIT/STATEMENT OF COSTS | | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 AMENDED (O&7) |
| 01/29/2008 | ORDER-RECUSAL DY | | Respondent's Second Motion and Affidavit for Disqualification of All the Justices of the Florida Supreme Court, filed with this Court on November 29, 2007, is hereby denied. |
| 03/07/2008 | DISP-SUSPENDED (CLOSE OUT) | | SUSPENDED FOR 3 YEARS, EFFECTIVE IN 30 DAYS, AND COSTS IN THE AMOUNT OF $4,599.51 |
| 03/10/2008 | MOTION-DISMISS | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "RESPONDENT'S MOTION TO DISMISS AND THIRD MOTION AND AFFIDAVIT FOR DISQUALIFICATION OF ALL THE JUSTICES OF THE FLORIDA SUPREME COURT" |
| 03/24/2008 | MOTION-STAY (USSC APPLICATION REVIEW) | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "RESPONDENT'S MOTION TO STAY SUSPENSION PENDING UNITED STATES SUPREME COURT REVIEW" |
| 04/11/2008 | ORDER-STAY PROCEEDINGS USSC GR | | Respondent's Motion to Stay Suspension Pending United States Supreme Court Review is granted in part. Respondent's suspension is hereby stayed only to and including May 12, 2008, to allow Respondent to seek review in the Supreme Court of the United States and obtain any further stay from that court. |
| 04/17/2008 | ORDER-OTHER SUBSTANTIVE | | Upon consideration of Respondent's Motion to Dismiss and Third Motion and Affidavit for Disqualification of All the Justices of the Florida Supreme Court, respondent is advised the above-styled case is final in this Court and no action will be taken on the aforementioned pleading. |
| 04/21/2008 | MOTION-STAY (USSC APPLICATION REVIEW) | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "RESPONDENT'S SECOND MOTION TO STAY SUSPENSION AND MOTION TO VACATE ORDER OF MARCH 7, 2008" (W/ATTACHMENT) |
| 04/24/2008 | ORDER-STAY PROCEEDINGS USSC DY | | Upon consideration of Respondent's Second Motion to Stay Suspension and Motion to Vacate Order of March 7, 2008, the request to stay is hereby denied. Respondent is further advised the above-styled case is final in this Court and no action will be taken on the remainder of the aforementioned pleading. |
| 04/30/2008 | MOTION-STAY (VACATE) | CO The Florida Bar FB BY: CO Barnaby Lee Min 385719 | FILED AS "THE FLORIDA BAR'S MOTION TO TERMINATE STAY" W/ATTACHMENTS |

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| 05/12/2008 | ORDER-OTHER SUBSTANTIVE GR | | The Florida Bar's Motion to Terminate Stay is granted, and the stay ordered by this Court dated April 11, 2008, is hereby terminated. |
| 05/21/2008 | RECORD CENTER | | F00000045743 |
| 05/23/2008 | MOTION-OTHER SUBSTANTIVE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "RESPONDENT'S MOTION TO VACATE ORDER OF MARCH 7, 2008 AS VOID" W/ATTACHMENT |
| 05/30/2008 | MOTION-OTHER SUBSTANTIVE | PE Montgomery Blair Sibley 725730 BY: PE Montgomery Blair Sibley 725730 | FILED AS "RESPONDENT'S SECOND EMERGENCY MOTION TO VACATE ORDER OF MARCH 7, 2008 AS VOID AS REFEREE NEVER TOOK THE LOYALTY OATH" (W/ATTACHMENT) |

List of Abbreviations    Printer Friendly View

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

     Complainant,                Case No.  SC06-1387

v.                                   TFB File No's. 2003-00,597(2B)
                                                  2005-00,557(2B)

MONTGOMERY BLAIR SIBLEY,

     Respondent.

_____/

## **COMPLAINT**

THE FLORIDA BAR, Complainant, files this complaint against MONTGOMERY BLAIR SIBLEY, Respondent, pursuant to Rule 3-3.2(b), Rules of Discipline, and alleges:

1.    Respondent is, and at all times mentioned in the complaint was, a member of The Florida Bar, admitted on December 7, 1987, whose birth date is October 14, 1956, and who is subject to the jurisdiction of the Supreme Court of Florida.

### COUNT I
### TFB FILE NO. 2003-00,597(2B)

Complainant, The Florida Bar, realleges the facts set forth in paragraph 1, above, and further alleges the following facts:

Exhibit "A"

2.      On November 3, 2005, the Second Judicial Circuit Grievance Committee "B" found probable cause to file this complaint pursuant to Rule 3-7.4, of the Rules Regulating The Florida Bar, and this complaint has been approved by the Chair of that committee.

3.      On November 22, 2002 The Florida Bar was notified by the Honorable Maxine Cohen Lando, Circuit Judge for the Eleventh Judicial Circuit, that she had found Respondent in contempt of a court order in the matter of Sibley v. Sibley, requiring him to pay child support, a violation of rule 4-8.4(h), Rules Regulating The Florida Bar, and had ordered that Respondent be incarcerated.   A copy of Judge Lando's letter and order are attached hereto as Exhibit A, and incorporated by reference herein.

4.      By reason of the foregoing, Respondent violated Rules 4-8.4(h) of the Rules Regulating The Florida Bar.

**COUNT II**
**TFB FILE NO. 2005-00,557(2B)**

Complainant, The Florida Bar, realleges the facts set forth in paragraph 1, above, and further alleges the following facts:

5.      On December 1, 2005, the Second Judicial Circuit Grievance Committee "B" found probable cause to file this complaint pursuant to Rule 3-7.4, of the Rules

2

Regulating The Florida Bar, and this complaint has been approved by the Chair of that committee.

6.    On November 3, 2004, the Third District Court of Appeal filed an opinion in the matter of <u>Sibley v. Sibley</u>, 885 So. 2d 980 (Fla. 3rd DCA 2004) affirming the lower court's child support and contempt orders, and directing that Respondent was precluded from further self-representation in that court. A copy of the opinion, labeled Exhibit B, is attached hereto and incorporated by reference herein.

7.    In the aforesaid opinion the Third District Court of Appeal found that Respondent had initiated 25 self-represented appellate proceedings, 24 of which were found to be of no merit (Id. at p. 986) and had filed at least 12 federal court actions against various judges assigned to his case, the court system and his former wife (Id at p. 986, 987), all of which were dismissed, and had filed a federal action in Delaware against his former wife (Id at p. 988), which was dismissed.

8.    The Third District Court of Appeal also found, in said opinion, that "[Respondent] has served as an unending source of vexatious and meritless litigation." (Id at p. 988), a violation of rule 4-3.1, Rules Regulating The Florida Bar (Meritorious Claims).

8.    Respondent sought review of the aforesaid opinion by this Court, which was denied at <u>Sibley v. Sibley</u>, 901 So. 2d 120 (Fla. 2005).

3

9.    By reason of the foregoing, Respondent violated Rules 4-3.1 (Meritorious Claims) of the Rules Regulating The Florida Bar.

WHEREFORE, The Florida Bar asks that Respondent be appropriately disciplined.

Respectfully submitted,

Arne Vanstrum, Bar Counsel
The Florida Bar
651 E. Jefferson Street
Tallahassee, Florida 32399-2300
(850)561-5600
Florida Bar No. 865771

Kenneth Lawrence Marvin, Staff Counsel
The Florida Bar
651 E. Jefferson Street
Tallahassee, Florida  32399-2300
(850) 561-5600
Florida Bar No. 200999

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing Complaint regarding TFB File No's. 2003-00,597(2B) and 2005-00,557(2B), has been furnished by U.S. Mail to The Honorable Thomas D. Hall, Clerk, Supreme Court of Florida, 500 South Duval Street, Tallahassee, Florida 32399-1927, and that a true and correct copy of the complaint has been forwarded by certified mail #7005 1160 0003 8805 0644, return receipt requested, to Montgomery Blair Sibley, Respondent, whose record bar address is 50 West Montgomery Avenue, Suite B-4, Rockville, MD 20850-4216, on this 12th day of ___July___, 2006.

Kenneth Lawrence Marvin, Staff Counsel

## **NOTICE OF TRIAL COUNSEL**

PLEASE TAKE NOTICE that the trial counsel in this matter is Arne Vanstrum, Bar Counsel, whose address is The Florida Bar, 651 E. Jefferson Street, Tallahassee, Florida 32399-2300. Prior to the appointment of a referee in this case, respondent need not address pleadings, correspondence, etc., in this matter to anyone other than trial counsel and to Staff Counsel, The Florida Bar, 651 E. Jefferson Street, Tallahassee, Florida 32399-2300. After a referee has been appointed to this case, respondent should refer to Rule 3-7.6(5)(b) of the Rules Regulating The Florida Bar regarding service of pleadings.



