**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LAWRENCE SINCLAIR,**<br>**Plaintiff,**<br>**v.**<br>**TubeSockTedD, et al.,**<br>**Defendants.** | **Civil Action No. 08-0434 (JDB)** |

**MEMORANDUM OPINION**

Plaintiff Lawrence Sinclair ("Sinclair") has filed this action for common law defamation and reckless misrepresentation against three defendants, who he describes as follows: "TubeSockTedD is a natural person maintaining an account with YouTube.com which contains his/her real identity" (Compl. ¶ 5); "mzmolly is a natural person maintaining an account with Demoncraticunderground.com [sic] which contains his/her real identity" (Compl.¶ 6); and "OWNINGLIARS, is a natural person maintaining an account with Digg.com which contains his/her real identity" (Compl. ¶ 7). Sinclair then subpoenaed DemocraticUnderground.com, Digg.com and Google, Inc. (for YouTube.com) to acquire the true identities of the anonymous Internet speakers that he has sued, and motions to quash or compel are now pending with respect to those subpoenas. Although Sinclair's effort poses potentially important and complex issues relating to defamation actions against anonymous Internet speakers, and efforts to force revelation of the identities of such speakers, the pending motions, and ultimately the viability of this case as brought by Sinclair, can be resolved on somewhat narrower grounds.

**BACKGROUND**

In his complaint, Sinclair alleges that in January 2008 he posted a YouTube.com video alleging that in November 1999, while visiting Chicago, he met then-state senator Barack Obama and then purchased cocaine from, used cocaine with, and performed a sex act on Mr. Obama.[1] Compl. ¶ 8. Subsequently, according to Sinclair, in February 2008, the defendants each posted items on the Internet critical of him: TubeSockTedD uploaded a video to YouTube.com stating that Sinclair is "Spreading Lies about Obama" (Compl. ¶ 9); mzmolly posted a comment on DemocraticUnderground.com stating that Sinclair is a mental patient who was institutionalized on the date in 1999 when he claims to have encountered Obama (Compl. ¶ 10); and OWNINGLIARS posted a comment on Digg.com stating, inter alia, that Sinclair is a liar and was in a mental hospital when he claimed he met Obama (Compl. ¶ 11). The complaint asserts claims for defamation and "reckless misrepresentation" against each defendant, seeking $1 million in damages on each of six counts.

The case was originally assigned to another judge of this Court, who granted Sinclair's ex parte motion for leave to engage in ex parte limited discovery, which permitted third-party subpoenas to the relevant Internet providers for account information relating to each defendant. Now before the Court are Sinclair's motion to compel information identifying defendant mzmolly, and motions to quash the subpoenas seeking from Google, Inc. and Digg.com information identifying defendants TubeSockTedD, OWNINGLIARS, and mzmolly.[2] The case

---

[1] Because Sinclair's allegations, and hence this action, are totally unrelated to President Obama's current official responsibilities, the Court will not employ that title in this opinion.

[2] The arguments presented by mzmolly and DemocraticUnderground.com in opposition to Sinclair's motion to compel have, for the most part, simply been adopted in the context of the

was reassigned to the undersigned judge in July 2008. Thereafter, in an Order issued on August 14, 2008, the Court denied Sinclair's motion seeking relief under 18 U.S.C. § 3771 against the Department of Justice and directed that the Clerk accept no further filings from Sinclair's then-counsel, Montgomery Blair Sibley, who had been suspended from the practice of law.

**DISCUSSION**

This case involves Sinclair's effort to identify and obtain monetary relief from three bloggers who have criticized him concerning his sensational claims, which were broadly publicized in the "blogosphere," in tabloid newspapers, and on radio programs. The threshold issue presented -- whether the Court should order the identification of the anonymous Internet speakers Sinclair has sued -- is of growing importance in the law. It raises First Amendment questions uniquely framed to the message and discussion boards that are increasingly popular on the Internet, and that thrive on the ability of users to criticize and respond to criticism, often anonymously, to the audience viewing the original message. Sinclair has used that medium to communicate his original message and then to respond vigorously to those, including the three anonymous defendant bloggers, who have criticized him concerning his sensational claims.

Generally speaking, the First Amendment protects the right to speak anonymously. Watchtower Bible & Tract Soc'y of New York v. Village of Stratton, 536 U.S. 150, 166-67 (2002); McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 341-42 (1995). Such rights to speak anonymously apply, moreover, to speech on the Internet. See, e.g., Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088, 1092-93 (W.D. Wash. 2001); Global Telemedia Int'l, Inc. v. Doe 1, 132 F.

---

motions to quash. The Court will therefore refer collectively to defendants' arguments unless further specificity is needed.