RECEIVED

DEC 0 2 2002

THE FLORIDA BAR - MIA

CIRCUIT COURT
ELEVENTH JUDICIAL CIRCUIT OF FLORIDA

MAXINE COHEN LANDO
CIRCUIT JUDGE

COURTHOUSE CENTER
175 N.W. FIRST AVENUE
MIAMI, FLORIDA 33128

November 22, 2002

Arlene Sankel, Chief Staff Disciplinary Counsel
The Florida Bar
444 Brickell Avenue M-100
Miami, Florida 33131

Re: Montgomery Blair Sibley, Esquire

Dear Ms. Sankel,

I am writing this letter to inform The Florida Bar that I have found Montgomery Blair Sibley to be in Civil Contempt and have ordered him incarcerated on this day.

If you should need further information, please call me at 305-349-5741.

Sincerely,

Maxine Cohen Lando

Encl.

MCL/rlw



EXHIBIT
A

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

FAMILY DIVISION

CASE NO. 94-18177 FC 19

IN RE: The Marriage of:

BARBARA SIBLEY,
      Petitioner,

and

MONTGOMERY BLAIR SIBLEY,
      Respondent,

_____/

## ORDER OF CONTEMPT AND COMMITMENT TO THE MIAMI-DADE COUNTY CORRECTIONS DEPARTMENT

      This cause has come on to be heard upon Mr. Sibley's counsel's Motion for an Emergency pre-incarceration hearing. The Court has previously conducted a pre-incarceration hearing in conformance with the requirements of the law and heard extensive testimony from Mr. Sibley himself at that time. The Court granted this hearing in order to give Mr. Sibley every opportunity to either purge the Contempt or to make a showing of a change in circumstances that would persuade the Court to stay the incarceration. To that end, the Court heard argument and a proffer from Mr. Sibley's counsel. The factual proffers from Counsel, stipulated to by Barbara Sibley, show that there has been absolutely no change in Mr. Sibley's financial sitiuation. Therefor, the Court, having been advised that all stays issued by Appellate Courts have expired as to the Court's prior findings of Contempt of Court for Non-Payment of Support, hereby reaffirms the prior findings, which are attached to and incorporated in this Order.

The Court has, by those previous factual and legal findings, found, and continues to find that Mr. Sibley has wilfully refused to pay any child support in this cause. He owes, at this time, over one hundred

**Exhibit "B"**

thousand dollars. In its previous Order finding Mr. Sibley in contempt, the Court ordered a payment

plan. Mr. Sibley has not complied with the payment plan. Mr. Sibley has not paid even one penny of

child support since he left the State of Florida. His behavior is the essence of wilful refusal to obey a

Court order. He has substantial personal assets, jointly held with his present wife, which are easily

liquidated to cash, which he has refused to use to pay even a small portion of his child support

obligation. These assets include sterling silver and art, which could be sold and have not been. The

Court notes that Mr. Sibley has retained private counsel, ordered and paid for court reporters and

transcripts, transportation, and other litigation costs, including litigation that has been termed frivolous

in Federal Court. He has not presented any alternate payment plan.

Therefor, it is Ordered and Adjudged that the Respondent, Montgomery Blair Sibley is ordered

immediately committed into the custody of the Department of Corrections of Miami-Dade County. He

is to surrender to that authority and the Department of Corrections shall maintain him in custody for an

indefinite period, or until such time as he shall pay the **purge amount** of **One Hundred Thousand**

**Dollars**, for child support due and owing.

The Court has, additionally, held a hearing on Mr. Sibley's incarceration and finds that his present

financial status is unchanged and that he continues to 1) have the ability to pay the past due child

support, and 2) that he is willfully refusing to pay his child support obligation. The Court, therefor, will

not abate the finding of Contempt, nor stay the Order for Incarceration.

The Director of the Department of Corrections is Ordered to comply with the Court's Order to hold

Mr. Sibley in custody until such time as he shall purge his contempt with the aforementioned payment

to Barbara Sibley, or her attorney.

**Done and Ordered** this 22nd day of November, 2002.

MAXINE COHEN LANDO
CIRCUIT JUDGE

STATE OF FLORIDA, COUNTY OF D. DE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office: _____ AD 19___
CLERK, Circuit and County Courts
By _____
Deputy Clerk

10/18/2002 ·11:27    305-59F  .98              BETTE ELLEN C   \T                    PAGE 05

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

IN RE:  The Marriage of                                 FAMILY DIVISION

BARBARA SIBLEY,                                         CASE NO.: 94-18177 FC 19
      Petitioner/Former Wife,

and

MONTGOMERY BLAIR SIBLEY,
      Respondent/Former Husband.

FILED FOR RECORD
02 OCT 18 PM 12: 54
CLERK CIRCUIT & COUNTY COURTS
DADE COUNTY, FLA.
CIVIL #71

## AMENDMENT TO COURT ORDER DATED AUGUST 5, 2002
## AS TO PERIOD OF INCARCERATION

THIS MATTER coming on to be heard on this Court's Order dated August 5, 2002,
as to date for incarceration and period of incarceration, it is thereupon

ORDERED AND ADJUDGED:

1.    The *Order on Former Wife's Motion for Contempt for Failure to Pay Child Support
dated January 10, 2002 and Former Wife's Amended Motion for Contempt for Failure to Pay
Child Support dated April 17, 2002* entered August 5, 2002 is hereby amended as to paragraph
4 to provide the sentence for contempt shall be for an indefinite term or until
MONTGOMERY BLAIR SIBLEY purges himself of the contempt.

DONE AND ORDERED in Chambers, at Miami, Miami-Dade County, Florida, this
day of October, 2002.

_____
CIRCUIT COURT JUDGE

Copies furnished to:
Bette Ellen Quiat, Esq., 8525 SW 92nd Street, Suite B-5, Miami, FL  33156
Montgomery Blair Sibley, 14512 Lee Road, Suite H, Chantilly, VA  20151
Dirk Lorenzen, Esq., 44 West Flagler Street, Suite 1000, Miami, FL  33130

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

IN RE:   The Marriage of

BARBARA SIBLEY,

      Petitioner/Former Wife,

and

MONTGOMERY BLAIR SIBLEY,

      Respondent/Former Husband.

FAMILY DIVISION

CASE NO.:  94-18177 FC 19

_____

### ORDER ON FORMER WIFE'S MOTION FOR CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT DATED JANUARY 10, 2002 AND FORMER WIFE'S AMENDED MOTION FOR CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT DATED APRIL 17, 2002

THIS MATTER having come on to be heard on June 4, 5, 6, and 7, 2002 and July 1, 2002 upon the Former Wife's Motion for Contempt for Failure to Pay Child Support dated January 10, 2002 and Former Wife's Amended Motion for Contempt for Failure to Pay Child Support dated April 17, 2002, together with other motions, the Court finds as follows:

      A.     The parties were divorced by Final Judgment of Dissolution of Marriage entered on September 20, 1994 which incorporated the Marital Settlement Agreement of the parties dated September 20, 1994.

      B.     Pursuant to the Marital Settlement and Final Judgment, paragraph 12, "If the minor children's primary physical residence is with the Mother, and the Father should move out of the South Florida area so that the Husband cannot share in the day-to-day care and

**Exhibit "A"**

parenting of the children, the Former Husband was to pay to the Former Wife not less than the sum of $4,000.00 per month for all three (3) children (or divided into thirds one-third for each child) until the completion of their individual college educations, as child support in addition to all of the Former Husband's other obligations set forth in the Marital Settlement Agreement.

      C.    The Former Husband voluntarily chose to move out of the South Florida area in May, 2000, and has not shared in the day-to-day care and parenting of the children since said date.

      D.    The Former Husband has not furnished any child support to the Former Wife since May, 2000.

      E.    The Former Husband is in arrears in child support in the amount of $4,000.00 a month for twenty-five (25) months during which he has not been in South Florida and the children's primary physical residence has been with the Former Wife.