Supp. 2d 1261, 1264-66 (C.D. Cal. 2001); ACLU v. Johnson, 4 F. Supp. 2d 1029, 1033 (D.N.M. 1998); see generally Reno v. ACLU, 521 U.S. 844, 853, 870 (1997). And the Supreme Court has required both proof of a compelling interest and a narrowly tailored restriction serving that interest where compelled identification of speakers threatens the First Amendment right to remain anonymous. McIntyre, 514 U.S. at 347; see also Bates v. City of Little Rock, 361 U.S. 516, 524 (1960) (due process requires a showing of a compelling interest where compelled disclosure threatens fundamental rights). Hence, recognizing these First Amendment interests and the chilling effect that subpoenas seeking the disclosure of anonymous speakers can have on dissenters, see, e.g., FEC v. Florida for Kennedy Comm., 681 F.2d 1281, 1284-85 (11th Cir. 1982), courts have applied a three-part test for a qualified privilege against disclosure of anonymous sources in the analogous area of libelous speech: the party seeking the identity of an anonymous speaker must show (1) the issue as to which disclosure of the source is sought goes to the heart of the case, (2) disclosure is necessary to prove the issue because the party seeking the information is likely to prevail on all other issues, and (3) all other means of proving the issue have been exhausted. Lee v. Dep't of Justice, 413 F.3d 53, 59-60 (D.C. Cir. 2005); United States v. Caporale, 806 F.2d 1487, 1504 (11th Cir. 1986).

Drawing on this case law, two similar standards have emerged in cases involving discovery seeking the identification of anonymous Internet speakers. In Dendrite Int'l v. Doe, 775 A.2d 756, 760-61 (N.J. Super. Ct. App. Div. 2001), a five-part balancing test was articulated, requiring (1) that the plaintiff undertake to notify the anonymous posters that they are the subject of a subpoena seeking their identity; (2) that the plaintiff specify the exact statement alleged to constitute actionable speech; (3) that the court review the complaint and

other information to determine whether a viable claim against the anonymous defendants is presented; (4) that the plaintiff produce sufficient evidence to support, prima facie, each element of its cause of action; and (5) that the court then balance the First Amendment right of anonymous speech against the strength of the plaintiff's prima facie claim and the need for disclosure of the anonymous defendant's identity. Several courts have adopted this test or some close variant of it. See, e.g., Highfields Capital Mgmt. v. Doe, 385 F. Supp. 2d 969, 974-76 (N.D. Cal. 2005); In re Baxter, 2001 WL 34806203, at *12 (W.D. La. Dec. 20, 2001); Mobilisa, Inc. v. Doe, 170 P.3d 712, 718-20 (Ariz. Ct. App. 2007). A second, less-exacting standard foregoes an explicit balancing of interests but still requires the plaintiff to come forward with sufficient evidence to establish a prima facie case on all elements of a claim that are supportable without discovery. See Doe v. Cahill, 884 A.2d 451, 460 (Del. 2005); accord, Best Western Int'l, Inc. v. Doe, 2006 WL 2091695, at *4-5 (D. Ariz. July 25, 2006); Krinsky v. Doe 6, 72 Cal. Rptr. 3d 231, 245-46 (Cal. Ct. App. 2008).

The Court need not resolve here the precise standard appropriate for determining whether disclosure of anonymous Internet speakers is warranted. When the viability of Sinclair's present complaint is assessed -- and an examination of the sufficiency of a plaintiff's claims is an essential part of the tests under both Dendrite and Cahill -- it is apparent that Sinclair should not be permitted to compel the identification of the three anonymous Internet speaker defendants. Sinclair's action is fundamentally flawed for three reasons.

First, it is obvious that, as presented, the Court has no subject-matter jurisdiction over Sinclair's complaint. He has alleged only state-law causes of action, and jurisdiction rests on diversity of citizenship. But the citizenship of the defendants -- all anonymous "Does" -- is not

known. Instead, Sinclair, a citizen of Minnesota, urges that after reasonable discovery, he will establish that defendants are citizens of other states. See Compl. ¶ 2. The law is clear, however, that a diversity action cannot be brought against Doe defendants in hopes of later discovering that the requisite diversity of citizenship actually exists. See, e.g., Menzies v. Doe, 194 F.3d 174 (D.C. Cir. 1999) (unpublished table decision); Howell by Goerdt v. Tribune Entertainment Co., 106 F.3d 215, 218 (7th Cir. 1997); Meng v. Schwartz, 305 F. Supp. 2d 49, 55-56 (D.D.C. 2004); see also 13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3602, at 372 (2d ed. 1984) ("the essential elements of diversity jurisdiction must be alleged in the pleadings").

Second, there is likewise no basis to believe that Sinclair can establish personal jurisdiction over defendants; certainly the complaint pleads no ground for personal jurisdiction in the District of Columbia. Minimum contacts with this forum would appear lacking for either general or specific jurisdiction. Sinclair does not allege that any defendant owns property or does business in the District, and hence the "continuous and systematic" contacts needed for general jurisdiction are not present or even alleged. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). For specific jurisdiction, the defendant's contacts with the forum must be related to the controversy at hand. Id. at 414 n.8. Sinclair makes no allegation that any defendant has purposely directed activities toward or availed himself of the privilege of doing business in the District of Columbia, that his cause of action arises from conduct here, or that any defendant has enough connection to the District to make the exercise of jurisdiction reasonable, thereby making defendant's contacts sufficient to provide fair warning of being subject to suit here. See id. at 414. Sinclair's anticipated response that defendants'

statements posted on the Internet can be downloaded and viewed in the District of Columbia is insufficient to establish personal jurisdiction, even if Sinclair were located here rather than in Minnesota. See Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 511-12 (D.C. Cir. 2002).