      F.    The Court has reviewed the Former Husband's initial Financial Affidavit filed September 20, 1994 which reflects a gross income of $4,600.00 and a net income of $3,460.00 per month. It states monthly expenses of $9,232.00 per month. The Husband has filed subsequent affidavits in these proceedings including an affidavit dated June 10, 1999 showing a net income of $2,918.00 per month, living expenses of $5,351.00 per month and a negative net worth of $121,900.00. The Former Husband's supplemental financial affidavit filed on

October 19, 1998 shows a net income of negative $1,435.00 per month, monthly expenses of $6,000.00 per month and a negative net worth of $57,400.00.

The Former Husband testified that his present gross income was $37,500.00 annually from his employment (business owned by his father), and that his current wife's gross income was also in excess of $30,000.00. Additionally, the Former Husband continues to practice law and has taken in retainers of more than $17,000.00 so far this year. The Former Husband has not produced one check or bank statement. Instead he has produced computer generated ledger sheets allegedly from Alodus Corporation, no paycheck stubs for him or his wife, no credit card statements, no bank statements or tax returns.

G.     The Former Husband is currently living in a home his father recently purchased and testified he is paying rent to his father of $2,500.00 per month which the Court notes, at times, has been paid by the corporation as shown on the Former Husband's Notice of Filing Documents dated June 24, 2002. He runs a company purchased by his father. The Former Husband has the use of a company credit card, for which he has refused to supply statements. The company has paid filing fees and costs in this proceeding. The company has paid rental cars for the Former Husband when he comes to Miami for hearings. His father furnishes him an apartment in Coconut Grove when he comes to Miami. His wife drives a BMW. His child, Sasha, is in private day care/school. His wife saves money for Sasha's future education.

H.     The $200,000.00 loan from his father, Harper Sibley, listed on the Former Husband's June 10, 1999 Financial Affidavit has been satisfied and no longer exists.

I.     The Former Husband claims he has given the sterling silver he received in the dissolution, which was valued at $15,900.00 according to the Memorandum of Understanding previously filed in the case, to his current wife.

J.     Despite showing deficits of $50,000.00-$100,000.00 annually to live, the Former Husband has no debt other than the court-ordered judgments arising out of litigation with his Former Wife.

K.     The Former Husband has not demonstrated any substantial change in circumstances in his income or lifestyle from the time he entered into the Marital Settlement Agreement to the present time.

L.     The Former Husband's ability to pay the child support agreed to by him at the time of the Marital Settlement Agreement and subsequently ratified and approved by him in the *Stipulation of Settlement between Barbara Sibley and Montgomery Blair Sibley* which incorporated all prior orders ratified by Court Order dated February 17, 2000 has not substantially changed and he has and has had the ability to pay said support.

WHEREFORE, IT IS ORDERED AND ADJUDGED as follows:

1.     The Former Husband, MONTGOMERY BLAIR SIBLEY, is in contempt of this Court for failure to pay child support of $4,000.00 per month for 25 months pursuant to the Final Judgment.

2.     The Former Husband owes to the Former Wife the sum of $100,000.00 as and for past due child support.

3.     The Former Husband at all times from May, 2000 had the present financial ability to pay but wilfully or intentionally failed and refused to do so and wilfully violated the Order of this Court.

4.     The Former Husband is hereby sentenced to ninety (90) days in the Dade County jail beginning January 1, 2003, unless prior to that time the Former Husband chooses to purge himself of contempt as follows:

        a.     Payment to the Former Wife of the sum of $30,000.00 on October 1, 2002, $30,000.00 on November 1, 2002 and $40,000.00 on December 1, 2002, and remaining current in his child support of $4,000.00 per month.

5.     Any Petition for Modification filed by the Former Husband is denied.

6.     The Former Wife is entitled to attorney's fees and costs.  The Court reserves jurisdiction as to the amount.

DONE AND ORDERED in Chambers, at Miami, Miami-Dade County, Florida, this

5 day of *August*, 2002.

CIRCUIT COURT JUDGE

Copies furnished to:
Bette Ellen Quiat, Esq., 8525 SW 92nd Street, Suite B-5, Miami, FL  33156
Montgomery Blair Sibley, 14512 Lee Road, Suite H, Chantilly, VA  20151
Dirk Lorenzen, Esq., 44 West Flagler Street, Suite 1000, Miami, FL 33130



**CiteView:** View citing opinions within the FLORIDA jurisdiction.

### 885 So.2d 980 (Fla.App. 3 Dist. 2004), 3D03-2083, Sibley v. Sibley

Page 980

### 885 So.2d 980 (Fla.App. 3 Dist. 2004)

### 29 Fla. L. Weekly D2449, 29 Fla. L. Weekly D2755

### Montgomery Blair SIBLEY, Appellant,

### v.

### Barbara SIBLEY, Appellee.

### No. 3D03-2083.

### Florida Court of Appeal, Third District.

### November 3, 2004

Order Granting Rehearing in Part Dec. 8, 2004.

Page 981

Montgomery Blair Sibley, in proper person.

Jay M. Levy; Bette E. Quiat, Miami, for appellee.

Before COPE, GERSTEN and GREEN, JJ.

PER CURIAM.

Montgomery Blair Sibley (the former husband) appeals two post-judgment orders entered after dissolution of marriage. Final judgment in the dissolution action was entered in 1994 and there have been numerous post-judgment proceedings since that time. In this proceeding, the former husband appeals orders compelling payment of attorney's fees and tuition. We affirm those orders.

The former wife requests an order precluding the former husband, an attorney, from representing himself in further appeals in this court. We grant the request.

I.

The former husband appeals an order entered on July 1, 2003 ("the July 1 order") which required the former husband to pay the former wife, Barbara Sibley, $33,119.70 in attorney's fees within sixty days. This order enforced earlier attorney's fee awards which had already been entered against the former husband in prior proceedings.

On this appeal, the former husband argues that one of the underlying attorney's fee orders was entered in error and that the trial court erred in enforcing it. This argument is without merit.

The underlying attorney's fee order which the former husband is trying to attack was entered on

March 4, 2003 ("the March 4 order"). [1] The former husband appealed the March 4 order to this court, arguing procedural error. This court affirmed without opinion. *Sibley v. Sibley,* 866 So.2d 1223 (Fla. 3d DCA 2003) (table), *cert. denied,* --- U.S. ----, 124 S.Ct. 2909, 159 L.Ed.2d 813 (2004). Since the former husband already appealed the March 4 order and this court already affirmed it, common sense and principles of res judicata dictate that the former husband cannot now mount a second appeal of the March 4 order.

Page 982

The former husband argues that a successive attack on the March 4 order is allowed as a result of the Florida Supreme Court's decision in *Florida Department of Transportation v. Juliano,* 801 So.2d 101 (Fla.2001). The former husband misunderstands the import of that decision. The *Juliano* case explains the law of the case doctrine, where there has been an interlocutory appeal followed by a later appeal from a final judgment. *See id.* at 106.

The *Juliano* decision does not apply here. The March 4 order was a final order awarding attorney's fees and it was appealed as a final order. The March 4 order is res judicata.

This court has explained that res judicata applies where, as here, there have been multiple final orders in post-dissolution proceedings.

> [I]t does not matter that the issue-preclusive effect of the earlier adjudication is asserted later in the same case, rather than in separate, subsequent litigation. Probably because res judicata principles in general apply only to final, appealable determinations, see 33 Fla. Jur.2d Judgments & Decrees § 173 (1994), and successive final judgments in the same case are at least unusual, see *Del Castillo v. Ralor Pharmacy, Inc.,* 512 So.2d 315 (Fla. 3d DCA 1987), it is true that the principle is often broadly and imprecisely stated as applying in subsequent "suits" or "actions." See 32 Fla. Jur.2d Judgments and Decrees § 140. Nevertheless, when there is indeed a final earlier adjudication, its "effect ... as res judicata is not confined in its operation to subsequent independent proceedings, but also applies to all collateral proceedings in the same action."

*Utterback v. Starkey,* 669 So.2d 304, 305 (Fla. 3d DCA 1996) (footnotes and citations omitted).

The former husband argues that it would work a manifest injustice for this court to enforce the March 4 order. The Florida Supreme Court has long recognized that *res judicata* will not be invoked where it would defeat the ends of justice." *State v. McBride,* 848 So.2d 287, 291 (Fla.2003) (citations omitted).

The former husband argues that it would be a manifest injustice to enforce the March 4 order because the prior panel which affirmed the March 4 order did not write an opinion explaining the panel's reasoning. In the former husband's view, the prior panel was mistaken and should have written an opinion to explain the ruling. This is not a legally sufficient showing of manifest injustice. The district courts of appeal are allowed to issue affirmances without opinion. *See R.J. Reynolds Tobacco Co. v. Kenyon,* 882 So.2d 986 (Fla.2004).