Third, for several reasons, the Court questions the sufficiency of Sinclair's claims in this case. Of course, just stating that someone is "spreading lies" or is a liar may not be actionable as defamation. See Rocker Mgmt. LLC v. John Does 1-20, 2003 WL 22149380, at *1, *3 (N.D. Cal. May 29, 2003); Beatty v. Ellings, 173 N.W.2d 12, 17 (Minn. 1969). Here, the challenged statements are less an attack on Sinclair's general character and instead a dispute with the accuracy of a specific statement made by him. Indeed, the irony here is that defendants' alleged statements actually dispute whether Sinclair engaged in the criminal and disreputable acts that he has claimed, hardly the normal fare of a defamatory statement. The statement that Sinclair is a former mental patient, although perhaps defamatory, is most probably not actionable because mzmolly and OWNINGLIARS were simply summarizing and reporting information obtained from another content provider. See 47 U.S.C. § 230(c)(1).

Perhaps most importantly here, Sinclair has not alleged in his complaint either special damages or actual malice. Under Minnesota law, special damages must be pled unless the alleged statements are defamatory per se, which they are not here. See Anderson v. Kammeier, 262 N.W.2d 366, 372 (Minn. 1977). Arguably, Sinclair is a limited-purpose public figure concerning the controversy that he sought to generate relating to candidate Obama and the 2008 presidential election, see Waldbaum v. Fairchild Publ'ns, Inc., 627 F.2d 1287, 1296-97 (D.C. Cir. 1980), and hence he must show actual malice. Not only has Sinclair failed to plead actual malice, which condemns his defamation claim, but there is no reason whatsoever to believe he

will be able to show by the requisite clear and convincing evidence that defendants' Internet statements were made with the degree of serious doubts about their truth that the actual malice standard requires. See St. Amant v. Thompson, 390 U.S. 727, 731 (1968). The assertion by Sinclair that statements were made without knowing whether they were true or false, see Compl. ¶ 25, is plainly insufficient to establish actual malice. St. Amant, 390 U.S. at 731-32. And when a plaintiff has not shown that a defendant could have published a defamatory statement with actual malice, the defendant may prevail on a defamation claim as a matter of law. Liberty Lobby, Inc. v. Rees, 852 F.2d 595, 598 (D.C. Cir. 1988).

If the Court were to engage in the balancing required under the Dendrite standard, certainly Sinclair's discovery attempts to compel disclosure of the identity of the three anonymous Internet speaker defendants would have to be rejected. Likewise, under the Cahill test, Sinclair plainly fails to establish a prima facie case on his claims or that his complaint can survive its obvious jurisdictional flaws, and hence his attempt to discover defendants' identities must be rejected. Where the viability of a plaintiff's case is so seriously deficient, there is simply no basis to overcome the considerable First Amendment interest in anonymous speech on the Internet. Sinclair has provided no ground to do so here.[3]

Finally, the Court returns to the question of subject-matter jurisdiction. Clearly, there is a

---

[3] Sinclair's responsive arguments do not squarely address the serious issues here. His ad hominem accusation against mzmolly and its counsel (Public Citizen) is baseless, and the contention that only a jury can assess the facial validity of his claims ignores the body of defamation law discussed above. So, too, the argument that the First Amendment is irrelevant ignores both logic and the law. And the contention that jurisdiction can be established later through discovery is unpersuasive. Lastly, Sinclair's effort to force Public Citizen to reveal the identity of its client is frivolous because no subpoena has been served on Public Citizen and Sinclair simply ignores the attorney-client privilege.

total absence of subject-matter jurisdiction in this Court as revealed on the face of the complaint. Sinclair offers no convincing argument to the contrary. Federal jurisdiction based on diversity of citizenship cannot simply be assumed, as Sinclair wishes, with discovery then permitted in hopes that a proper basis for jurisdiction can later be ascertained. The proper course in a setting like this one is for a plaintiff to pursue any valid claims in a state court where both subject-matter and personal jurisdiction exist. Hence, the Court will dismiss Sinclair's action in this Court for a clear lack of subject-matter jurisdiction.[4]

## CONCLUSION

For the foregoing reasons, Sinclair's discovery effort to compel disclosure of the identities of the three anonymous Internet speaker defendants is rejected and the complaint will be dismissed. A separate Order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Date: February 10, 2009

[4] Although the Court is not impressed with the merits of Sinclair's claims, and rejects completely his discovery efforts, the sanctions requested by mzmolly and DemocraticUnderground.com will be denied given the evolving and novel areas of law involved here.