The former husband argues that the claimed procedural errors in the entry of the March 4 order render the March 4 order void. The former husband moved for relief from judgment under Florida Rule of Civil Procedure 1.540, with respect to the March 4 order and relief was denied by the successor judge, Judge Wilson. That order is one of the orders on appeal herein. However, the former husband has not demonstrated any error in the order denying Rule 1.540 relief.

II.

The former husband next appeals a July 17, 2003 order compelling him to reimburse tuition expenses for two of the parties' children.

Under the parties' marital settlement agreement, the former husband is responsible for payment of educational expenses through college. *See Sibley v. Sibley,* 816 So.2d 136 (Fla. 3d DCA 2002).

The children are also beneficiaries of trusts set up for their benefit. A guardian ad litem currently serves as the trustee of those trusts. When the former husband

Page 983

has failed to pay tuition, the trusts have made those payments. However, where that has happened, the trustee has requested that the trusts be reimbursed. [2]

In February 2003 the former wife filed a motion entitled "Emergency Motion to Permit Payment of Deposit for Minor Child, Montgomery Blair Sibley, Jr., at Palmer Trinity [School] and Summer School Tuition for Margaret Harper Sibley and Emergency Motion for Contempt for Failure to Pay Life Insurance Premium" ("the Emergency Motion").

After conducting hearings on March 10 and April 7, 2003, the trial court granted the tuition-related requests. The trustee was authorized to pay the tuition amounts. That part of the order is not challenged on this appeal.

The July 17 order also required former husband to reimburse two of the trusts, in the amounts of $18,130 and $7,207.50, respectively.

The former husband argues that the trial court should not have heard the motion because at that time of the hearing the former husband's seventh motion to disqualify the trial judge was pending.

We reject the former husband's argument, as the point has been waived. The former husband correctly argues that when a motion for disqualification or recusal is pending, it is the court's duty to rule on that motion before ruling on anything else. *See Fuster-Escalona v. Wisotsky,* 781 So.2d 1063 (Fla.2000). Further, it is not necessary for the movant to request a hearing. *See id.*

However, disqualification motions cannot be used for "gotcha" litigation tactics. *See Salcedo v. Asociacion Cubana, Inc.,* 368 So.2d 1337, 1339 (Fla. 3d DCA 1979). In this case, the former husband and his counsel personally attended the hearing on the Emergency Motion. Nowhere in the transcript did they object that the hearing could not proceed until the court ruled on the pending motion for disqualification.

A party cannot go to a hearing knowing that he has filed a motion for disqualification, make no mention of the pending motion, participate in the hearing, and then after receiving an unfavorable ruling, argue that the court must start over because there was a pending motion for disqualification.

"The well-settled proposition is that the law 'does not favor the substitution of a Judge or Justice in a cause after decision which essentially carries a benefit to the successful party.' " *Lawson v. Longo,* 547 So.2d 1279, 1281 (Fla. 3d DCA 1989) ( *quoting Ball v. Yates,* 158 Fla. 521, 29 So.2d 729, 735 (1946)). In *Lawson*

the seller waited, having knowledge of the alleged ground for recusal from the second day of trial, until well after final judgment, which was adverse to him. By doing nothing to affirmatively promote or protect the issue of the possible recusal, the seller can be said to have sat on his rocking chair, watching the trial meander by. It is now too late and he has shown no good cause for delay.

*Lawson,* 547 So.2d at 1281; *see also Fischer v. Knuck,* 497 So.2d 240, 243 (Fla.1986) ("A motion for recusal is considered untimely when delayed until after the moving party has suffered an adverse ruling unless good cause for the delay is shown.")

The former husband relies on *Fuster-Escalona v. Wisotsky,* 781 So.2d 1063 (Fla.2000), but that case is not on point. In *Fuster-Escalona* there was never a hearing on the motion for disqualification. That case addressed how to treat a disqualification motion for purposes of the

Page 984

rule regarding dismissal for lack of prosecution. *Id.* at 1064-65. It did not involve a situation like the one now before us, where a party participated in a hearing without objecting that there was a pending disqualification motion.

The former husband relies on the thirty-day rule established by *Tableau Fine Art Group, Inc. v. Jacoboni*, 853 So.2d 299 (Fla.2003), but reliance on that case is misplaced. In *Tableau* the Florida Supreme Court announced that a motion for disqualification must be ruled on by a trial court within thirty days. *Id.* at 303. If there is no ruling within thirty days, then disqualification is automatic. *See id.* at 301. The former husband argues that his seventh motion for disqualification was pending for more than thirty days and therefore Judge Lando should have been disqualified. However, the thirty-day rule of *Tableau* is prospective only, and came into effect only for motions for disqualification filed on or after August 20, 2003. *See City of Hollywood v. Witt*, 868 So.2d 1214, 1218 n. 6 (Fla. 4th DCA 2004). The seventh motion for disqualification had been filed prior to that date. Thus, the thirty-day rule is inapplicable to the former husband's seventh motion for disqualification. [3]

III.

The former husband next argues that the July 17 order erroneously holds him in contempt when no motion for contempt was made. The former husband is incorrect. He was not held in contempt.

The former wife filed the Emergency Motion described previously. The court authorized (a) the guardian ad litem, as trustee, to pay the educational expenses for the two children; (b) ordered the former husband to reimburse the two trusts $18,130 and $7,207.50, respectively; and (c) reserved jurisdiction on the issues of contempt and attorney's fees for a subsequent hearing.

The reservation of jurisdiction on the issue of contempt apparently refers to the former wife's second request in her motion, which was never reached by the trial court: her request to hold the former husband in contempt for failure to pay a life insurance premium. [4]

The former husband complains that he was not provided a copy of the proposed order prior to its entry. Assuming that is so, that is not a basis for reversal. This order was preceded by at least two similar orders directing the former husband to reimburse educational expenses for earlier time periods. It was clear from the court's remarks at the April 7 hearing that the court intended to pattern the July 17 order after the orders entered previously, and the court did so.

IV.

The former husband argues that the trial court erred by refusing to approve

Page 985

a statement of proceedings under Florida Rule of Appellate Procedure 9.200(b)(4). During the pendency of this appeal, the former husband prepared a proposed statement of the proceedings for the hearing which took place on August 27, 2002. This is the hearing which resulted in the order of March 4, 2003 awarding attorney's fees to the former wife. The guardian ad litem objected to the proposed statement of proceedings.

The trial court declined to approve the statement of proceedings. The former husband moved to compel Judge Lando (who conducted the August 27, 2002 hearing) to settle the statement of proceedings. *See* Fla. R.App. P. 9.200(b)(4). This court treated the former husband's motion to compel as a petition for writ of mandamus and, after receiving a response, denied it. The former husband has renewed the point in his brief.

As explained earlier in this opinion, the March 4, 2003 order has become final and is not subject to collateral attack in this appeal. The time to have submitted a statement of proceedings for the August 27, 2002 hearing would have been in connection with the earlier appeal of the March 4, 2003 order, not the present appeal.

V.

The former wife has filed a Motion for Sanctions in which she seeks to preclude the husband from any further self-representation in this court without being represented by counsel. The former wife contends that the husbands appeals have repeatedly been shown to be without merit and have constituted an abuse of the legal process. Upon consideration of the motion, the former husband's

response filed January 5, 2004, and after review of this courts files, we agree. [5]

The Florida Supreme Court has said:

Abuse of the legal system is a serious matter, one that requires this Court to exercise its inherent authority to prevent. As we held in *Rivera v. State,* 728 So.2d 1165, 1166 (Fla.1998): "This Court has a responsibility to ensure every citizen's access to courts. To further that end, this Court has prevented abusive litigants from continuously filing frivolous petitions, thus enabling the Court to devote its finite resources to those who have not abused the system."

Although rare, we have not hesitated to sanction petitioners who abuse the legal process by requiring them to be represented by counsel in future actions. In *Jackson v. Florida Department of Corrections,* 790 So.2d 398 (Fla.2001), the sanction of requiring a member of The Florida Bar to sign all of petitioner's filings with this Court and dismissing all other pending cases was imposed on a litigious inmate who repeatedly filed frivolous lawsuits that disrupted the Court's proceedings. In *Martin v. State,* 747 So.2d 386, 389 (Fla.2000), the sanction was imposed against a petitioner who, like Lussy, repeatedly filed lawsuits that included personal attacks on judges, were "abusive," "malicious," "insulting," and demeaning to the judiciary. In *Attwood v. Singletary,* 661 So.2d 1216 (Fla.1995), the petitioner was sanctioned for filing numerous frivolous petitions, including one that was filed shortly after the Court's order to show cause was issued.

Like the individual in *Attwood,* Lussy has abused the processes of this Court with his constant filings. Accordingly, a limitation on Lussy's ability to file would further the constitutional right of access because it would permit this Court to devote its finite resources to the consideration

Page 986

of legitimate claims filed by others. *See generally In re McDonald,* 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (finding that "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources").

*Lussy v. Fourth District Court of Appeal,* 828 So.2d 1026, 1027 (Fla.2002); *see Slizyk v. Smilack,* 734 So.2d 1166 (Fla. 5th DCA 1999); *Platel v. Maguire, Voorhis & Wells, P.A.,* 436 So.2d 303 (Fla. 5th DCA 1983); *Shotkin v. Cohen,* 163 So.2d 330 (Fla. 3d DCA 1964); *see also Safir v. United States Lines, Inc.,* 792 F.2d 19 (2d Cir.1986).

In *Safir* the court stated:

[I]n determining whether or not to restrict a litigant's future access to the courts, [a court] should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

792 F.2d at 24.

The fact that the former husband is an attorney does not insulate him from this analysis. On a proper showing, an attorney may be barred from self-representation. *See Slizyk,* 734 So.2d at 1167.

The parties were divorced in 1994. Several years later, post judgment disputes arose, leading to litigation of increasing intensity. The former husband was eventually incarcerated for civil contempt for failing to pay child support. *See Sibley v. Sibley,* 833 So.2d 847 (Fla. 3d DCA 2002), *review denied,* 854 So.2d 660 (Fla.2003), *cert. denied,* 124 S.Ct. 1074, 124 S.Ct. 1074, 157 L.Ed.2d 895 (2004). In correspondence between the former husband and the former wife, the former husband stated, "And if you want to attempt to squeeze me until I am dry, we will litigate until I am disbarred and bankrupt if necessary for you leave me no other choice."

The former husband, an attorney, has initiated twenty-five appellate proceedings in this court in

which he has represented himself, and has filed two more in which he was represented by counsel. These are listed in the Appendix to this opinion. The former husband prevailed in an early appeal to this court. *See Sibley v. Sibley,* 710 So.2d 1017 (Fla. 3d DCA 1998). However, the former husband's subsequent pro se proceedings in this court have been found to have no merit. As is shown by this appeal, the former husband has repeatedly tried to re-litigate matters decided in earlier proceedings, without any legitimate basis to do so.

In addition, the former husband has filed at least twelve actions in federal court against judges who have been assigned to his cases, the court system, and the former wife. In *Sibley v. Wilson,* No. 04-21000-CIV-MORENO, the federal court catalogued the former husband's federal litigation history as follows:

The Plaintiff's divorce case from ex-wife Barbara Sibley ... has been ongoing since 1994. The case appears to have been bitter, as evidenced by Plaintiff's numerous filings of separate actions related to issues in the divorce proceeding, including:

Page 987

1. *Sibley v. Judge Maxine Cohen Lando*

   United States District Court, Southern District of Florida

   Case No. 01-2940-CIV-UNGARO-BENAGES

   Summary: allegations of constitutional violations by judge

   Outcome: dismissed on basis of *Younger* abstention [ *aff'd,* 37 Fed. Appx. 979 (11th Cir.2002) ].

2. *Sibley v. Judges David Gersten, Juan Ramirez, and Joseph Nesbitt*

   United States District Court, Southern District of Florida

   Case No. 00-3665-CIV-MORENO

   Summary: allegations of constitutional violations by judges

   Outcome: dismissed on basis of judicial immunity, lack of subject-matter jurisdiction [ *aff'd,* 252 F.3d 443 (11th Cir.), *cert. denied,* 534 U.S. 827, 122 S.Ct. 67, 151 L.Ed.2d 34 (2001) ].

3. *Sibley v. Mark Martinez*

   United States District Court, Southern District of Florida

   Case No. 02-22931-CIV-HIGHSMITH

   Summary: allegations of constitutional violations by Clerk's filing process

   Outcome: dismissed for lack of constitutional violation.

4. *Sibley v. Judges Alan Schwartz, David Gersten, Mario Goderich, Gerald Cope, Robert Shevin, Maxine Cohen Lando, Victoria Platzer, and Barbara Sibley*

   United States District Court, Southern District of Florida

   Case No. 01-3746-CIV-KING

   Summary: allegations of constitutional violations by judges

   Outcome: dismissed on basis of *Younger* abstention, lack of subject-matter jurisdiction. Rule 11 sanctions imposed against Plaintiff [ *aff'd,* 45 Fed. Appx. 878 (11th Cir.2002) ].

5. *Sibley v. Sibley*

United States District Court, Southern District of Florida

Case No. 01-2770-CIV-HUCK

Summary: allegations of interference with parent-child relationship by ex-wife

Outcome: dismissed on basis of lack of subject-matter jurisdiction [ *aff'd,* 34 Fed. Appx. 969 (11th Cir.2002) ].

6. *Sibley v. Sibley*

United States District Court, Southern District of Florida

Case No. 01-1349-CIV-GOLD

Summary: removal of divorce action from Judge Lando's court

Outcome: remanded on basis of lack of subject-matter jurisdiction.

7. *Sibley v. Spears*

United States District Court, Southern District of Florida

Case No. 02-22106-CIV-JORDAN

Summary: petition for habeas corpus regarding contempt orders

Outcome: dismissed for lack of subject-matter jurisdiction.

8. *Sibley v. Judge Maxine Cohen Lando*

United States District Court, Southern District of Florida

Case No. 03-20942-CIV-HUCK

Summary: allegations of violations of right of access to the courts

Outcome: dismissed on basis of *Rooker-Feldman* and *Younger* abstentions [ *aff'd,* 99 Fed. Appx. 886 (11th Cir.2004) ].

9. *Sibley v. Florida Supreme Court, Harry Lee Anstead, Third District Court of Appeal, and Eleventh Judicial Circuit Court of Dade County*

Page 988

United States District Court, Southern District of Florida

Case No. 03-21199-CIV-LENARD

Summary: allegations of equal protection violations in decisions by Florida courts

Outcome: dismissed *sua sponte* for lack of subject-matter jurisdiction.

10. *Sibley v. Maxine Cohen Lando*

United States District Court, Southern District of Florida

Case No. 03-21885-CIV-HUCK

Summary: allegations of equal protection violations in divorce proceedings

Outcome: dismissed on basis of *Rooker-Feldman* and *Younger* abstentions [ *aff'd,* 97 Fed.

Appx. 907 (11th Cir.), *cert. denied,* --- U.S. ----, 124 S.Ct. 2885, 159 L.Ed.2d 779 (2004) ].

The Plaintiff has also filed a lawsuit against his wife in federal court in Delaware which was dismissed for lack of subject matter jurisdiction (Case No. 8:00-cv-02997-JFM), and has filed a number of appeals and/or petitions before Florida state courts as well.

*Sibley v. Wilson,* No. 04-21000-CIV-MORENO, slip op. at 2-3 (S.D.Fla. July 7, 2004).

In dismissing *Sibley v. Wilson,* Judge Moreno said that it is "the court's recognized right and duty, in both Federal and Florida state courts, to protect their jurisdiction from vexatious litigants and abuse of the judicial system." *Id.* at 6 (citations omitted). We agree.

The former husband has served as an unending source of vexatious and meritless litigation. This has caused needless consumption of resources by the court system and needless expense to the former wife. Awards of attorney's fees have not served as a deterrent, as the former husband has not paid them.

We conclude that the standards of *Lussy* are met. We have considered the criteria set forth in the *Safir* decision and conclude that those are met as well. We therefore prohibit the former husband from further self-representation in this court.

We direct the clerk of this court to reject any further filings in this court on the former husband's behalf unless signed by a member of the Florida Bar (other than the former husband). Any other cases that are pending in this court in which the former husband is representing himself will be dismissed unless a notice of appearance signed by a member in good standing of the Florida Bar (other than the former husband) is filed in each case within thirty days of this opinion becoming final. *See Lussy,* 828 So.2d at 1028.

VI.

For the stated reasons, the orders now under review are affirmed. The former wife's motion for sanctions is granted. The former husband is precluded from further self-representation in this court.

Affirmed; sanctions granted.

### APPENDIX

( *Sibley v. Sibley* Case No. 3D03-2083)

A. Completed proceedings in which the former husband has represented himself:

1) *Sibley v. Sibley,* 866 So.2d 1223 (Fla. 3d DCA 2003) *cert. denied,* --- U.S. ----, 124 S.Ct. 2909, 159 L.Ed.2d 813 (2004);

2) *Sibley v. Sibley,* No. 03-1392 (Fla. 3d DCA Aug. 6, 2003);

3) *Law Offices of Rodriguez & Sibley v. Sibley,* No. 03-3090 (Fla. 3d DCA Dec. 12, 2003);

4) *Sibley v. Sibley,* 835 So.2d 1140 (Fla. 3d DCA 2002) (01-3496);

5) *Sibley v. Sibley,* 833 So.2d 143 (Fla. 3d DCA 2002), *reh'g denied,* 835 So.2d 1140(Fla. 3d DCA 2002);

Page 989

6) *Sibley v. Sibley,* 831 So.2d 193 (Fla. 3d DCA 2002) (02-2764);

7) *Sibley v. Sibley,* 831 So.2d 193 (Fla. 3d DCA 2002) (02-2190), *reh'g denied,* 835 So.2d 1141 (Fla. 3d DCA 2002);

8) *Sibley v. Sibley,* 831 So.2d 192 (Fla. 3d DCA 2002) (02-412);

9) *Sibley v. Sibley,* 823 So.2d 785 (Fla. 3d DCA 2002);

10) *Sibley v. Sibley,* 816 So.2d 136 (Fla. 3d DCA 2002);

11) *Sibley v. Sibley,* 815 So.2d 673 (Fla. 3d DCA 2002), *rev. denied,* 833 So.2d 774 (Fla.2002);

12) *Sibley v. Sibley,* 814 So.2d 1054 (Fla. 3d DCA 2002);

13) *Sibley v. Sibley,* 803 So.2d 738 (Fla. 3d DCA 2001);

14) *Sibley v. Sibley,* 795 So.2d 71 (Fla. 3d DCA 2001);

15) *Sibley v. Sibley,* 793 So.2d 959 (Fla. 3d DCA 2001);

16) *Sibley v. Sibley,* 791 So.2d 481 (Fla. 3d DCA 2001);

17) *Sibley v. Sibley,* 771 So.2d 1175 (Fla. 3d DCA 2000);

18) *Sibley v. Sibley,* 751 So.2d 586 (Fla. 3d DCA 2000);

19) *Sibley v. Sibley,* 733 So.2d 529 (Fla. 3d DCA 1999);

20) *Sibley v. Sibley,* 732 So.2d 1079 (Fla. 3d DCA 1999);

21) *Sibley v. Sibley,* 725 So.2d 1273 (Fla. 3d DCA 1999);

22) *Sibley v. Sibley,* 710 So.2d 1017 (Fla. 3d DCA 1998).

B. Pending appellate proceedings in which the former husband represents himself:

23) *Sibley v. Sibley,* Case No. 3D04-294;

24) *Sibley v. Sibley,* Consolidated Case No. 3D04-1260/3D04-803;

25) *Sibley v. Sibley,* Case No. 3D04-1466.

C. Completed appellate proceedings in which the former husband was represented by counsel:

26) *Sibley v. Spears,* 837 So.2d 988 (Fla. 3d DCA 2002) *cert denied,* 540 U.S. 1016, 124 S.Ct. 567, 157 L.Ed.2d 429 (2003);

27) *Sibley v. Sibley,* 833 So.2d 847 (Fla. 3d DCA 2002), *review dismissed,* 854 So.2d 660(Fla.2003), *cert. denied,* --- U.S. ----, 124 S.Ct. 2909, 159 L.Ed.2d 813 (2004).

Before COPE, GERSTEN and GREEN, JJ.

*On Motion for Rehearing*

PER CURIAM.

We grant the motion for rehearing in one respect, and deny the remainder of the motion.

The former husband argues that under the terms of this court's opinion dated November 3, he is precluded from filing a pro se motion to invoke the discretionary review jurisdiction of the Florida Supreme Court. That is so because this court's opinion directs "the clerk of this court to reject any further filings in this court on the former husband's behalf unless signed by a member of the Florida Bar (other than the former husband)." Opinion at 988.

This court has permitted the former husband to file a pro se motion for rehearing and rehearing en banc in this case. Consistent with that procedure, we modify our opinion of November 3, 2004 to permit the filing of a pro se notice to invoke discretionary jurisdiction of the Florida Supreme Court, should the former husband choose to do so.

The former husband maintains that this court should not have quoted his correspondence to his

former wife, arguing that the quoted correspondence is not in the record of this appeal. That point is without

Page 990

merit. We clearly stated in our opinion of November 3 that for purposes of part V of the opinion, this court reviewed its files in all of the former husband's prior appellate proceedings. The quoted letter is found in *Sibley v. Sibley*, No. 3D02-3171, [833 So.2d 847](#) (Fla. 3d DCA 2002), Appendix to Appellee's Answer Brief.

We deny rehearing on the remaining points without further discussion.

Rehearing granted in part, denied in part.

---------

Notes:

[1] The order was signed on March 4 and filed on March 6, 2003. The former wife refers to it as the March 4, 2003 order and the former husband refers to it as the March 6, 2003 order. We will use the March 4, 2003 date.

[2] In requesting reimbursement, the guardian ad litem (as trustee) reasons that where the former husband has undertaken responsibility to pay the educational expenses, the children's trusts should not be diminished for that purpose.

[3] For the same reason, the thirty-day rule does not apply to the former husband's subsequent motion to disqualify Judge Lando filed June 12, 2003. Further, even if that were not so, we would reject the former husband's argument on authority of *Fischer v. Knuck,* [497 So.2d 240](#) (Fla.1986). The *Fischer* decision states, "When a judge has heard the testimony and arguments and rendered an oral ruling in a proceeding, the judge retains the authority to perform the ministerial act of reducing that ruling to writing." 497 So.2d at 243 (citations omitted). The July 17 order accurately reflects the oral ruling at the April 7 hearing.

[4] There is a scrivener's error in the title of the July 17 order. The order states that it is an "Order Granting Former Wife's Ore Tenus and Emergency Motion for Contempt for Failure to Pay Educational Expenses ...." As the motion did not request the remedy of contempt for failure to pay educational expenses, the title of the order is incorrect to that extent. The body of the order, however, is correct and accurately reflects the trial court's ruling. The former husband may request that the trial court correct the title of the order.

[5] The former wife requested oral argument of the motion and we granted the request.

---------

*© 2008 JuriSearch*

HOME  |  SEARCH  |  COLLECTIONS  |  PRICING  |  SIGN UP  |  SUPPORT  |  ABOUT  |  LOGOUT

© 2008, National Law Library, a subsidiary of JuriSearch.Com LLC. All rights reserved.
For technical support contact support@itislaw.com. For Editorial support contact editorial@itislaw.com.
View our Privacy Statement.

AUG 1 8 2004

ALAN R. SCHWARTZ
    CHIEF JUDGE
GERALD B. COPE, JR.
DAVID L. LEVY
DAVID M. GERSTEN
MARIO P. GODERICH
MELVIA B. GREEN
JOHN G. FLETCHER
ROBERT L. SHEVIN
JUAN RAMIREZ, JR.
LINDA ANN WELLS
FRANK A. SHEPHERD
       JUDGES



**DISTRICT COURT OF APPEAL**

THIRD DISTRICT

2001 S. W. 117 AVENUE

MIAMI, FLORIDA 33175-1716

TELEPHONE (305) 229-3200

MARY CAY BLANKS
    CLERK
DOROTHY L. MUNRO
    MARSHAL
ANN E. HEARIN
CHIEF DEPUTY CLERK
ALAN SADOWSKI
DEPUTY MARSHAL

August 13, 2004

John F. Harkness, Jr.
Executive Director
Florida Bar Department of C.L.E.
P.O. Box 389
Tallahassee, FL 32302-0389

Dear Mr. Harkness:

I am writing in order to make an objection to your staff's approval for credit of a "Continuing Legal Education Application for Accreditation". This matter has recently come to my attention in an action pending in the United States District Court for the Southern District of Florida, entitled <u>Montgomery Blair Sibley v. Maxine Cohen Lando, Alan R. Schwartz and Mario P. Goderich</u>, Case No. 03-21728-Civ-Jordan.[1] A pleading was filed by Mr. Sibley in that action in response to a motion for Fed. R. Civ. P. 11 sanctions filed against him on behalf of Chief Judge Alan R. Schwartz and Judge Goderich.

In his response, Mr. Sibley states that the Florida Bar has authorized him to teach a C.L.E. course entitled "<u>Disqualifying

---

[1] Judge Lando was the trial court judge in Mr. Sibley's state court divorce proceeding; and Chief Judge Alan R. Schwartz and Judge Goderich were members of the panel of the Court of Appeal.

Exhibit "B"

3.b.7.(1-5)

State & Federal Trial & Appellate Judges and then Suing them
Personally", Course #4036-4.  Enclosed as Attachment A is a copy
of that portion of the pleading, with the operative statement
highlighted.  The course synopsis states, "This seminar will
explore the practice in both state and federal courts for
disqualifying State & Federal Trial & Appellate Judges and then
suing them personally."  See Attachment B, provided by your
staff.

Regarding suits against judges, Mr. Sibley has filed federal
court actions against the Florida Supreme Court, The Third
District Court of Appeal or its judges, and Miami-Dade County
Circuit Court judges arising out of rulings against Mr. Sibley in
child support and child custody litigation.  Enclosed are orders
and/or opinions from a number of those cases.  Two federal law
suits remain pending at this time against judges of this Court.

In his order denying Mr. Sibley relief, United States
District Court Judge Federico Moreno cited "the Court's
recognized right and duty in both Federal and Florida state
courts, to protect their jurisdiction from vexatious litigants
and abuse of the judicial system."  Sibley v. Wilson, No. 04-
21000-Civ-Moreno, Order Granting Motion to Dismiss at 6 (S.D.
Fla. July 7, 2004)(Attachment J).

A review of the enclosed orders in Mr. Sibley's cases will
convince you, I believe, that the proposed course should not be

3.6.7. (2)

approved for C.L.E. credit.  The ultimate decision is, of course,

that of The Florida Bar.

                              Sincerely,

                              Joanne E. Sargent
                              Joanne E. Sargent
                              Attorney for the Court


enclosures

cc. Dawna Bicknell, Director, C.L.E.R. Department

3.6.7. (3)

INDEX TO ATTACHMENTS ✳

ATTACHMENT A: Response to motion for Fed. R. Civ. P. 11 sanctions where Mr. Sibley refers to a C.L.E. course which has been authorized by the Florida Bar.

ATTACHMENT B: Continuing Legal Education Application for Accreditation for course entitled "Disqualifying State & Federal Trial & Appellate Judges and then Suing them Personally"

ATTACHMENT C: <u>Sibley v. Florida Supreme Court; Harry Lee Anstead, in his capacity as Chief Judge and representative; Third District Court of Appeal; Alan R. Schwartz, in his capacity as Chief Judge and representative, et al.</u>, No. 03-12824 (11th Cir. Oct. 23, 2003), affirming:

ATTACHMENT D: No. 03-21199-Civ-Lenard (S.D. Fla. May 19, 2003).

ATTACHMENT E: <u>Sibley v. Judges Schwartz, Gersten, Goderich, Cope, Shevin, et al.</u>, No. 01-16571 (11th Cir. June 21, 2002), affirming:

ATTACHMENT F: No. 01-3746-Civ-King (S.D. Fla. Oct. 18, 2001).

ATTACHMENT G <u>Sibley v. Judges Gersten, Ramirez and Nesbitt</u>, No. 00-15833 (11th Cir. Mar. 13, 2001), affirming:

ATTACHMENT H: No. 00-3665-Civ-Moreno (S.D. Fla. Oct. 3, 2000). Certiorari was denied in 534 U.S. 827 (Oct. 1, 2001).

ATTACHMENT I: Order from the state trial court prohibiting and enjoining Mr. Sibley from litigating any matter in any state court, including appellate courts, without prior permission from the state trial court judge.

ATTACHMENT J: Order referenced in Judge Wilson's order (Attachment I) from the United States District Court for the Southern District of Florida.

ATTACHMENT K: Third District Court of Appeal opinion rendered in <u>Sibley v. Sibley</u>, 833 So.2d 847 (Fla. 3d DCA 2002)

**Federal court cases still pending:**

1. <u>Sibley v. Alan R. Schwartz, Mario Goderich, et al.</u>, No. 03-21728-Civ-Jordan.  Mr. Sibley seeks ten million dollars in damages through a 42 U.S.C. § 1983 action.

✳ *Provided To Rules & Policies Committee*     *3.6.7.(4)*

2.  <u>Sibley v. Juan Ramirez, Jr. and David Levy</u>, No. 04-21697-Civ-Lenard.  Mr. Sibley seeks one million dollars against each judge personally in damages.

*3.6.7.(5)*

## IN THE SUPREME COURT OF FLORIDA
### (Before a Referee)

THE FLORIDA BAR,                                    Supreme Court Case
                                                    No. SC06-1387
    Complainant,

vs.

MONTGOMERY BLAIR SIBLEY,                            The Florida Bar File
                                                    Nos. 2003-00,597(2B)
    Respondent.                                  2005-00,557(2B)

_____/

### ORDER SCHEDULING CASE MANAGEMENT CONFERENCE

IT IS HEREBY ORDERED that the parties shall appear for a Case Management

Conference in order to establish a schedule for the proceedings in this case on the

_23_ day of _January_, 2007 at _1:30_ (p.m) in Room 713,

Richard E. Gerstein Justice Building, 1351 NW 12 Street, Miami, Florida 33125.

**DONE AND ORDERED** in Chambers at Miami, Dade County, Florida, this

_4_ day of _January_, 2007.

**ORLANDO A. PRESCOTT**
Referee
Richard E. Gerstein Justice Building
1351 Northwest 12th Street
Miami, Florida 33125

1

Exhibit "C"



ORLANDO A. PRESCOTT
CIRCUIT JUDGE
RICHARD E. GERSTEIN JUSTICE BUILDING
1351 N.W. 12TH STREET
MIAMI, FLORIDA 33125

MIAMI FL 331

08 JAN 2007 PM 6 L

20850+4216

Montgomery Blair Sibley
50 West Montgomery Avenue Suite B-4
Rockville  Maryland 20850

**Chambers of
Judge Orlando A. Prescott**

# Fax

| To: | Montgomery Blair Sibley | From: | Judge Orlando A. Prescott |
|---|---|---|---|
| Fax: | 202-478-0371 | Pages: | 2 pages including cover sheet |
| Phone: | 866-855-4708 | Date: | 4/12/2007 |
| Re: | Please find attached Order | CC: | msibley@earthlink.net |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

● **Comments:**

Exhibit "D"

## IN THE SUPREME COURT OF FLORIDA
### (Before a Referee)

THE FLORIDA BAR,

     Complainant,

vs.

MONTGOMERY BLAIR SIBLEY,

     Respondent,

_____/

Supreme Court Case
No: SC06-1387

The Florida Bar File
Nos. 2003-00,597(2B)
     2005-00,557(2B)

### ORDER DENYING THE RESPONDENT'S MOTION TO DISMISS OR, ALTERNATIVELY, FIFTH AFFIDAVIT AND MOTION TO DISQUALIFY, OR, ALTERNATIVELY MOTION TO CONTINUE FINAL HEARING

**THIS CAUSE** having come on to be heard upon the Respondent's Motion to Dismiss or,

Alternately, Fifth Affidavit and Motion to Disqualify, or, Alternatively Motion to

Continue Final Hearing and it is herby,

**ORDER AND ADJUDGED** that the Respondent's Motion to Dismiss or,

Alternatively, Fifth Affidavit and Motion to Disqualify, or Alternatively Motion to

Continue Final Hearing is hereby denied.

**DONE AND ORDERED** in Chambers at Miami, Dade County, Florida, this _12_

Day of ___April_____, 2007.


_____
**ORLANDO A. PRESCOTT**
**Referee**

Copies furnished to :
Barnaby L. Min, Bar Counsel
Montgomery Blair Sibley, the Respondent
Kenneth Lawrence Marvin, Staff Counsel
Brian D. Burgoon, Designated Reviewer

Exhibit "D"

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,                         Supreme Court Case
                                         No. SC06-1387

Complainant,                             Florida Bar File Nos. 2003-00,597(2B)
                                         and 2005-00,557(2B)

vs.

MONTGOMERY BLAIR SIBLEY The

Respondent.
_____/

REPORT OF REFEREE

I.    SUMMARY OF PROCEEDINGS:

Pursuant to the undersigned being duly appointed as Referee for the Supreme Court of Florida to conduct disciplinary proceedings as provided for by Rule 3-7.6 of the Rules Regulating The Florida Bar, trial of this cause was undertaken on April 16, 2007. All of the pleadings, notices, motions, orders, and exhibits are forwarded with this report and the foregoing constitute the record in this case. The following individuals appeared as for the parties: On Behalf of The Florida Bar: Barnaby L. Min, The Florida Bar, 444 Brickell Avenue, Suite —100, Miami, Florida 33131

On Behalf of the Respondent: None. Mr. Sibley, representing himself, failed to appear after properly being notice to appear.

II.    FINDINGS OF FACT:

A. Jurisdictional Statement:

The Respondent is, and was at all times material herein, a member of The Florida Bar, and subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.

B. Narrative Summary of Cases:

The undersigned attempted to schedule a mutually convenient time for the final hearing and left messages for the Respondent to determine what his schedule was. As of the filing of this report, none of those messages have been returned. Accordingly, on March 28, 2007, the undersigned sent out a Notice of Final Hearing and scheduled the final hearing for April 16, 2007. On April 11, 2007, the Respondent filed a Motion to Dismiss

or, Alternatively, Fifth Affidavit and Motion to Disqualify, or, Alternatively, Motion to Continue Hearing which was denied. On the final hearing date of April 16, 2007, the Respondent failed to appear. The Respondent failed to contact the undersigned's chambers or counsel for The Florida Bar to indicate that he was unavailable or would not be appearing for the final hearing. The undersigned notes that in his motion filed on April 11, 2007, the Respondent stated that he would be available by telephone. Yet, as noted, the Respondent failed to contact either the undersigned or counsel for The Florida Bar by telephone, facsimile, or electronic mail.

Accordingly, the final hearing proceeded without the Respondent being present. See The Florida Bar v. Catalano, 685 So. 2d 1299 (Fla. 1996).

## COUNT I
### The Florida Bar File No. 2003-00,597(2B)

By order dated August 5, 2002, Judge Maxine Cohen Lando of the Eleventh Judicial Circuit found the Respondent in contempt of court for willfully failing to pay child support. In that order, Judge Lando determined that the Respondent owed child support in the amount of $100,000.00. Judge Lando further determined that the Respondent had the present financial ability to pay the child support but willfully failed to do so and, accordingly, willfully violated the trial court's order. Because the Respondent was in contempt of court for willfully failing to pay child support, Judge Lando sentenced the Respondent to 90 days in jail unless the Respondent paid the outstanding child support. Judge Lando further set a payment plan for the Respondent to pay his outstanding child support.

By order dated October 18, 2002, Judge Lando amended her contempt order to increase the incarceration period to an indefinite period of time until the Respondent fully paid the outstanding child support. As of November 22, 2002, the Respondent failed to pay any of the outstanding child support and failed to comply with Judge Lando's payment plan. Accordingly, on November 22, 2002, Judge Lando issued an Order of Contempt and Commitment to the Miami-Dade County Corrections Department. Respondent sought review of Judge Lando's various orders of contempt and they were upheld on appeal.

## COUNT II
### The Florida Bar File No. 2005-00,57(2B)

On November 3, 2004, the Third District Court of Appeal filed an opinion in the matter of Sibley v. Sibley, 885 So. 2d 980 (Fla. 3rd DCA 2004) affirming the lower court's child support and contempt orders, and directing that the Respondent was precluded from further self-representation in that court. In that opinion, the Third District Court of Appeal found that the Respondent had initiated 25 self-represented appellate proceedings (24 of which were found to be of no merit); filed at least 12 federal court actions against various judges assigned to his case, the court system, and his former wife (all of which were dismissed); and had filed a federal action in Delaware against his former wife (which was

dismissed). The Third District Court of Appeal also found that the Respondent "has served as an unending source of vexatious and meritless litigation", and agreed that his appeals were without merit. (emphasis added). The Respondent sought review of the Third District's opinion by the Supreme Court of Florida, which was denied at Sibley v. Sibley, 901 So. 2d 120 (Fla. 2005).

III.    RECOMMENDATION AS TO GUILT:

Based on the foregoing, I find that The Florida Bar has presented clear and convincing evidence of guilt to this Court and I make the following recommendations:

AS TO CASE NUMBER 2003-00,597(2B)

I recommend that the Respondent be found guilty of violating Rule 4-8.4(h) (A lawyer shall not willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation) of the Rules of Professional Conduct.

AS TO CASE NUMBER 2004-70,036(11F)

I recommend that the Respondent be found guilty of violating Rule 4-3.1 (Meritorious Claims and Contentions) of the Rules of Professional Conduct.

IV. RECOMMENDATION AS TO DISCIPLINARY MEASURES TO BE APPLIED:

Based on the foregoing, I recommend that the Respondent be suspended from the practice of law in the State of Florida for a period of three (3) years. My recommendation is based on the facts presented and found and the following applicable standards from Florida Standards for Imposing Lawyer Sanctions:

A. 5.14 Admonishment is appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

B. 6.21 Disbarment is appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

C. 6.22 Suspension is appropriate when a lawyer knowingly violates a court order or rule and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

D. 7.1 Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

E. 7.2 Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

V.    PERSONAL HISTORY, PAST DISCIPLINARY RECORD, AGGRAVATING FACTORS, AND MITIGATING FACTORS:

Prior to recommending discipline pursuant to Rule 3-7.6(m) (1) (C) of the Rules Regulating The Florida Bar, I considered the following:

A. Personal History of the Respondent:

Age: 50
Date Admitted to Bar: December 7, 1987
Prior disciplinary record: N/A

B. Aggravating Factors:

1. 9.22(b) Dishonest or selfish motive
2. 9.22(c) Pattern of misconduct
3. 9.22(d) Multiple offenses
4. 9.22(e) Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency
5. 9.22(g) Refusal to acknowledge wrongful nature of conduct
6. 9.22(i) Substantial experience in the practice of law

C. Mitigating Factors: None

VI.    STATEMENT OF COSTS AND RECOMMENDATION AS TO THE MANNER IN WHICH COSTS SHOULD BE TAXED:

I find the following costs were reasonably incurred by The Florida Bar in these proceedings and should be assessed against the Respondent:

| | |
|---|---:|
| Administrative Fee | $1,250.00 |
| Court Reporter (Hearing on 1-23-07) | $75.00 |
| Court Reporter (At Final Hearing) | $135.00 |
| Copy Costs | $1,176.35 |
| Staff Investigator's Costs | $1,354.15 |
| Bar Counsel's Travel Costs | $19.86 |
| INTERIM TOTAL | $4,010.36 |

I recommend that the foregoing costs be assessed against the Respondent. It is further recommended that the execution issue with interest at the statutory rate to accrue on all costs not paid within 30 days of entry of the Supreme Court's final order.

Dated this 28 day of June, 2007.

/s/ Orlando A. Prescott
ORLANDO A. PRESCOTT
Referee, Circuit Court Judge
Richard E. Gerstein Justice Building
1351 NW 12 Street, Room 713
Miami, Florida 33125

Copies to:

Barnaby L. Min, Bar Counsel
Montgomery Blair Sibley, Respondent
Kenneth L. Marvin, Staff Counsel
Brian B. Burgoon, Designated Reviewer

SUPREME COURT OF FLORIDA
FRIDAY, MARCH 7, 2008
CASE NO.: SC06-1387
Lower Tribunal No(s).: 2003-00,597(2B),
2005-00,557(2B)


THE FLORIDA BAR                vs.           MONTGOMERY BLAIR SIBLEY
_____
Complainant(s)                               Respondent(s)

     The report of the referee is approved and respondent is suspended from the practice of law for three years, effective thirty days from the date of this order so that respondent can close out his practice and protect the interests of existing clients. If respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Respondent shall accept no new business from the date this order is filed until he is reinstated.
Respondent is further directed to comply with all other terms and conditions of the report.

     Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Montgomery Blair Sibley in the amount of $4,599.51, for which sum let execution issue.

     Not final until time expires to file motion for rehearing, and if filed, determined. The filing of a motion for rehearing shall not alter the effective date of this suspension.

LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.

A True Copy
Thomas D. Hall
Clerk of the Supreme Court

Served:

HON. ORLANDO A. PRESCOTT, JUDGE
BARNABY LEE MIN
KENNETH LAWRENCE MARVIN
MONTGOMERY BLAIR SIBLEY
BRIAN DAVID BURGOON

Exhibit "F"